Exhibit 1

## DISTRIBUTORSHIP AGREEMENT

THIS AGREEMENT with the effective date of 1st day of January 1998.

between     SOFTWARE AG AMERICAS, INC.
11190 Sunrise Valley Drive
Reston, VA 22091 USA

       (hereinafter called "SAGA")

and       CONSIST INTERNATIONAL, INC.
10 East 53rd Street
27th Floor
New York, NY 10022

       (hereinafter called "CONSIST," which term shall include all CONSIST subsidiaries and affiliates)

       WITNESSETH,

WHEREAS, SAGA is the exclusive distributor of certain software packages in the Territory, as set forth in Annex A herein "SAGA Products," being updated from time to time, and offers certain products, as set forth in Annex B, for which SAGA pays royalties herein "SPECIAL PRODUCTS," being updated from time to time both of which are collectively referred to herein as "SYSTEMS".

and

WHEREAS, CONSIST wants to market the SYSTEMS and to provide assistance to users of the SYSTEMS in Argentina, Brazil, Chile, Bolivia, Paraguay, Uruguay, and Peru, hereinafter called the "TERRITORY."

Now therefore, the parties hereto agree as follows:

### Paragraph 1

SAGA appoints CONSIST the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1998 through December 31, 2007. The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving of eighteen (18) months prior written notice to the other party.

28

**Paragraph 2**

SAGA hereby authorizes CONSIST to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

However, CONSIST is only authorized to give non-transferable use-licenses for SYSTEMS to customers. Giving any form of sublicense or distribution rights, such as a direct or indirect OEM arrangements, to any third party will require the prior written consent of SAGA.

Contracts for installations of the SYSTEMS outside the TERRITORY shall require the prior written consent of SAGA.

**Paragraph 3**

For the right to grant perpetual or time-limited licenses, and/or maintenance agreements, CONSIST agrees to make payments to SAGA as provided in Exhibit A hereto.

Payments will be made within ten (10) days of the end of each quarter.

Any quarterly payment not received within the due date period above mentioned, shall bear interest at a rate of 3% p.a. above the prime commercial rate of Citibank in effect at that time.

SAGA will provide invoices to CONSIST for all payments made by CONSIST.

**Paragraph 4**

SAGA agrees at no additional costs to provide the following services to CONSIST:

1.  Training in public classes held by SAGA for CONSIST staff (up to 5 persons) per class;

2.  Ten (10) copies of the latest version of the SYSTEMS stored on magnetic tape;

3.  Ten (10) copies of complete sets of SYSTEMS documentation in English, including Reference Manuals and Utilities Manuals.

4.  Prompt correction or any errors in the SYSTEMS detected at the user's site and forwarded to SAGA.

9/9/97 4:10 PM                                    2

(4)  CONSIST agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users. This obligation of CONSIST will continue until termination of the agreement including any extension thereof.

(5)  CONSIST shall be responsible for supplying SAGA with all pertinent information concerning any software errors and will forward promptly all documentation to SAGA with an explanation of the circumstances causing the problem and SAGA will correct any errors in the SYSTEMS.

(6)  In no case shall SAGA be held liable by CONSIST or any of CONSIST customers in the TERRITORY for any damages, indirect or consequential, derived from the use of the SYSTEMS.

(7)  SAGA shall not be held liable for any taxes arising out of the activities of CONSIST, such as sales tax, income tax, import tax, value added tax or alike.

(8)  CONSIST shall abide by all U.S. Export Administration Regulations which may apply to the SYSTEMS and their exportation and/or re-exportation.

(9)  CONSIST agrees that SAGA has the right to make multinational agreements with end-user customers which may result in installations in the TERRITORY at discounts negotiated by SAGA. CONSIST will accept all such agreements and discounts as valid in the TERRITORY with compensation to CONSIST according to SAGA's published worldwide multinational policy.

(10)  CONSIST agrees to cooperate with SAGA in establishing international Value Added Remarketers (VARs). The terms of specific VAR agreements will be agreed to between CONSIST and SAGA on a case-by-case basis.

(11)  CONSIST (including CONSIST and Natalio Fridman or any subsidiary or affiliated business entity) agrees not to act as agent, partner, distributor, reseller or marketing representative for any systems software products which compete with the SAGA SYSTEMS without an approval of SAGA unless the competing product is already being sold by CONSIST. The approval of specific competitive products will be agreed to between CONSIST and SAGA on a case-by-case basis.

(12)  When requested by CONSIST, SAGA will execute the documents required by government authorities in the TERRITORY for remittance of royalties for SAGA products by the CONSIST affiliates. All payment by CONSIST affiliates will be credited as payment under this Agreement.

Total CONSIST obligations to SAGA are solely those specified in the Agreement.

9/9/97 4:10 PM                                    4

In the case of any conflict between this Agreement and any document executed by SAGA with any CONSIST affiliate, this Agreement shall prevail.

