DUANE MORRIS LLP
Hyman L. Schaffer (HS-4536)
Fran M. Jacobs (FJ-0892)
Brian Damiano (BD-3922)
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Plaintiff*
*Consist Software Solutions, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
CONSIST SOFTWARE SOLUTIONS, INC., :
f/k/a CONSIST INTERNATIONAL, INC., :
                                                                    : 07 CV 7047 (CM) (FM)
                    Plaintiff, :
        -against- :
                                     : **PLAINTIFF'S FIRST**
SOFTWARE AG, INC. and SOFTWARE AG, : **REQUEST FOR THE**
                                     : **PRODUCTION OF**
                Defendants. : **DOCUMENTS**
-----------------------------------------------------------------x

       Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff Consist Software Solutions, Inc. f/k/a Consist International, Inc. ("Consist"), by and through its attorneys, Duane Morris LLP, requests that defendants Software AG, Inc. f/k/a Software AG Americas, Inc. ("SAGA") and Software AG ("SAG") produce and permit it to inspect and copy the documents described below. The production should be made on or before thirty days following service of this Request at the offices of Duane Morris LLP, 1540 Broadway, 14th Floor, New York, New York 10036.

## DEFINITIONS

For purposes of this Request for Production, the following definitions shall apply:

1. The full text of the uniform definitions and rules of construction set forth in Local Civil Rule 26.3 of the Rules of the U.S. District Courts for the Southern and Eastern Districts of New York is incorporated herein by reference and is applicable to all of the Requests herein.

2. "Complaint" means the complaint filed by Consist in the Supreme Court of New York, County of New York (Index No. 602644/07) on August 3, 2007.

3. "CONSIST" refers to Consist and its affiliated companies.

4. "SOFTWARE AG" refers to SAG, SAGA and their affiliated companies.

5. "Natalio S. Fridman" refers to the President of Consist.

6. "Karl Heinz-Streibich" refers to the Chief Executive Officer of SAG.

7. The "Agreement" refers to the exclusive Distributorship Agreement between Consist and SAGA dated September 9, 1997 and effective on January 1, 1998, as amended.

8. The "Territory" refers to the seven South American countries (Argentina, Bolivia, Brazil, Chile, Paraguay, Peru and Uruguay) in which CONSIST has exclusive rights to distribute SAG's products as per the Agreement.

9. The "July 4 Email" refers to the July 4, 2006 e-mail from Karl-Heinz Streibich to Natalio S. Fridman, which stated in relevant part: "We consider the none [sic] utilized market potential for our products in your territory, especially Paraguay, Peru, Argentina, Bolivia, Chile, Uruguay, as a breech [sic] of our contract."

10. The "August 16 Letter" refers to the letter dated August 16, 2006 from Baker & McKenzie LLP, attorneys for SOFTWARE AG, to Duane Morris LLP, attorneys for Consist,

2

which, *inter alia*, claimed that Consist had engaged in four supposed breaches of the Agreement, and stated that Consist had 60 days to cure those alleged breaches.

11. "Person" means any natural person or any business, entity, or association.

12. "Document" means writings or records of any nature whatsoever, whether set down by handwriting, typewriting, engraving, printing, photosetting, photographic or magnetic impulse, computer files or storage, or mechanical or electronic recording, within SAG or SAGA's possession, custody or control or the possession, custody or control of any agent, representative or other person acting or purporting to act on behalf of SAG or SAGA; including but not limited to the following: contracts, agreements, communications, correspondence, e-mail communications, telegrams, memoranda, records, reports, books, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, statistical statements, work papers, charts, analytical records, minutes or records of meetings or conferences, records, reports or summaries of negotiations, drafts, notes, marginal notations, bills, invoices, checks, photographs, lists, journals, diaries, computer files, matrices for and all other written, printed, recorded or photographic matter or sound reproductions, however produced or reproduced. A draft or non-identical copy is a separate document within the meaning of this term.

13. "All" and "each" shall be construed as "all and each."

14. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all information that might otherwise be construed as outside its scope.

15. "Concerning" and "regarding" shall mean relating to, referring to, describing, evidencing or constituting.

16. The use of the singular includes the plural and vice versa.

## INSTRUCTIONS

1. SAG and SAGA are required to produce all requested documents that are in their possession, custody or control, including, without limitation, documents in the possession, custody or control of their attorneys and/or agents.

2. In accordance with Fed. R. Civ. P. 34(b), all documents produced by SAG and SAGA in response to this Request for Production shall either be produced as they are maintained in the usual course of business or shall be organized and designated so as to correspond to the Requests to which the documents are responsive.

