DUANE MORRIS LLP
Hyman L. Schaffer (HS-4536)
Fran M. Jacobs (FJ-0892)
Brian Damiano (BD-3922)
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Plaintiff*
*Consist Software Solutions, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CONSIST SOFTWARE SOLUTIONS, INC.,           :
f/k/a CONSIST INTERNATIONAL, INC.,          :
                                            :   07 CV 7047 (CM) (FM)
                    Plaintiff,              :
        -against-                           :
                                            :
SOFTWARE AG, INC. and SOFTWARE AG,          :
                                            :
                    Defendants.             :
----------------------------------------------------------------x

**MEMORANDUM OF LAW ESTABLISHING THAT THE PARTIES' EXCLUSIVE DISTRIBUTORSHIP AGREEMENT IS AN "EVERGREEN CONTRACT" AND HAS BEEN AUTOMATICALLY RENEWED FOR A FIVE-YEAR TERM COMMENCING ON JANUARY 1, 2008**

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000
*Attorneys for Plaintiff*
*Consist Software Solutions, Inc.*

## INTRODUCTION

In accordance with the Court's September 5, 2007 directive, plaintiff Consist Software Solutions, Inc. ("Consist") respectfully submits this memorandum to show that the exclusive Distributorship Agreement, dated September 9, 1997 and effective January 1, 1998, between Consist and defendant Software AG, Inc. ("SAGA") (the "Agreement") is an "evergreen" contract that has been automatically renewed for a five-year term commencing on January 1, 2008. As set forth below, automatic renewal is supported by the Agreement's unambiguous renewal and termination clauses, which were designed to be read together. Corresponding provisions in the prior distributorship agreements between the parties validates Consist's interpretation of the Agreement as unambiguously written and confirms that it has been renewed.

## ARGUMENT: THE AGREEMENT WAS AUTOMATICALLY RENEWED

**A.      Under Paragraphs 1 and 7, the Agreement has been Automatically Renewed.**

The Agreement is the latest in a succession of contracts dating back over 30 years for distribution of Software AG ("SAG") software products between Consist and its affiliate companies ("CONSIST") and affiliates of SAG (collectively, "SOFTWARE AG").[1] Under the current Agreement (annexed as Ex. 1), CONSIST has exclusive rights to distribute and support SAG's products in a "Territory" comprising seven South American countries. Pursuant to Paragraph 1:

> SAGA appoints Consist the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1998 through December 31, 2007. The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving of eighteen (18) months prior written notice to the other party.

---

[1] At the time the Agreement was executed, SAGA was an independent company. It is now a subsidiary of SAG.

Paragraph 1 sets forth the only termination event in the Agreement. Paragraph 7 of the Agreement goes on to state:

> Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

Since the Agreement does not provide for termination in any provision other than in Paragraph 1, the "termination" referred to in Paragraph 7 necessarily refers back to Paragraph 1.[2] In order to terminate the Agreement, then, Paragraphs 1 and 7 together require the following: 1) at least 18 months before the termination date (which may only occur on one of the anniversary dates), the terminating party must give notice, in detail, of the material conditions the other side failed to perform; and 2) the other side fails to cure within 60 days. Thus, if there is no timely-identified, uncured failure to perform a material condition of the Agreement, it automatically renews for a five-year term. The first automatic renewal date for the Agreement is January 1, 2008.

Read together according to their plain terms, Paragraphs 1 and 7 provide for an "evergreen" contract terminable only at limited times, for specific reasons, with detailed notice requirements. This regime was intentional. From Consist's viewpoint, it was designed to prevent SAGA from doing exactly what it is trying to do here – converting to itself the customer relationships that CONSIST has developed over the years, for which CONSIST has employed hundreds of professionals and spent many millions of dollars. After the Agreement was signed, and in reliance on its evergreen nature, CONSIST began to build up a team of over 200 skilled

---

[2] Under New York law, termination is not a remedy automatically available for a material breach. Instead, material breach gives the non-breaching party the right to damages or suspension of performance. See United States v. Cimino, 2002 WL 31000001, at *3 (S.D.N.Y. Sept. 5, 2002) ("It is a general rule of contract law that a material breach excuses non-performance by the non-breaching party. . . a party is relieved of continued performance under a contract if a 'material failure' in performance goes uncured".) (citing Restatement (Second) of Contracts § 237 and comment b (1981); accord Wechsler v. Hunt Health Systems, Ltd., 330 F. Supp.2d 383, 415 (S.D.N.Y. 2004) ("When one party commits a material breach, the other party is relieved, or excused, from its further performance obligations.")

and experienced professionals whose exclusive function is to work with CONSIST's customers. These professionals were allocated to service SAG products and to assist CONSIST's clients in developing their own core business solutions using SAG's proprietary programming language and database software. In this way, CONSIST further integrates and entrenches SAG products into the businesses of CONSIST's clients. In conjunction with CONSIST's creative pricing, this effort has made CONSIST's clients heavily dependent upon SAG technology. It is CONSIST's great success in its Territory that SAG now wants to usurp. Yet it is precisely against such usurpation that Consist insisted that the Agreement be an evergreen contract. As drafted, it protects the fruits of CONSIST's marketing success from expropriation by limiting termination to specific times, and then only for uncured failures to perform material provisions of the Agreement.

