# EXHIBIT 1

## DISTRIBUTORSHIP AGREEMENT

THIS AGREEMENT with the effective date of 1st day of January 1998.

between    SOFTWARE AG AMERICAS, INC.
11190 Sunrise Valley Drive
Reston, VA 22091 USA

(hereinafter called "SAGA")

and    CONSIST INTERNATIONAL, INC.
10 East 53rd Street
27th Floor
New York, NY 10022

(hereinafter called "CONSIST," which term shall include all CONSIST subsidiaries and affiliates)

WITNESSETH,

WHEREAS, SAGA is the exclusive distributor of certain software packages in the Territory, as set forth in Annex A herein "SAGA Products," being updated from time to time, and offers certain products, as set forth in Annex B, for which SAGA pays royalties herein "SPECIAL PRODUCTS," being updated from time to time both of which are collectively referred to herein as "SYSTEMS".

and

WHEREAS, CONSIST wants to market the SYSTEMS and to provide assistance to users of the SYSTEMS in Argentina, Brazil, Chile, Bolivia, Paraguay, Uruguay, and Peru, hereinafter called the "TERRITORY."

Now therefore, the parties hereto agree as follows:

Paragraph 1

SAGA appoints CONSIST the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1998 through December 31, 2007. The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving of eighteen (18) months prior written notice to the other party.

9/9/97 4:10 PM

Paragraph 2

SAGA hereby authorizes CONSIST to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

However, CONSIST is only authorized to give non-transferable use-licenses for SYSTEMS to customers. Giving any form of sublicense or distribution rights, such as a direct or indirect OEM arrangements, to any third party will require the prior written consent of SAGA.

Contracts for installations of the SYSTEMS outside the TERRITORY shall require the prior written consent of SAGA.

Paragraph 3

For the right to grant perpetual or time-limited licenses, and/or maintenance agreements, CONSIST agrees to make payments to SAGA as provided in Exhibit A hereto.

Payments will be made within ten (10) days of the end of each quarter.

Any quarterly payment not received within the due date period above mentioned, shall bear interest at a rate of 3% p.a. above the prime commercial rate of Citibank in effect at that time.

SAGA will provide invoices to CONSIST for all payments made by CONSIST.

Paragraph 4

SAGA agrees at no additional costs to provide the following services to CONSIST:

1. Training in public classes held by SAGA for CONSIST staff (up to 5 persons) per class;

2. Ten (10) copies of the latest version of the SYSTEMS stored on magnetic tape;

3. Ten (10) copies of complete sets of SYSTEMS documentation in English, including Reference Manuals and Utilities Manuals.

4. Prompt correction or any errors in the SYSTEMS detected at the user's site and forwarded to SAGA.

9/9/97 4:10 PM                              2

Paragraph 5

(1) CONSIST agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.

CONSIST has the right to reproduce and, as necessary, translate SYSTEMS, documentation, Manuals, etc. for use in the TERRITORY. Written material used by CONSIST for marketing or support to users of the SYSTEMS will refer to authorship of SAGA and will show copyright and trademark of SAGA.

CONSIST acknowledges the SYSTEMS and all documentation or information as trade secrets of SAGA and undertakes to oblige its personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent them from unauthorized use.

CONSIST agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without the written notice to SAGA.

(2) CONSIST agrees to refrain from installing the SYSTEMS at a user's site without having obtained a written agreement from the user calling for safeguarding of the proprietary nature of the SYSTEMS. Such written agreement must be either a right of use license agreement, or a non-disclosure agreement for demonstration.

(3) CONSIST agrees to make all reasonable efforts to successfully market the SYSTEMS in the TERRITORY.

CONSIST shall, at its expense, provide SAGA with a written quarterly report of all installations and de-installations of the Special Products contained on Annex B in the TERRITORY, made in the quarter, including product name, operating system, hardware class or machine type, customer name, customer address, and installation/de-installation date. All installations will be considered perpetual licenses unless later reported as de-installed.

Within sixty (60) days of the execution of the Amendment, the parties will meet and specify the format of the required quarterly reports. Both parties understand and agree that the meeting and the specification of the format of the required quarterly reports are a material condition of this Agreement.

