UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONSIST SOFTWARE SOLUTIONS,
INC. f/k/a CONSIST INTERNATIONAL,
INC.,

                        Plaintiff,

        -against-

SOFTWARE AG, INC. and SOFTWARE
AG,

                        Defendants.

Case No. 07-cv-7047 (CM)(FM)

**DEFENDANTS SOFTWARE AG, INC. AND SOFTWARE AG'S BRIEF REGARDING
INTERPRETATION OF THE DISTRIBUTORSHIP AGREEMENT**

James David Jacobs
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036-7703
Tel: (212) 626-4100
FAX: (212) 310-1600

**TABLE OF CONTENTS**

I.      BACKGROUND. ................................................................................................... 1

II.     THE AGREEMENT ............................................................................................. 1

III.    THE PROVISIONS ARE PROPERLY INTERPRETED AS INDEPENDENT.............. 2

IV.     CONSIST'S READING PARAGRAPHS 1 AND 7 TOGETHER IS IMPROPER ......... 3

V.      CONCLUSION.................................................................................................... 5

**TABLE OF AUTHORITIES**

**CASES**

*Apex Pool Equipment Corp. v. Lee,* 419 F.2d 556 (2d Cir. 1969) .................................. 4

*Boyle v. Readers' Subscription, Inc.*, 481 F. Supp. 156, 158 (S.D.N.Y. 1979) ........................... 3

*C.P. Apparel Mfg. Corp. v. Microfibres, Inc.*, 210 F.Supp.2d 272, 275 (S.D.N.Y. 2000) ........................................................................................................ 5

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F.Supp. 347, 352 (S.D.N.Y. 1996)................................................................................................ 3

*Kass v. Kass*, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 356-57 (1998) ....................................... 2

*Sinco, Inc. v. Metro-North Commuter R.R. Co.*, 133 F.Supp.2d 308, 311 (S.D.N.Y. 2001)................................................................................................ 3

*Stahlex-Interhandel Trustee v. Western Union Fin. Servs. Eastern Europe Ltd.*, 279 F.Supp.2d 221, 226 (S.D.N.Y. 2003)................................................................ 3

**STATUTES**

UCC § 2-106 ......................................................................................................... 4

**OTHER AUTHORITIES**

Black's Law Dictionary (6th Ed. 1990), p. 1471 ......................................................... 4

## I.    Background.

Defendant Software AG, Inc. (formerly known as Software AG Americas, Inc.) ("SAGA") entered into a Distributorship Agreement (the "Agreement," annexed as Exhibit A) effective January 1, 1998 that appointed plaintiff Consist Software Solutions, Inc. ("Consist") SAGA's exclusive distributor for certain software in eight South America countries.  SAGA sought to end Consist's distributorship through a series of notices that it gave Consist under Paragraph 1 or Paragraph 7 of the Agreement, which paragraphs SAGA contends provide independent mechanisms for ending Consist's distributorship.   On the other hand, Consist contends those two paragraphs must be read together, which creates a single procedure that must be followed to end its distributorship, a procedure which Consist argues SAGA did not satisfy.

## II.    The Agreement.

The very first paragraph of the Agreement provides, as is common in distributorship agreements, for automatic renewal.  Paragraph 1 of the Agreement thus states that it is automatically renewed for an additional five year term unless either party gives notice 18 months prior to the Agreement's expiration:

> SAGA appoints CONSIST the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1998 through December 31, 2007.  The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving of eighteen (18) months prior written notice to the other party.

That clause is clear and unambiguous.  Paragraph 1 allows either party to decide not to renew the Agreement by providing the other party 18 months' notice that the Agreement will not be renewed.

As is also common in commercial agreements the Agreement provides for termination for cause.  Paragraph 7 of the Agreement states:

> Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail what material

conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

That clause is also clear and unambiguous. It provides a party the right to *immediately* effect termination after the passage of a 60 day period during which a breaching party fails to cure its breach.

By conflating Paragraph 1 with Paragraph 7 Consist, on the other hand, seeks to eliminate a party's ability to prevent automatic renewal of the Agreement absent a material breach by the other party at least 18 months prior to end of the term of the Agreement. Furthermore, under Consist's construction, regardless of the date of the material breach, the Agreement does not terminate until the end of the Agreement's term. Paragraph 21 of the Complaint summarizes Consist's argument:

> Pursuant to Paragraph 7 [of the Agreement], then, before any termination of the Agreement – which may occur only on one of the anniversary dates set forth in Paragraph 1 (the only paragraph of the Agreement specifying a termination event) – the terminating party must give notice, "in detail," at least 18 months prior to the termination date, of the material conditions that the other party has failed to perform.

Paragraph 27 of the Complaint reiterates: "the failure to [cure the breach] does not give rise to a right to an immediately exercisable right to terminate the Agreement; that may be achieved only on the dates specified in Paragraph 1 of the Agreement and upon meeting the requirements set forth therein and in Paragraph 7."

### III.    The Provisions Are Properly Interpreted as Independent.

In interpreting a contract a court is to consider particular terms in context, in light of the whole agreement, and seek a sensible interpretation rather than elevating form over substance. *Kass v. Kass*, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 356-57 (1998). Construing Paragraph 1 and Paragraph 7 as separate and independent provisions dealing with distinct procedures for ending the distributorship gives effect to both of the provisions and yields a sensible interpretation. Moreover, such a construction is consistent with the text of the separate

provisions and the Agreement as a whole.

