# EXHIBIT 2

Case 1:07-cv-07047-CM    Document 14-3    Filed 09/13/2007    Page 1 of 10

Rev. 2/27/95

DISTRIBUTORSHIP AGREEMENT

THIS AGREEMENT made as of the 1st day of January 1995.

between     SOFTWARE AG
            Uhlandstrasse 12
            64297 Darmstadt

            SOFTWARE AG OF NORTH AMERICA, INC.
            11190 Sunrise Valley Drive
            Reston, Virginia   22091 USA

            (hereinafter called "SAG")

and         PAN AMERICAN COMPUTER SYSTEMS, INC.
            150 Broad Hollow Road
            Mellville, New York   11747 USA

            (hereinafter called "PACS", which term shall include all
            PACS subsidiaries and affiliates)

WITNESSETH, That

WHEREAS, SAG is the proprietor of certain software packages, as set forth in Annex A (herein "SAG Products") (being upgraded from time to time), and offers certain products, as set forth in Annex B, for which SAG pays royalties (herein "SPECIAL PRODUCTS") (being upgraded from time to time) both of which are collectively referred to herein as "SYSTEMS").

and

WHEREAS, PACS wants to market the SYSTEMS and to provide assistance to users of the SYSTEMS in Argentina, Brazil, Chile, Bolivia, Paraguay and Uruguay, hereinafter called the "TERRITORY".

Now therefore, the parties hereto agree as follows:

Paragraph 1

SAG appoints PACS the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1995 through December 31, 1997.

During the third year (1997) of this term the parties agree to negotiate, in good faith, a new agreement.

If at the end of any year of this Agreement, PACS' product license revenue (with leases, limited in time licenses and month-to-month licenses being treated as perpetual licenses) based on the current U.S. standard price list, in Chile is less than the following yearly quotas:

        1995   US$1,000,000
        1996   US$3,000,000
        1997   US$5,000,000

SAG may terminate this Agreement, as to Chile only, in accordance with Paragraph 7.

1

Paragraph 2

SAG hereby authorizes PACS to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

However, PACS is only authorized to give non-transferable use-licenses for SYSTEMS to customers. Giving any form of sublicense or distribution rights, such as direct or indirect OEM arrangements, to a "contract partner" will require the prior written consent of SAG.

Contracts for installations of the SYSTEMS outside the TERRITORY shall require the prior written consent of SAG.

Paragraph 3

For the right to grant perpetual or time-limited licenses, and/or maintenance agreements, PACS agrees to pay SAG as provided in Exhibit A hereto.

Payments will be made within ten (10) days of the end of each quarter.

Any quarterly payment not received within the due date period above mentioned, shall bear interest at a rate of 3% p.a. above the prime commercial rate of Citibank in effect at that time.

SAG will provide invoices to PACS for all payments made by PACS.

Paragraph 4

SAG agrees at no additional costs to provide the following services to PACS:

1.  Training in public classes held by SAG for PACS staff (up to 5 persons) per class;

2.  Ten (10) copies of the latest version of the SYSTEMS stored on magnetic tape;

3.  Ten (10) copies of complete sets of SYSTEMS documentation in English, including Reference Manual and Utilities Manual.

4.  Prompt correction or any errors in the SYSTEMS detected at the user's site and forwarded to SAG.

Paragraph 5

(1)  PACS agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.

PACS has the right to reproduce and, as necessary, translate SYSTEMS, documentation, Manuals, etc. for use in the TERRITORY. Written material used by PACS for marketing or support to users of the SYSTEMS will refer to authorship of SAG and will show copyright and trademark of SAG.

PACS acknowledges the SYSTEMS and all documentation or information as trade secrets of SAG and undertakes to oblige its personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent them from unauthorized use.

2

PACS agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without the written notice to SAG.