## Paragraph 6

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

## Paragraph 7

Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

## Paragraph 8

All legal notices hereunder shall be in writing and shall be deemed properly delivered and effective when duly sent by Certified Mail, Postage Prepaid, telex or cable, or delivered by hand:

to CONSIST at:  CONSIST INTERNATIONAL, INC.
10 East 53rd Street
27th Floor
New York, NY 10022
Attn: Mr. Natalio S. Fridman

and to SAGA at:  SOFTWARE AG AMERICAS, INC.
11190 Sunrise Valley Drive
Reston, Virginia 20191
Attn: International Operations

or to such other address as the receiving party may by written notice designate to the other. All operational correspondence and quarterly reports (technical assistance, sales and marketing support) will be directed to the SAGA address shown above.

## Paragraph 9

This Agreement, including Annexes and Exhibits, constitutes the entire Agreement between the parties; and supersedes and merges all previous communications, representations or agreements, either written or orally, with respect to the subject matter hereof, so that this Agreement may only be changed or modified by another Agreement sighed by the parties hereto.

9/9/97  4:10 PM                                   5

**Paragraph 10**

This contract shall be subject to, and interpreted in accordance with, the laws of the State of New York, USA without regard to the New York provisions governing conflict of laws. SAGA agrees to defend or at its option settle any claim, suit or proceeding brought against CONSIST from the third parties for patent or copyright infringement and indemnify CONSIST against any claims for infringement of any patent or copyright by the SYSTEMS. CONSIST will promptly notify SAGA in writing of any such claims, suits or proceedings and give SAGA full information and assistance to settle and/or exclusive of any judicial and administrative awards, incurred without SAGA's written authorization.

**Paragraph 11**

CONSIST agrees to indemnify SAGA from any liability that may be incurred by SAGA because CONSIST either overstated the performance of any SYSTEMS or part thereof, or failed to exercise the due care to resolve any problems of which CONSIST was notified by SAGA and/or any end-user.

Agreement Accepted:
SOFTWARE AG AMERICAS, INC.

By: _____

Name: JAMES H. DALY

Title: V.P. - International Ops.

Date: 9/9/97

Agreement Accepted:
CONSIST INTERNATIONAL, INC.

By: _____

Name: Natalio Fridman

Title: President

Date: _____

## ANNEX A

1.    All the system software packages offered for distribution by Software AG of Darmstadt, Germany and SAGA, including their subsidiaries and affiliates now and in the future including, but not limited to, those shown on the attached list, and to include BOLERO and ODYSSEY.  SAGA is the perpetual, exclusive distributor in the TERRITORY for all the products of Software AG of Darmstadt, Germany.

2.    All application packages, except for PRODIS, are excluded from this agreement.

3.    The SAGA Year2000 Toolkit is not included in this Agreement.  The parties understand and agree that it is the subject of a separate Agreement.

9/17/97

7

# ANNEX B

Special Products are those products listed below, and any additions to this list, as made by SAGA, from time to time.   Additions may include new products or new versions or releases of existing Special Products.   For new Special Products which require that royalties be paid to third-parties, CONSIST will reimburse SAGA for all costs associated payable to the thirds party with respect to all such Special Products.

    1.       ESPERANT

    2.       PASSPORT



# EXHIBIT A

1.　　CONSIST agrees to pay SAGA a fixed cash lump sum payment quarterly according to the following table using the annual increase/decrease in the Audited SAGA Product/License Revenue as the basis for the adjustment to the quarterly fixed cash lump sum payment made by CONSIST to SAGA. In any year the maximum increase or decrease will be no greater than twenty percent (20%); however, in any year in which one or more products have been specifically declined by CONSIST (as per paragraph 2) then the maximum decrease will be ten percent (10%).

## ANNUAL ADJUSTMENT TABLE BASED ON INCREASE/DECREASE IN SAGA PRODUCT/LICENSE REVENUE

| Change to CONSIST Annual Royalty | Annual % Change in SAGA Product/License Revenue |
|---|---|
| Not to go below 10% or 20% Annually (See Paragraph 1) | |
| Decrease to -10% | Actual % Decrease |
| 0 | 0 |
| Up to 20% Increase | Actual % Increase |
| Not to exceed 20% Annually | |

2.　　The baseline SAGA Product List will be the SAGA Product List in effect as of December 31, 1997. Any new SAGA Products developed or acquired over the term of this Agreement shall be added to the SAGA Product List unless specifically declined in writing by CONSIST, and the quarterly fixed cash lump sum payments will be adjusted as appropriate. Appropriate adjustments will be made for acquisition of entities by SAGA which effect this calculation and such adjustments will be mutually agreed upon by both parties.

3.　　The Baseline Year is established at an annual royalty of $7,500,000. (US DOLLARS), cash only, with no credit for tax receipts. All transfers of cash payments to take place within the United States of America. When a separate agreement is entered into between CONSIST and SAGA for the Year 2000 Toolkit, CONSIST will receive a one-time credit of $500,000 towards any amounts due from CONSIST to SAGA under such Year 2000 Toolkit agreement.

4.　　Payments must be made quarterly, by the 10th day at the end of each quarter. The payments shall commence on January 1, 1998.