3. Where a claim of privilege is asserted in objecting to any item of this Request, the documents should be produced, except that it is not necessary to produce the portion of the document as to which the privilege is claimed. However, where privilege is claimed, SAG and SAGA shall produce a privilege log setting forth: (a) the date, author, and subject matter of the document; (b) the name and title of each person who prepared, received, reviewed, or has or had custody, possession, or control of the document; (c) the identity and length of any attachments to the document; (d) the nature of the privilege being claimed or the other ground for withholding the document; and (e) all persons to whom copies were furnished.

4. Each document requested herein should be produced in its entirety without deletions or redactions (except as qualified by Instruction No. 3, above), regardless of whether SAG and SAGA consider the entire document to be relevant or responsive to these Requests.

5. If any responsive document has been, but no longer is, in the possession, custody or control of SAG or SAGA, they shall identify the document by listing all of the following information: (a) the date of the document; (b) a description of the subject matter of the

document; (c) the name or names and addresses of each person who prepared, received, reviewed or either has or had possession, custody, or control of the document; and (d) the place, time and reason for the loss, destruction or discarding.

6. This Request for Production is continuing and any document obtained subsequent to production which would have been produced had it been available or its existence known is to be supplied forthwith, to the extent permitted by Fed. R. Civ. P. 26(e).

## SPECIAL INSTRUCTIONS FOR ELECTRONIC DATA

1. These Requests cover all documents, including electronically stored information, in SAG and SAGA's possession, custody, or control including all documents or electronically stored information that they have the ability to obtain, that are responsive, in whole or in part, to these Requests. All documents including electronically stored information should be produced in the manner in which they are kept in the usual course of business, or organized and labeled to correspond to the categories specified herein to which they are responsive. To the extent that the documents are in any computerized, electronic or digital format or any other medium of communication or storage, the documents shall be downloaded to diskette, CD-ROM disk or DVD without further processing by SAG or SAGA, containing all significant material contained in the electronic records including, whenever available, the creation date for the file and the date it was last modified.

2. When producing responsive electronic mail ("e-mail"), the e-mail should be produced in a format that includes the originating address, all copies and blind copies, the date and time of transmission, each attachment, the mailbox or other post office storage location of every copy, and all replies and/or forwards of the e-mail.

3. Where a Request seeks the production of e-mail, responsive documents include business and personal e-mail accounts. Responsive documents include any e-mails that may have been deleted during the period of January 1, 1998 to the present.

4. Each responsive document consisting of electronically stored information shall be produced in the format in which it was stored, with all of its metadata intact, including, without limitation information sufficient to identify the creation, last modification, and last accessed date, the storage location (e.g. fully qualified path and folder) of the file and the system (e.g. server, computer or device) on which it was stored.

5. In the event that responsive materials exist for which there would be significant cost involved in restoring materials that are in any computerized, electronic or digital format, please advise the undersigned as to the estimated costs involved and the timeframe that would be required for such restoration efforts.

6. Judge McMahon's Rules Governing Electronic Discovery are incorporated herein by reference, and shall govern any issues concerning the production of electronic data that are not directly addressed by these Instructions.

## RELEVANT TIME PERIOD

Unless otherwise indicated, the relevant time period of these Requests shall be *from January 1, 1998 to date*, and shall include all documents that relate or refer to such period even though prepared or published prior or subsequent to that period.

## **DOCUMENTS TO BE PRODUCED**

1. All documents concerning renewal and/or termination of the Agreement.

2. All documents concerning CONSIST's performance of its obligations as exclusive distributor of SOFTWARE AG products in South American markets pursuant to the Agreement and any related predecessor agreements.

3. All documents concerning SAGA's performance of its obligations under the Agreement.

4. All documents concerning communications between CONSIST and SOFTWARE AG regarding renewal and/or termination of the Agreement.

5. All documents concerning communications between CONSIST and SOFTWARE AG regarding Consist's performance of its obligations under the Agreement.

6. All documents concerning communications between CONSIST and SOFTWARE AG regarding SAGA's performance of its obligations under the Agreement.

7. All documents concerning communications between or among SOFTWARE AG and any other third party regarding CONSIST and/or distribution of SOFTWARE AG products in the Territory.

8. All documents concerning communications between or among SOFTWARE AG and any other third party regarding the renewal and/or termination of the Agreement.

9. All documents concerning communications between or among SOFTWARE AG and any other third party regarding Consist's performance of its obligations under the Agreement.

10. All documents concerning communications between or among SOFTWARE AG and any other third party regarding SAGA's performance of its obligations under the Agreement.