At no point prior to June 30, 2006 – 18 months prior to the effective renewal date, December 31, 2007 – did SAGA ever provide Consist with written notice, detailed or otherwise, of any material conditions that Consist had allegedly failed to perform, as Paragraph 7 specifically requires. Instead, on March 30, 2006, SAG simply sent a letter to Consist stating that it had instructed SAGA to give notice of termination of the Agreement effective December 31, 2007. On April 6, 2006, SAGA sent notice to Consist purporting to terminate the contract as of December 31, 2007. However, neither communication provided Consist with a notice describing in detail what material conditions Consist allegedly failed to perform, as required by Paragraph 7 (there were none in any event) nor did they provide Consist with 60 days to perform any such conditions. Because SAGA's purported notice of termination failed to do what the Agreement plainly requires, it was defective and ineffective under the Agreement. As a result, the Agreement was automatically renewed, pursuant to Paragraph 1, for a five-year term commencing on January 1, 2008.

Apparently recognizing that SAGA's notice was deficient, on July 4, 2006, SAG's CEO sent an email to Consist's President stating: "We consider the none [sic] utilized market potential for our products in your territory. . .as a breech [sic] of our contract." (the "July 4 Email"). The July 4 Email did not state "in detail" what condition of the Agreement Consist supposedly was not performing, or in what way, nor did it give any indication that it even purported to be a "notice" under the Agreement, let alone a notice of termination. Even if such email correspondence were proper and sufficient notice pursuant to Paragraph 7 of the Agreement – which it was not – it was untimely because it was not given together with SAGA's April 6 putative notice of termination. In fact, it was not even given at least 18 months in advance of the December 31, 2007 putative termination date, and it nonetheless rested on a false premise, as addressed at length in the Complaint.[3] Accordingly, based on the Agreement's unambiguous renewal and termination provisions, and for the reasons described above and in the Complaint, the Agreement has been renewed for a five-year term commencing on January 1, 2008.

B.  **Examination of the Prior Agreements Supports Consist's Interpretation of the Contract's Carefully Negotiated Renewal and Termination Clauses.**

That the Agreement's renewal and termination provisions were intentionally drafted to work precisely as set forth above is confirmed by two of the prior distribution agreements between the parties.[4] Thus, the 1995 exclusive distribution agreement between SAG and Consist's affiliate (annexed hereto as Ex. 2), like the 1992 agreement before it (Ex. 3) expressly

---

[3] A letter from SAG's counsel in August 2006, sent in response to communications rejecting the July 4 Email notice, purported to identify additional, albeit equally fictitious, material breaches.

[4] With respect to the interpretation of the renewal and termination provisions, these agreements are not even parol evidence, as they confirm that Paragraphs 1 and 7 of the Agreement were clearly and unambiguously drafted to work exactly as set forth above. If the Court believes that the provisions are ambiguous, however, the Court clearly is entitled to examine the prior agreements to resolve the ambiguity. Under New York law, "parol evidence may be admitted to complete the agreement or to resolve some ambiguity therein, but it may not be admitted to vary or contradict its content." Jofen v. Epoch Biosciences, Inc., 2002 U.S. Dist. LEXIS 12189 at *17 (S.D.N.Y. June 26, 2002) (internal citations omitted). See Roberts v. Consolidated R. Corp., 893 F.2d 21, 24 (2d Cir. 1989) (resolving ambiguity in indemnification provision of a 1986 agreement by looking to the corresponding terms of a predecessor agreement that had been executed in 1945.)

4

permitted SAG <u>to terminate</u> the Agreement for failure to perform <u>any</u> material conditions of the Agreement upon 60 days' notice and failure to cure. The termination clause of the 1995 Agreement states:

> SAG reserves the right to terminate this Agreement should PACS fail to perform any material conditions of this Agreement. Before such termination shall become effective, SAG shall give written notice to PACS describing in detail what material conditions PACS has failed to perform, and PACS shall have sixty (60) days in which to perform such conditions.

The corresponding Paragraph in the current Agreement was changed markedly, to remove the right to terminate immediately after 60 days' notice and failure to cure, and to allow Consist to terminate as well. It states:

> Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

Accordingly, the two prior distributorship agreements confirm Consist's interpretation of the Agreement's renewal and termination provisions and that the Agreement has been automatically renewed for a five-year term commencing on January 1, 2008.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the Complaint, Consist respectfully requests that this Court issue an Order declaring that the Agreement has been automatically renewed for a five-year term commencing on January 1, 2008.

Dated: New York, New York
      September 12, 2007

DUANE MORRIS LLP

By: /s Hyman L. Schaffer
    Hyman L. Schaffer (HS-4536)
    Fran M. Jacobs (FJ-0892)
    Brian Damiano (BD-3922)
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Plaintiff*