Both parties understand and agree that the required quarterly royalty reports are a material requirement of this Agreement, and that the failure of CONSIST to provide quarterly reports may be deemed by SAGA to be a material breach condition of this Agreement.

9/9/97 4:10 PM                                    3

(4) CONSIST agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users. This obligation of CONSIST will continue until termination of the agreement including any extension thereof.

(5) CONSIST shall be responsible for supplying SAGA with all pertinent information concerning any software errors and will forward promptly all documentation to SAGA with an explanation of the circumstances causing the problem and SAGA will correct any errors in the SYSTEMS.

(6) In no case shall SAGA be held liable by CONSIST or any of CONSIST customers in the TERRITORY for any damages, indirect or consequential, derived from the use of the SYSTEMS.

(7) SAGA shall not be held liable for any taxes arising out of the activities of CONSIST, such as sales tax, income tax, import tax, value added tax or alike.

(8) CONSIST shall abide by all U.S. Export Administration Regulations which may apply to the SYSTEMS and their exportation and/or re-exportation.

(9) CONSIST agrees that SAGA has the right to make multinational agreements with end-user customers which may result in installations in the TERRITORY at discounts negotiated by SAGA. CONSIST will accept all such agreements and discounts as valid in the TERRITORY with compensation to CONSIST according to SAGA's published worldwide multinational policy.

(10) CONSIST agrees to cooperate with SAGA in establishing international Value Added Remarketers (VARs). The terms of specific VAR agreements will be agreed to between CONSIST and SAGA on a case-by-case basis.

(11) CONSIST (including CONSIST and Natalio Fridman or any subsidiary or affiliated business entity) agrees not to act as agent, partner, distributor, reseller or marketing representative for any systems software products which compete with the SAGA SYSTEMS without an approval of SAGA unless the competing product is already being sold by CONSIST. The approval of specific competitive products will be agreed to between CONSIST and SAGA on a case-by-case basis.

(12) When requested by CONSIST, SAGA will execute the documents required by government authorities in the TERRITORY for remittance of royalties for SAGA products by the CONSIST affiliates. All payment by CONSIST affiliates will be credited as payment under this Agreement.

Total CONSIST obligations to SAGA are solely those specified in the Agreement.

9/9/97 4:10 PM                                    4

In the case of any conflict between this Agreement and any document executed by SAGA with any CONSIST affiliate, this Agreement shall prevail.

Paragraph 6

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

Paragraph 7

Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

Paragraph 8

All legal notices hereunder shall be in writing and shall be deemed properly delivered and effective when duly sent by Certified Mail, Postage Prepaid, telex or cable, or delivered by hand:

to CONSIST at:   CONSIST INTERNATIONAL, INC.
                 10 East 53rd Street
                 27th Floor
                 New York, NY 10022
                 Attn:  Mr. Natalio S. Fridman

and to SAGA at:  SOFTWARE AG AMERICAS, INC.
                 11190 Sunrise Valley Drive
                 Reston, Virginia 20191
                 Attn:  International Operations

or to such other address as the receiving party may by written notice designate to the other. All operational correspondence and quarterly reports (technical assistance, sales and marketing support) will be directed to the SAGA address shown above.

Paragraph 9

This Agreement, including Annexes and Exhibits, constitutes the entire Agreement between the parties; and supersedes and merges all previous communications, representations or agreements, either written or orally, with respect to the subject matter hereof, so that this Agreement may only be changed or modified by another Agreement signed by the parties hereto.

9/9/97 4:10 PM                                5

Paragraph 10

This contract shall be subject to, and interpreted in accordance with, the laws of the State of New York, USA without regard to the New York provisions governing conflict of laws. SAGA agrees to defend or at its option settle any claim, suit or proceeding brought against CONSIST from the third parties for patent or copyright infringement and indemnify CONSIST against any claims for infringement of any patent or copyright by the SYSTEMS. CONSIST will promptly notify SAGA in writing of any such claims, suits or proceedings and give SAGA full information and assistance to settle and/or exclusive of any judicial and administrative awards, incurred without SAGA's written authorization.