Paragraph 1 addresses the length of contract periods and the ability of either party to end the contractual relationship without cause at the end of one of those periods. It contains no reference to breach or cause of any sort as being required to permit a party to exercise its right to prevent automatic renewal upon 18 months' notice. Nor does it contain any reference to Paragraph 7. *See Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F.Supp. 347, 352 (S.D.N.Y. 1996)(contract containing termination clause is terminable without cause where contract is silent on whether cause is required).

On the other hand Paragraph 7 addresses the rights of one party when faced with a material breach by the other, allowing that party to sever the relationship after a reasonable cure period and before the burden of proceeding in the face of the breach becomes too onerous. This result is consistent with the common-law right to terminate a contract under New York law. *See Sinco, Inc. v. Metro-North Commuter R.R. Co.*, 133 F.Supp.2d 308, 311 (S.D.N.Y. 2001)(aggrieved party in executory contract may terminate contract for material breach if breaching party fails to cure). *See also Stahlex-Interhandel Trustee v. Western Union Fin. Servs. Eastern Europe Ltd.*, 279 F.Supp.2d 221, 226 (S.D.N.Y. 2003)(contract incorporates law in effect at time of contracting unless contract provides otherwise). Paragraph 7 contains no reference to Paragraph 1, Agreement renewal dates, or 18-month notice.

### IV.    Consist's Reading Paragraphs 1 and 7 Together Is Improper.

Through at best a strained interpretation that combines Paragraphs 1 and 7 Consist argues that the Agreement is a perpetual (evergreen) contract. But "[I]f the parties intend that the obligation be perpetual they must expressly say so." *See Boyle v. Readers' Subscription, Inc.*, 481 F. Supp. 156, 158 (S.D.N.Y. 1979).

The five paragraphs intervening between paragraphs 1 and 7 do not deal with the term or termination of the Agreement, but with the duties of the parties under the Agreement.

Nevertheless, Consist attempts to link those paragraphs through the words "terminate" and "termination" in Paragraphs 1 and 7, respectively. Within those paragraphs, these words have different meanings, each of which is unambiguous in context. Paragraph 1 uses the word "terminate" in the same sense as the word "termination" is used in UCC § 2-106: "termination" as occurring when a party exercises a power to end a contract "otherwise than for its breach." Paragraph 7, on the other hand, uses the word "termination" in another sense: there, termination means ending a contract prematurely due to a material breach. *See* Black's Law Dictionary (6th Ed. 1990), p. 1471 (termination defined separately as ending without contract being broken, *citing* UCC § 2-106, or as exercise of remedy due to default of other party). Thus, Consist's argument, which relies upon "terminate" in Paragraph 1 and "termination" in Paragraph 7 having the same meaning, is fatally flawed.

Consist's attempt to incorporate Paragraph 1 into Paragraph 7 through the use the word "any" in the introductory clause of Paragraph 7, "Before any termination", fails for the same reasons as noted above. *See* Complaint, ¶ 27. The right granted the parties in Paragraph 1 is a right not to renew, not a right of termination. Given the context of Paragraph 7 the introductory "before" clause is properly read as "Before any termination [pursuant to this Paragraph 7]."

*Apex Pool Equipment Corp. v. Lee,* 419 F.2d 556 (2d Cir. 1969), is instructive. Like the Agreement here, the contract in *Apex Pool* had both an automatic renewal clause and a termination for cause clause. It also provided in yet another clause that "In the event of termination by either party [for] *any* reason" the Distributor would not sell competing pools for two years. *Id* at 559 (emphasis added). Although Judge Feinberg recognized that the phrase "termination for any reason" was broad, he nevertheless held that giving notice of non-renewal was not a "termination". He reasoned that "it can be said that bringing the relation to an end would not be termination at all, *as the word is used in the contract,* unless it was for one of the enumerated reasons [of cause]." *Id* at 560 (emphasis in original).

In the case of the instant Agreement even more reason exists to limit "any termination" phrase in Paragraph 7 to "any termination for cause" Whereas in the *Apex Pool* case the "any" language was in a paragraph entirely independent from the paragraph that provided for termination for cause, the "any termination" language in the Agreement appears in the same paragraph that provides for the termination for cause.

Consist's construction also leads to absurd consequences. According to Consist "termination . . . may occur only on one of the anniversary dates set forth in Paragraph 1." Complaint, ¶ 21. Consequently, if Consist breaches—no matter how materially—during the first month of the term, SAGA has to live with Consist, and its breaches, for the remaining 9 years and 11 months of the initial 10 year term. Indeed, if the breach occurs within the last eighteen months, according to Consist the non-breaching party is forced to renew the Agreement and endure another 5 year term. Any reasonable businessman would find this unacceptable. *See C.P. Apparel Mfg. Corp. v. Microfibres, Inc.*, 210 F.Supp.2d 272, 275 (S.D.N.Y. 2000)(contracts to be construed to avoid absurd results).

## V.     Conclusion.

SAGA and Software AG request a ruling declaring that Paragraphs 1 and 7 of the Agreement must be read independently and accorded their natural and unambiguous meaning. No reason exists to construe these two paragraphs as one provision that has absurd results.

Dated: New York, New York
    September 12, 2007                    BAKER & McKENZIE LLP


                                      By:  */s James David Jacobs*
                                          James David Jacobs
                                          1114 Avenue of the Americas
                                          New York, New York 10036
                                          (212) 626-4100

                                          Attorneys for Defendants
                                          Software AG, Inc. and Software AG