(2) PACS agrees to refrain from installing the SYSTEMS at a user's site without having obtained a written agreement from the user calling for safeguarding of the proprietary nature of the SYSTEMS. Such written agreement must be either a right of use agreement, or a non-disclosure agreement for demonstration.

(3) PACS agrees to make all reasonable efforts to successfully market the SYSTEMS in the TERRITORY.

PACS shall, at its expense, provide SAG with a written quarterly report of all installations and de-installations of the SYSTEMS in the TERRITORY, made in the quarter, including product name, operating system, hardware class or machine type, customer name, customer address, and installation/de-installation date. All installations will be considered perpetual licenses unless later reported as de-installed.

Within sixty (60) days of the execution of this Amendment, the parties will meet and specify the format of the required quarterly reports.

SAG will take no action against PACS for any reports which were due prior to January 1, 1995.

(4) PACS agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users. This obligation of PACS will continue until termination of this agreement. including any extension thereof.

(5) PACS shall be responsible for supplying SAG with all pertinent information concerning any software errors and will forward promptly all documentation along to SAG with an explanation of the circumstances causing the problem and SAG will correct any errors in the SYSTEMS.

(6) In no case shall SAG be held liable by PACS or any of PACS customers in this TERRITORY for any damages, indirect or consequential, derived from the use of the SYSTEMS.

(7) SAG shall not be held liable for any taxes arising out of the activities of PACS, such as sales tax, income tax, import tax, value added tax or alike. All withholding taxes for payments made by PACS for SAG shall be credited as payments, provided that PACS furnishes SAG with adequate receipts or vouchers as the case may be.

The maximum withholding will be twenty percent (20%) of the taxable amount per quarter.

(8) PACS shall abide by all U. S. Export Administration Regulations which may apply to the SYSTEMS and their exportation and/or re-exportation.

(9) PACS agrees that SAG has the right to make multinational agreements with end-user customers which may result in installations in the TERRITORY at discounts negotiated by SAG. PACS will accept all such agreements and discounts as valid in the TERRITORY with compensation to PACS according to SAG's published worldwide multinational policy.

3

(10) PACS agrees to cooperate with SAG in establishing international Value Added Remarketers (VARs). The terms of specific VAR agreements will be agreed to between PACS and SAG on a case-by-case basis.

(11) PACS (including CONSIST and Natalio Fridman or any subsidiary or affiliated business entity) agrees not to act as agent, partner, distributor, reseller or marketing representative for any systems software products which compete with the SAG SYSTEMS without the a approval of SAG. The approval of specific competitive products will be agreed to between PACS and SAG on a case-by-case basis.

(12) When requested by PACS, SAG will execute the documents required by government authorities in the TERRITORY for remittance of royalties for SAG products by the PACS affiliates. All payment by PACS affiliates will be credit as payment under this Agreement.

Total PACS obligations to SAG are solely those specified in this Agreement.

In the case of any conflict between this Agreement and any document executed by SAG with PACS affiliate, this Agreement shall prevail.

Paragraph 6

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

Paragraph 7

SAG reserves the right to terminate this Agreement should PACS fail to perform any material conditions of this Agreement.

Before such termination shall become effective, SAG shall give written notice to PACS describing in detail what material conditions PACS has failed to perform, and PACS shall have sixty (60) days in which to perform such conditions.

Paragraph 8

All legal notices hereunder shall be in writing and shall be deemed properly delivered and effective when duly sent by Certified Mail, Postage Prepaid, telex or cable, or delivered by hand:

to PACS at:     PAN AMERICAN COMPUTER SYSTEMS, INC.
                150 Broad Hollow Road
                Mellville, New York   11747
                U.S.A.
                (Attention: Mr. Natalio S. Fridman)

to CONSIST at:  CONSIST CONSULTORIA, SISTEMAS E REPRES. LTDA.
                Avenida de las Naciones Unidas - 20727
                Sao Paulo, Brazil
                (Attention: Mr. Natalio S. Fridman)

4

and to SAG at:   SOFTWARE AG
                 Ulandstrasse 12
                 64297 Darmstadt
                 W. Germany
                 (Attention: Mr. Peter Schnell)

or to such other address as the receiving party may by written notice designate to the other.