5.　　The new royalty calculation for each year of the Agreement will be presented to CONSIST at the completion of the SAGA Annual Audit, which is scheduled for completion in April of each year (unless otherwise amended by SAGA). Until the calculation is completed, CONSIST will make the first quarterly payment using the prior year's quarterly payment schedule. The parties agree to reconcile the payments, by adjusting the amounts proportionally over the remaining three quarters of that year.

9/9/97 4:10 PM　　　　9　　

Exhibit 2

## DISTRIBUTORSHIP AGREEMENT

THIS AGREEMENT made as of          day of

between        SOFTWARE AG
               Uhlandstraße 12
               D-6100 Darmstadt

               and

               SOFTWARE AG OF NORTH AMERICA, INC.
               11190 Sunrise Valley Drive
               Reston, Virginia 22091 USA

               (hereinafter called "SAG")

and            PAN AMERICAN COMPUTER SYSTEMS, INC.
               150 Broad Hollow Road
               Melville, New York 11747 USA

               (hereinafter called "PACS")


### WITNESSETH, That


WHEREAS, SAG is the sole proprietor of certain software packages according to Attachment 1 (being upgraded from time to time), hereinafter referred to as the "SYSTEMS";
and
WHEREAS, PACS wants to market the SYSTEMS and to provide assistance to users of the SYSTEMS in Argentina, Brazil, Chile, Bolivia, Paraguay and Uruguay, hereinafter called the "TERRITORY".

Now therefore, the parties hereto agree as follows:

*Page 2*

*Paragraph 1*

SAG appoints PACS the exclusive distributor of SAG in the TERRITORY for the period of January 1, 1992 thru December 31, 1994 with an automatic prolongation of another three years (Jan. 1, 1995 thru Dec. 31, 1997) provided that PACS has fulfilled all conditions during the first three year period.

The quotas (Paragraph 3) for this prolongation period will be set by Software AG but will not be unreasonably increased

*Paragraph 2*

SAG hereby authorizes PACS to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

However, PACS is only authorized to give single, non-transferable use-licenses for SYSTEMS to customers. Giving any form of sublicense or distribution rights like direct or indirect OEM arrangements to a "contract partner" needs the written consent of SAG.

Contracts for installations of the SYSTEMS outside the TERRITORY need the prior written approval of SAG.

*Paragraph 3*

Upon the execution by PACS of perpetual or time-limited license and/or maintenance agreements for SYSTEMS in the TERRITORY, PACS agrees to pay SAG a percentage of the license and/or maintenance fees in the form of a quarterly minimum lump sum payment according to the following schedule:

Commencing January 1, 1992 on each January 1, April 1, July 1 and October 1 thereafter during the term of this agreement, PACS will pay the following:

a)  Each quarter of 1992, the sum of US$ 590,000
b)  Each quarter of 1993, the sum of US$ 640,000
c)  Each quarter of 1994, the sum of US$ 700,000

For each calendar year commencing Jan. 1, 1993 the following rule applies:
If the new perpetual and time-limited licenses in the TERRITORY computed as license fees in the US-pricelist times 25 percent exceed the above mentioned corresponding lump sum for the year, PACS should pay the corresponding difference together with the next quarterly lump sum payment.

*Page 3*

*The above payments will be made within 10 (ten) days prior to the commencement of each of the above quarters.*

*Any quarterly payment not received within the due date period above mentioned, shall bear interest at a rate of 3 % p.a. above the prime commercial rate of Citibank existing at that time.*

## Paragraph 4

*SAG agrees to provide the following services to PACS:*

1.  *Training in public classes held by SAG for PACS staff (up to 5 persons) how to use the SYSTEMS in public classes held by SAG;*

2.  *latest version of the SYSTEMS stored on magnetic tape;*

3.  *complete set of SYSTEMS documentation in English, including Reference Manual and Utilities Manual (one copy for each user);*

4.  *prompt correction of any errors in the SYSTEMS detected at a user's site and forwarded to SAG.*

## Paragraph 5

(1)  *PACS agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.*

*PACS has the right to reproduce and, as necessary, translate SYSTEMS documentation, Manuals, etc. for use in the TERRITORY. Written material used by PACS for marketing or support to users of the SYSTEMS will refer to authorship of SAG and will show copyright and trademark of SAG.*

*PACS acknowledges the SYSTEMS and all documentation or information as a trade secret of SAG and undertakes to oblige also its own personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent it from unauthorized use.*

(2)  *PACS agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without the written approval of SAG.*

*Page 4*

(3)     PACS agrees to refrain from installing the SYSTEMS at a user's site without having obtained a written agreement from the user calling for safeguarding of the proprietary nature of the SYSTEMS.   Such written agreement must be either a right of use agreement, or a non-disclosure agreement for demonstration.

(4)     PACS agrees to make all reasonable efforts to successfully market the SYSTEMS in the TERRITORY.

(5)     PACS agrees to provide written quarterly reports concerning all contracts to include products, kind of computer, operating system, customer name and address, and duration of license, no later than 4 weeks after the end of a calendar month.

For the purpose of good cooperation, planning, development and strategies, PACS will also on some periodic basis deliver some information about the market place, its needs and specialties.