11. All documents, regardless of when generated or created, concerning paragraph 1 of the Agreement, including but not limited to the clause which states: "The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving of eighteen (18) months prior written notice to the other party."

12. All documents, regardless of when generated or created, concerning paragraph 7 of the Agreement, which states: "Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions."

13. All documents, regardless of when generated or created, concerning paragraph 5 of the Agreement, including but not limited to the clause which states that Consist "agrees to make all reasonable efforts to successfully market" SOFTWARE AG products in the Territory.

14. All documents, regardless of when generated or created, concerning any exclusive distribution agreements between CONSIST and SOFTWARE AG prior to the Agreement, including but not limited to documents regarding the renewal and/or termination provisions set forth therein.

15. All documents, regardless of when created or generated, including but not limited to communications, regarding drafts of the Agreement or any predecessor agreement for the distribution of SOFTWARE AG products by CONSIST.

16. All documents, regardless of when created or generated, including but not limited to communications, concerning any claimed breach of or failure to perform any term or

condition of the Agreement or any predecessor agreement for the distribution of SOFTWARE AG products in the Territory by any party thereto.

17. All documents, regardless of when created or generated, concerning the negotiation, preparation and drafting of the Agreement or any predecessor agreement for the distribution of SOFTWARE AG products by CONSIST.

18. All documents, regardless of when created or generated, concerning all distribution agreements between SOFTWARE AG and any distributor of its products that were in effect at any point between 1985 and the present.

19. All documents concerning the March 30, 2006 letter from Karl Heinz-Streibich and Arnd Zinnhardt of SAG to Natalio S. Fridman, which stated that SAG had instructed SAGA to give notice of termination of the Agreement effective December 31, 2007.

20. All documents concerning the April 6, 2006 letter from Haskell Mayo, President of SAGA to Natalio S. Fridman, which purported to terminate the Agreement as of December 31, 2007.

21. All documents concerning the July 4 Email, including but not limited to the claim that "We consider the none [sic] utilized market potential for our products in your territory, especially Paraguay, Peru, Argentina, Bolivia, Chile, Uruguay, as a breech [sic] of our contract."

22. All documents concerning the claim in the August 16 Letter that "In breach of Paragraph 5(11), Consist has acted and is acting as a distributor, agent, reseller or marketing representative for system software products which compete with SAGA and without SAGA's approval. Among such products are Attunity.Connect. [sic]"

23. All documents concerning the January 10, 2002 e-mail from Trevor Williams, SAGA's Vice President, Sales, to Natalio S. Fridman, which stated in relevant part: "I agree that the Attunity Connect product may be sold by Consist."

24. All documents concerning the claim in the August 16 Letter that "In breach of Paragraph 5(3) in addition to those breaches detailed in Mr. Streibich's July 4, 2006 letter [sic], Consist refused and continues to refuse to bid on software products for Cementos Bio Bio in Chile pursuant to a request in an email from Tomas Figueroa to Excequiel Matamalaon, dated July 10, 2006."

25. All documents concerning the claim in the August 16 Letter that "In breach of Paragraph 5(4), Consist has failed to provide satisfactory technical assistance and support in the Territory for customers of SAGA products including HSBC and the Pao de Acucar Group."

26. All documents concerning the claim in the August 16 Letter that "In breach of Paragraphs 1 and 5(4) and the duty of good faith and fair dealing which is part of every contract made under New York law, Consist has misrepresented to ABN that it has renewed the Agreement for an additional five year term."

27. All documents concerning actions taken by SOFTWARE AG to become the distributor of its products in the Territory in place of CONSIST.

28. All documents concerning SOFTWARE AG employees communicating, meeting and/or visiting with any of CONSIST's clients regarding renewal and/or termination of the Agreement.

29. All documents concerning SOFTWARE AG's May 19, 2006 press release announcing that its exclusive Agreement with CONSIST would soon terminate.

30. All documents concerning revenue received by or due SAG or SAGA on account of sales of SAG or SAGA software products in the Territory.

31. All documents in SAG or SAGA's possession regarding any defenses they have to the claims alleged against them in the Complaint.

Dated: New York, New York
August 31, 2007

DUANE MORRIS LLP

By: ___/s Hyman L. Schaffer___
Hyman L. Schaffer (HS-4536)
Fran M. Jacobs (FJ-0892)
Brian Damiano (BD-3922)
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
*Attorneys for Plaintiff*
*Consist Software Solutions, Inc.*

TO:   James D. Jacobs (JJ-7351)
Richard A. De Palma (RD-2818)
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 626-4100
(212) 310-1600 (facsimile)
*Attorneys for Defendants*
*Software AG, Inc. and Software AG*