Paragraph 11

CONSIST agrees to indemnify SAGA from any liability that may be incurred by SAGA because CONSIST either overstated the performance of any SYSTEMS or part thereof, or failed to exercise the due care to resolve any problems of which CONSIST was notified by SAGA and/or any end-user.

Agreement Accepted:  
SOFTWARE AG AMERICAS, INC.

By: _____  
Name: JAMES H. DALY  
Title: V.P. - International Ops.  
Date: 9/9/97

Agreement Accepted:  
CONSIST INTERNATIONAL, INC.

By: _____ 
Name: Natalio Fridman  
Title: President  
Date: _____

9/9/97 4:10 PM                                   6

ANNEX A

1. All the system software packages offered for distribution by Software AG of Darmstadt, Germany and SAGA, including their subsidiaries and affiliates now and in the future including, but not limited to, those shown on the attached list, and to include BOLERO and ODYSSEY. SAGA is the perpetual, exclusive distributor in the TERRITORY for all the products of Software AG of Darmstadt, Germany.

2. All application packages, except for PRODIS, are excluded from this agreement.

3. The SAGA Year2000 Toolkit is not included in this Agreement. The parties understand and agree that it is the subject of a separate Agreement.

9/17/97

7

ANNEX B

Special Products are those products listed below, and any additions to this list, as made by SAGA, from time to time. Additions may include new products or new versions or releases of existing Special Products. For new Special Products which require that royalties be paid to third-parties, CONSIST will reimburse SAGA for all costs associated payable to the thirds party with respect to all such Special Products.

1. ESPERANT

2. PASSPORT

# EXHIBIT A

1. CONSIST agrees to pay SAGA a fixed cash lump sum payment quarterly according to the following table using the annual increase/decrease in the Audited SAGA Product/License Revenue as the basis for the adjustment to the quarterly fixed cash lump sum payment made by CONSIST to SAGA. In any year the maximum increase or decrease will be no greater than twenty percent (20%); however, in any year in which one or more products have been specifically declined by CONSIST (as per paragraph 2) then the maximum decrease will be ten percent (10%).

### ANNUAL ADJUSTMENT TABLE BASED ON INCREASE/DECREASE IN SAGA PRODUCT/LICENSE REVENUE

| Change to CONSIST Annual Royalty | Annual % Change in SAGA Product/License Revenue |
|---|---|
| Not to go below 10% or 20% Annually (See Paragraph 1) | |
| Decrease to -10% | Actual % Decrease |
| 0 | 0 |
| Up to 20% Increase | Actual % Increase |
| Not to exceed 20% Annually | |

2. The baseline SAGA Product List will be the SAGA Product List in effect as of December 31, 1997. Any new SAGA Products developed or acquired over the term of this Agreement shall be added to the SAGA Product List unless specifically declined in writing by CONSIST, and the quarterly fixed cash lump sum payments will be adjusted as appropriate. Appropriate adjustments will be made for acquisition of entities by SAGA which effect this calculation and such adjustments will be mutually agreed upon by both parties.

3. The Baseline Year is established at an annual royalty of $7,500,000. (US DOLLARS), cash only, with no credit for tax receipts. All transfers of cash payments to take place within the United States of America. When a separate agreement is entered into between CONSIST and SAGA for the Year 2000 Toolkit, CONSIST will receive a one-time credit of $500,000 towards any amounts due from CONSIST to SAGA under such Year 2000 Toolkit agreement.

4. Payments must be made quarterly, by the 10th day at the end of each quarter. The payments shall commence on January 1, 1998.

5. The new royalty calculation for each year of the Agreement will be presented to CONSIST at the completion of the SAGA Annual Audit, which is scheduled for completion in April of each year (unless otherwise amended by SAGA). Until the calculation is completed, CONSIST will make the first quarterly payment using the prior year's quarterly payment schedule. The parties agree to reconcile the payments, by adjusting the amounts proportionally over the remaining three quarters of that year.




9/9/97 4:10 PM

9