All operational correspondence (technical assistance, sales and marketing support) will be directed to:

                 SOFTWARE AG OF NORTH AMERICA, INC.
                 11190 Sunrise Valley Drive
                 Reston, Virginia  22091
                 U.S.A.
                 (Attention: Mr. Philippe Kuperman)

All quarterly reports will be directed to the above address and to:

                 SOFTWARE AG
                 Uhlandstrasse 12
                 64297 Darmstadt
                 W. Germany
                 (Attention: Mr. P. Schnell)

Paragraph 9

PACS and Mr. Natalio S. Fridman, including his heirs and assigns, and CONSIST-CONSULTORIA, SISTEMAS E REPRESENTACOES LTDA., warrant fulfillment of PACS obligations.

Paragraph 10

This Agreement, including Annexes and Exhibits, constitutes the entire Agreement between the parties; and supersedes and merges all previous communications, representations or agreements, either written or orally, with respect to the subject matter hereof, so that this Agreement may only be changed or modified by another Agreement signed by the parties hereto.

Paragraph 11

This contract shall be subject to, and interpreted in accordance with, the laws of the State of New York, USA. SAG agrees to defend or at its option settle any claim, suit or preceeding brought against PACS from the third parties for patent or copyright infringement and indemnify PACS against any claims for infringement of any patent or copyright by the SYSTEMS offered.

PACS will promptly notify SAG in writing of any such claims, suit or proceeding and give SAG full information and assistance to settle and/or defend. SAG shall not be liable for any defense costs or expenses exclusive of any judicial and administrative awards, incurred without SAG's written authorization.

PACS agrees to indemnify SAG from any liability that may be generated because PACS either overstated the performance of any SYSTEM or part thereof, or failed to exercise the due care to resolve problem.

5

Agreement Accepted:
SOFTWARE AG

By: _____
      Authorized Signature

Name Typed: Peter Schnell
Title: _____
Date: _____


SOFTWARE AG OF NORTH
AMERICA, INC.

By: _____
      Authorized Signature

Name Typed: Michael King
Title: _____
Date: _____


Agreement Accepted:
PAN AMERICAN COMPUTER
SYSTEMS, INC.

By: _____
      Authorized Signature

Name Typed: Natalio S. Fridman
Title: President
Date: 2/28/95


MR. NATALIO FRIDMAN AND
CONSIST-CONSULTORIA SISTEMAS
RESPRESENTACOES, LTDA

By: _____
      Authorized Signature

Name Typed: Natalio S. Fridman
Title: _____
Date: 2/28/95


MR. NATALIO S. FRIDMAN
INDIVIDUALLY

_____

Name Typed: Natalio S. Fridman
Title: _____
Date: 2/28/95

6

ANNEX A

1. All the system software packages offered for distribution by SAG now and in the future including, but not limited to, those shown on the attached list.

Application packages, except for PRODIS, are excluded.

ANNEX B.

SPECIAL PRODUCTS

Special Products are those products listed below, and any additions to this list, as made by SAG, from time to time. Additions may include new products or new releases of existing Special Products. For new Special Products which require that royalties be paid to third-parties, PACS will reimburse SAG for all out-of-pocket costs associated with all such Special Products.

1. ESPERANT
2. ADABAS-D
3. CONSTRUCT
4.

8

EXHIBIT A

PACS agrees to pay SAG a quarterly fixed lump sum payment according to the following schedule:

Commencing January 1, 1995 and no later than ten (10) days following the end of each subsequent quarter thereafter during the term of this Agreement, PACS will pay the following:

a) Each quarter of 1995, the sum of US$1,500,000
b) Each quarter of 1996, the sum of US$1,750,000
c) Each quarter of 1997, the sum of US$2,250,000

9