(6)     PACS agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users.  This obligation of PACS will continue until termination of this agreement including any extension thereof.

(7)     PACS will be responsible for supplying SAG with all pertinent information concerning any software errors and will forward promptly all documentation along to SAG with an explanation of the circumstances causing the problem and SAG will correct any errors in the SYSTEMS.

(8)     In no case shall SAG be held liable by PACS or any of PACS customers in this TERRITORY for any damages, direct or consequential, derived from the use of the SYSTEMS.  PACS shall include a corresponding clause in its license agreements which makes sure that SAG cannot be held liable in this above sense by a customer.

(9)     SAG shall not be held liable for any taxes arising out of the activities of PACS, like sales tax, income tax, import tax, value added tax or alike.

(10)    PACS shall abide by all U.S. Export Administration Regulations which may apply to the SYSTEMS and their exportation and/or re-exportation.

**Paragraph 6**

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

_Page 5_

## Paragraph 7

_SAG reserves the right to terminate this Agreement should PACS fail to perform any of the stated conditions of this Agreement._

_Before any such termination shall become effective, SAG shall give written notice to PACS describing in detail what conditions PACS has failed to perform, and PACS shall have 60 (sixty) days in which to perform such conditions._

## Paragraph 8

_All legal notices hereunder shall be in writing and shall be deemed properly delivered and effective when duly sent by Certified Mail, Postage Prepaid, telex or cable, or delivered by hand:_

_to PACS at:_   PAN AMERICAN COMPUTER SYSTEMS, INC.
150 Broad Hollow Road
Melville, New York 11747
U.S.A.
(attention: Mr. Natalio S. Fridman)

_to CONSIST at:_   CONSIST CONSULTORIA, SISTEMAS E REPRES. LTDA.
Alameda Jau, 1 177 01420 Sao Paulo- SP
Brazil
(attention: Mr. Natalio S. Fridman)

_and to SAG at:_   SOFTWARE AG
Uhlandstraße 12
6100   Darmstadt
W. Germany
(attention: Mr. Peter Schnell)

_or to such other address as the receiving party may by written notice designate to the other._

_All operational correspondence (technical assistance, sales and marketing support) will be directed to:_

SOFTWARE AG OF NORTH AMERICA, INC.
11190 Sunrise Valley Drive
Reston, Virginia 22091
U.S.A.
(attention: Mr. Philippe Kuperman)

*Page 6*

*All quarterly reports will be directed to the above address and to:*

> *SOFTWARE AG*
> *Uhlandstraße 12*
> *6100   Darmstadt*
> *W.Germany*
> *(attention: Mr. P. Schnell)*

*Paragraph 9*

*Should the US-Dollar be introduced in Brazil as a parallel or only local currency or the government institute a change in the economic policy which de facto produces the same effect and thus permit the system software business in Brazil to be conducted similar to other countries (like Europe, North America, Australia etc.), the terms of this contract have to be renegotiated. If the negotiations fail (written notice from one side) the contract will expire automatically 12 months thereafter.*

*Paragraph 10*

*PACS and Mr. Natalio S. Fridman and CONSIST-CONSULTORIA, SISTEMAS E REPRESENTACOES LTDA., warrant fulfillment of PACS obligations.*

*In the event of Mr. Natalio Fridman losing control of CONSIST and/or PACS due to incapacity or change in ownership this agreement must be re-negotiated upon notice to PACS. If the negotiations fail (written notice from one side) the contract will expire automatically 12 months thereafter.*

*Paragraph 11*

*This Agreement, including Attachments, constitutes the entire agreement between the parties and supersedes all previous communications, representations or agreements, either written or oral, with respect to the subject matter hereof.*

*Paragraph 12*

*This contract shall be subject to and interpreted in accordance with German Law. SAG agrees to defend or at its option to settle any claim, suit or proceeding brought against PACS from third parties and to indemnify PACS against any costs derived from claims of infringement of any patent or copyright of the SYSTEMS provided.*

*Page 7*

*Paragraph 12 (Cont.)*

*PACS notifies SAG within a week in writing of any such claim, suit or proceeding and gives SAG full information and assistance to settle and/or defend.  SAG shall not be liable for any defense costs or expenses, exclusive of any judicial and administrative awards, incurred without SAG's written authorization.*

*PACS agrees to indemnify SAG from any liability that may have been generated because PACS either overstated the performance of any part of SYSTEM or failed to handle properly.*

*END OF PAGE 7*

<u>Page 8</u>

Agreement Accepted:

SOFTWARE AG

By _____
   Authorized Signature

Name Typed <u>Peter Schnell</u>

Title <u>Vorstand</u>

Date <u>6 - Dec 1991</u>


SOFTWARE AG
OF NORTH AMERICA, INC.

By _____
   Authorized Signature

Name Typed <u>Philippe Kuperman</u>

Date <u>Nov. 27, 1991</u>


Agreement Accepted:

PAN AMERICAN COMPUTER
SYSTEMS, INC.

By _____
   Authorized Signature

Name Typed <u>Natalio S. Fridman</u>

Title <u>President</u>

Date <u>Nov 27, 1991</u>


MR. NATALIO FRIDMAN AND
CONSIST-CONSULTORIA, SISTEMAS
E PEPRESENTACOES, LTDA.

By _____
   Authorized Signature

Name Typed <u>Natalio S. Fridman</u>

Date <u>Nov 27, 1991</u>


MR. NATALIO S. FRIDMAN
INDIVIDUALLY

_____

Name Typed <u>Natalio S. Fridman</u>

Title _____

Date <u>Nov 27, 1991</u>

ROM : CONSIST INT'L                    TEL: 212 751 3643

## _ATTACHMENT 1_

List of products officially released as of September 1, 1991 according to the following US
price list:

Rev. 2/27/95

<u>DISTRIBUTORSHIP AGREEMENT</u>

THIS AGREEMENT made as of the 1st day of January 1995.

between     SOFTWARE AG
              Uhlandstrasse 12
              64297 Darmstadt

              SOFTWARE AG OF NORTH AMERICA, INC.
              11190 Sunrise Valley Drive
              Reston, Virginia    22091 USA

              (hereinafter called "SAG")

and          PAN AMERICAN COMPUTER SYSTEMS, INC.
              150 Broad Hollow Road
              Mellville, New York    11747 USA

              (hereinafter called "PACS", which term shall include all
              PACS subsidiaries and affiliates)

                    WITNESSETH, That

WHEREAS, SAG is the proprietor of certain software packages, as set forth in Annex A (herein "SAG Products") (being upgraded from time to time), and offers certain products, as set forth in Annex B, for which SAG pays royalties (herein "SPECIAL PRODUCTS") (being upgraded from time to time) both of which are collectively referred to herein as "SYSTEMS").

and

WHEREAS, PACS wants to market the SYSTEMS and to provide assistance to users of the SYSTEMS in Argentina, Brazil, Chile, Bolivia, Paraguay and Uruguay, hereinafter called the "TERRITORY".

Now therefore, the parties hereto agree as follows:

Paragraph 1

SAG appoints PACS the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1995 through December 31, 1997.

During the third year (1997) of this term the parties agree to negotiate, in good faith, a new agreement.

If at the end of any year of this Agreement, PACS product license revenue (with leases, limited in time licenses and month-to-month licenses being treated as perpetual licenses) based on the current U.S. standard price list, in Chile is less than the following yearly quotas:

           1995   US$1,000,000
           1996   US$3,000,000
           1997   US$5,000,000

SAG may terminate this Agreement, as to Chile <u>only</u>, in accordance with Paragraph 7.

1

**Paragraph 2**

SAG hereby authorizes PACS to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

However, PACS is only authorized to give non-transferable use-licenses for SYSTEMS to customers. Giving any form of sublicense or distribution rights, such as direct or indirect OEM arrangements, to a "contract partner" will require the prior written consent of SAG.

Contracts for installations of the SYSTEMS outside the TERRITORY shall require the prior written consent of SAG.

**Paragraph 3**

For the right to grant perpetual or time-limited licenses, and/or maintenance agreements, PACS agrees to pay SAG as provided in Exhibit A hereto.

Payments will be made within ten (10) days of the end of each quarter.

Any quarterly payment not received within the due date period above mentioned, shall bear interest at a rate of 3% p.a. above the prime commercial rate of Citibank in effect at that time.

SAG will provide invoices to PACS for all payments made by PACS.

**Paragraph 4**

SAG agrees at no additional costs to provide the following services to PACS:

1.  Training in public classes held by SAG for PACS staff (up to 5 persons)per class;

2.  Ten (10) copies of the latest version of the SYSTEMS stored on magnetic tape;

3.  Ten (10) copies of complete sets of SYSTEMS documentation in English, including Reference Manual and Utilities Manual.

4.  Prompt correction or any errors in the SYSTEMS detected at the user's site and forwarded to SAG.

**Paragraph 5**

(1)  PACS agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.

PACS has the right to reproduce and, as necessary, translate SYSTEMS, documentation, Manuals, etc. for use in the TERRITORY. Written material used by PACS for marketing or support to users of the SYSTEMS will refer to authorship of SAG and will show copyright and trademark of SAG.

PACS acknowledges the SYSTEMS and all documentation or information as trade secrets of SAG and undertakes to oblige its personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent them from unauthorized use.

2

PACS agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without the written notice to SAG.

(2)  PACS agrees to refrain from installing the SYSTEMS at a user's site without having obtained a written agreement from the user calling for safeguarding of the proprietary nature of the SYSTEMS. Such written agreement must be either a right of use agreement, or a non-disclosure agreement for demonstration.

(3)  PACS agrees to make all reasonable efforts to successfully market the SYSTEMS in the TERRITORY.

PACS shall, at its expense, provide SAG with a written quarterly report of all installations and de-installations of the SYSTEMS in the TERRITORY, made in the quarter, including product name, operating system, hardware class or machine type, customer name, customer address, and installation/de-installation date. All installations will be considered perpetual licenses unless later reported as de-installed.

Within sixty (60) days of the execution of this Amendment, the parties will meet and specify the format of the required quarterly reports.

SAG will take no action against PACS for any reports which were due prior to January 1, 1995.

(4)  PACS agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users. This obligation of PACS will continue until termination of this agreement including any extension thereof.

(5)  PACS shall be responsible for supplying SAG with all pertinent information concerning any software errors and will forward promptly all documentation along to SAG with an explanation of the circumstances causing the problem and SAG will correct any errors in the SYSTEMS.

(6)  In no case shall SAG be held liable by PACS or any of PACS customers in this TERRITORY for any damages, indirect or consequential, derived from the use of the SYSTEMS.

(7)  SAG shall not be held liable for any taxes arising out of the activities of PACS, such as sales tax, income tax, import tax, value added tax or alike. All withholding taxes for payments made by PACS for SAG shall be credited as payments, provided that PACS furnishes SAG with adequate receipts or vouchers as the case may be.

The maximum withholding will be twenty percent (20%) of the taxable amount per quarter.

(8)  PACS shall abide by all U. S. Export Administration Regulations which may apply to the SYSTEMS and their exportation and/or re-exportation.

(9)  PACS agrees that SAG has the right to make multinational agreements with end-user customers which may result in installations in the TERRITORY at discounts negotiated by SAG. PACS will accept all such agreements and discounts as valid in the TERRITORY with compensation to PACS according to SAG's published worldwide multinational policy.

3

(10) PACS agrees to cooperate with SAG in establishing international Value Added Remarketers (VARs). The terms of specific VAR agreements will be agreed to between PACS and SAG on a case-by-case basis.

(11) PACS (including CONSIST and Natalio Fridman or any subsidiary or affiliated business entity) agrees not to act as agent, partner, distributor, reseller or marketing representative for any systems software products which compete with the SAG SYSTEMS without the a approval of SAG. The approval of specific competitive products will be agreed to between PACS and SAG on a case-by-case basis.

(12) When requested by PACS, SAG will execute the documents required by government authorities in the TERRITORY for remittance of royalties for SAG products by the PACS affiliates. All payment by PACS affiliates will be credit as payment under this Agreement.

Total PACS obligations to SAG are solely those specified in this Agreement.

In the case of any conflict between this Agreement and any document executed by SAG with PACS affiliate, this Agreement shall prevail.


Paragraph 6

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

Paragraph 7

SAG reserves the right to terminate this Agreement should PACS fail to perform any material conditions of this Agreement.

Before such termination shall become effective, SAG shall give written notice to PACS describing in detail what material conditions PACS has failed to perform, and PACS shall have sixty (60) days in which to perform such conditions.

Paragraph 8

All legal notices hereunder shall be in writing and shall be deemed properly delivered and effective when duly sent by Certified Mail, Postage Prepaid, telex or cable, or delivered by hand:

to PACS at:        PAN AMERICAN COMPUTER SYSTEMS, INC.
                   150 Broad Hollow Road
                   Mellville, New York    11747
                   U.S.A.
                   (Attention:  Mr. Natalio S. Fridman)

to CONSIST at:     CONSIST CONSULTORIA, SISTEMAS E REPRES. LTDA.
                   Avenida de las Naciones Unidas - 20727
                   Sao Paulo, Brazil
                   (Attention:  Mr. Natalio S. Fridman)

4

and to SAG at:    SOFTWARE AG
                 Ulandstrasse 12
                 64297 Darmstadt
                 W. Germany
                 (Attention:  Mr. Peter Schnell)

or to such other address as the receiving party may by written notice designate to the other.

All operational correspondence (technical assistance, sales and marketing support) will be directed to:

                 SOFTWARE AG OF NORTH AMERICA, INC.
                 11190 Sunrise Valley Drive
                 Reston, Virginia   22091
                 U.S.A.
                 (Attention:  Mr. Philippe Kuperman)

All quarterly reports will be directed to the above address and to:

                 SOFTWARE AG
                 Uhlandstrasse 12
                 64297 Darmstadt
                 W. Germany
                 (Attention:  Mr. P. Schnell)

Paragraph 9

PACS and Mr. Natalio S. Fridman, including his heirs and assigns, and CONSIST-CONSULTORIA, SISTEMAS E REPRESENTACOES LTDA., warrant fulfillment of PACS obligations.

Paragraph 10

This Agreement, including Annexes and Exhibits, constitutes the entire Agreement between the parties; and supersedes and merges all previous communications, representations or agreements, either written or orally, with respect to the subject matter hereof, so that this Agreement may only be changed or modified by another Agreement signed by the parties hereto.

Paragraph 11

This contract shall be subject to, and interpreted in accordance with, the laws of the State of New York, USA.  SAG agrees to defend or at its option settle any claim, suit or preceeding brought against PACS from the third parties for patent or copyright infringement and indemnify PACS against any claims for infringement of any patent or copyright by the SYSTEMS offered.

PACS will promptly notify SAG in writing of any such claims, suit or proceeding and give SAG full information and assistance to settle and/or defend.  SAG shall not be liable for any defense costs or expenses exclusive of any judicial and administrative awards, incurred without SAG's written authorization.

PACS agrees to indemnify SAG from any liability that may be generated because PACS either overstated the performance of any SYSTEM or part thereof, or failed to exercise the due care to resolve problem.

5

Agreement Accepted:
SOFTWARE AG

By: _____
        Authorized Signature

Name Typed: Peter Schnell
Title: _____
Date: _____


SOFTWARE AG OF NORTH
AMERICA, INC.

By: _____
        Authorized Signature

Name Typed: Michael King
Title: _____
Date: _____


Agreement Accepted:
PAN AMERICAN COMPUTER
SYSTEMS, INC.

By: _____
        Authorized Signature

Name Typed: Natalio S. Fridman
Title: Pres. W.D.T
Date: 2/28/95


MR. NATALIO FRIDMAN AND
CONSIST-CONSULTORIA / SISTEMAS
RESPRESENTACOES, LTD.

By: _____
        Authorized Signature

Name Typed: Natalio S. Fridman
Title: _____
Date: 2/28/95


MR. NATALIO S. FRIDMAN
INDIVIDUALLY

_____

Name Typed: Natalio S. Fridman

Title: _____

Date: 2/28/95

6

ANNEX A

1.    All the system software packages offered for distribution
by SAG now and in the future including, but not limited to,
those shown on the attached list.

Application packages, except for PRODIS, are excluded.

ANNEX B.

SPECIAL PRODUCTS

Special Products are those products listed below, and any additions to this list, as made by SAG, from time to time. Additions may include new products or new releases of existing Special Products. For new Special Products which require that royalties be paid to third-parties, PACS will reimburse SAG for all out-of-pocket costs associated with all such Special Products.

1.    ESPERANT

2.    ADABAS-D

3.    CONSTRUCT

4.

8

EXHIBIT A

PACS agrees to pay SAG a quarterly fixed lump sum payment according to the following schedule:

Commencing January 1, 1995 and no later than ten (10) days following the end of each subsequent quarter thereafter during the term of this Agreement, PACS will pay the following:

a)  Each quarter of 1995, the sum of US$1,500,000
b)  Each quarter of 1996, the sum of US$1,750,000
c)  Each quarter of 1997, the sum of US$2,250,000

Exhibit 3



Software AG, Postfach 13 02 51, D-64242 Darmstadt

Consist International, Inc.
Attn: Mr. Natalio Friedman
10 East 53rd Street
27th Floor
New York, NY 10022
U.S.A.

30 March 2006

**Distributorship Agreement**

Dear Mr. Friedman,

Software AG has decided not to renew the exclusive distributorship agreement beyond the initial term that will end on Dec. 31, 2007. Accordingly, we have instructed our subsidiary Software AG, Inc. to give you notice of termination of the Distributorship Agreement between Consist International, Inc. and Software AG, Inc. with effectiveness Dec. 31, 2007.

We are, however, open to take up discussions on a continuation of the partnership between Consist and Software AG beyond Dec. 31, 2007 on a non-exclusive and for both parties satisfying basis. Please feel free to make any suggestions on how this can be achieved and on what basis such discussion can be started.

Yours sincerely

**s o f t w a r e   a g**

Karl-Heinz Streibich            Arnd Zinnhardt

Software AG
Uhlandstraße 12, D-64297 Darmstadt, Postfach 13 02 51, D-64242 Darmstadt, Tel.: +49-6151-92-0, Fax: +49-6151-92-1191, www.softwareag.com

Vorstand: Karl-Heinz Streibich (Vorsitzender), Christian Barrios Marchant, Mark Edwards, Dr. Peter Kürpick, Alfred Pfaff, Arnd Zinnhardt
Aufsichtsratsvorsitzender: Frank F. Beelitz
Amtsgericht Darmstadt HRB 1562; USt-ID: DE 111 660 314; Steuernummer 007 225 73906; HypoVereinsbank Darmstadt, BLZ 508 202 92, Konto-Nr. 3 093 000, IBAN: DE96 5082 0292 0003 0993 00, BIC: HYVEDEMM487; Commerzbank AG Darmstadt, BLZ 508 400 05, Konto-Nr. 1 475 896; Landesbank Hessen-Thüringen Darmstadt, BLZ 508 500 49, Konto-Nr. 5 000 304 005

EX 4



**SOFTWARE AG**
THE XML COMPANY

Software AG, Inc.

North America Headquarters
11700 Plaza America Drive
Suite 700
Reston, Virginia 20190

T. 703-860-5050
www.softwareagusa.com

CONSIST International Inc.
Attn. Mr. Natalio S. Friedman
10 East 53rd Street
27th Floor
New York, NY 10022
U.S.A

6. April 2006

**CONSIST – Software AG, Inc. Distributorship Agreement
Notice of Termination**

Dear Mr. Friedman,

We hereby give notice of termination as of Dec. 31, 2007 of the distributorship agreement between Consist International Inc. and Software AG, Inc., formerly known as Software AG Americas, Inc.

Please be so kind to confirm receipt of this notice by fax to Fax No. 703 391 6782.

Yours' sincerely

**Software AG Inc.**

Haskell Mayo
President

EX 5

**From:** Streibich, Karl-Heinz
**To:** Fridman, Natalio
**Sent:** Tuesday, July 04, 2006 8:32 AM
**Subject:** Cooperation agreement


Dear Natalio,

Since communication obviously stopped between the two of us in respect of the termination of our contract,
I want to inform you on the following issues:

1. We consider the none utilized market potential for our products in your territory, especially in Paraquay, Peru, Argentina, Bolivia, Chile, Uruquay, as a breech of our contract.

   We tried to get an agreement with you to enter the market in a coexisting mode. Promissing talks started but have not yet been concluded.

2. You mentioned in our last phone call, that you will convert your customers who have installed Software AG products to products of competitors.

   I want to inform you that this would be a breech of contract as well, and we will not accept this.
   In addition, I want to make clear, that you are not allowed to sell competing products in our contractual territory.


Natalio, if you would like to discuss anything with me, feel free to contact me at any time.

Best regards,


Karl-Heinz Streibich
CEO, Software AG

EX 6

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

HYMAN L. SCHAFFER
DIRECT DIAL: 212.692.1078
E-MAIL: hlschaffer@duanemorris.com

www.duanemorris.com

July 28, 2006

Software AG, Inc.
11700 Plaza America Drive
Suite 700
Reston, VA 20190

Software AG Americas, Inc.
1190 Sunrise Valley Drive
Reston, VA 20191
Attn: International Operations

Gentlemen:

My firm represents Consist International, Inc. ("Consist") and I refer to the Distributorship Agreement effective January 1, 1998 (the "Agreement") between Consist and Software AG Americas, Inc., now known as Software AG, Inc. ("SAGA").

On March 30, 2006, SAGA's parent, Software AG, sent a letter to Consist stating that it had instructed SAGA to give notice of termination of the Agreement effective December 31, 2007. On April 6, 2006, SAGA sent notice to Consist purporting to terminate the Agreement. This attempted termination was ineffective under the terms of the Agreement.

Paragraph 1 of the Agreement provides that:

SAGA appoints CONSIST the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1998 through December 31, 2007. The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving eighteen (18) months prior written notice to the other party.

Paragraph 7 of the Agreement provides that:

Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail

DuaneMorris

Page 2

what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

The only termination provision set forth in the Agreement is that contained in Paragraph 1. SAGA's purported notice of termination failed to provide Consist with notice describing in detail what material conditions Consist allegedly has failed to perform, as required by Paragraph 7 of the Agreement, nor did it provide Consist with 60 days to perform such conditions. Because SAGA's notice failed to do so, the purported notice of termination was defective and ineffective under the Agreement. Accordingly, the Agreement has been automatically renewed for five years beginning January 1, 2008.

On July 4, 2006, Karl-Heinz Streibich, CEO of Software AG, sent an e-mail to Consist's president, Mr. Natalio S. Fridman, stating: "We consider the none [sic] utilized market potential for our products in your territory, especially Paraguay, Peru, Argentina, Bolivia, Chile, Uruguay, as a breech [sic] of our contract." Even had such e-mail been proper and sufficient notice pursuant to Paragraph 7 of the Agreement, which it was not, it was untimely since it was given less than 18 months prior to December 31, 2007.[*]

In all events, Consist rejects any assertion in the July 4 e-mail that Consist breached the Agreement and states that its performance at all times has been in accordance with the Agreement's requirements.

As a result of all of these defects, and without waiver of any other claims, arguments, and defenses Consist may have, Consist rejects SAGA's purported termination of the Agreement.

This letter also serves as notice to SAGA and Software AG that Consist will hold SAGA, Software AG and their affiliates liable for all breaches of the Agreement occasioned by their actions in the Territory. Consist intends to seek damages or other relief from SAGA, Software AG and their affiliates, as appropriate, consisting of, among other things, all revenue or other value received by them from the sale of Software AG products for which Consist has exclusive rights, for interfering with Consist's contractual rights and business, for disrupting Consist's market in the Territory, and for causing, or aiding and abetting, the misappropriation of Consist's proprietary and confidential business information.[†]

On behalf of Consist, I demand that SAGA, Software AG and their affiliates cease their activities in violation of the Agreement forthwith, and that they and their affiliates account to Consist for all revenue and value derived therefrom and damage to Consist caused thereby.

---

[*] Consist has never received any other notice under the Agreement or otherwise purporting to identify any nonperformance by it of material conditions.

[†] Consist has taken and is continuing to take steps to strengthen its marketing presence in the Territory. To the extent that SAGA and its affiliates are conducting activities in the Territory in violation of Consist's rights or that otherwise affect its ability to perform under the Agreement, Consist deems any purported failure of performance to have been waived or excused.

DuaneMorris

Page 3

Consist reserves all of its rights under the Agreement and at law. Absent your agreement to withdraw the notice of purported termination and your agreement immediately and permanently to cease all violations of the Agreement, to account to Consist for revenue and value received by SAGA, Software AG and their affiliates in violation of Consist's contractual rights, and to repair all damage to Consist and its business resulting from such activities, Consist will act promptly and vigorously to protect its rights through all legitimate means.

Very truly yours,

Hyman L. Schaffer