UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

CONSIST SOFTWARE SOLUTIONS,
INC. f/k/a CONSIST INTERNATIONAL,

       Plaintiff                            07 Civ. 7047 (CM)(FM)

    -against-

SOFTWARE AG, INC. and SOFTWARE
AG,

       Defendants.
_____x

## SCHEDULING ORDER

McMahon, J.:

    In this diversity action, which was removed to this court from the New York State Supreme Court, plaintiff seeks injunctive relief to prevent defendants from terminating its long-standing exclusive distributorship on December 31, 2007.

    In an effort to streamline the litigation, the court agreed to look at the contract provisions relating to the termination, to see whether they were unambiguous and thus subject to construction without recourse to parol evidence.

    Paragraph 1 of the Distributorship Agreement provides as follows:

> SAGA appoints CONSIST the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1998 through December 31, 2007. The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving of eighteen (18) months prior written notice to the other party.

The language of this paragraph is simple and straightforward – and not uncommon in the context of distributorship agreements. The parties agreed that their relationship would last for ten years and would continue beyond that ten year period and would renew automatically, unless either party gave a generous advance notice – 18 months – that it no longer wished to continue the

arrangement. There is no indication in Paragraph 1 that the contract had to be renewed in perpetuity unless one party committed a material breach of the agreement – i.e., there is no "for cause" requirement in the text of Paragraph 1.

The complicating factor is that another paragraph in the Agreement – Paragraph 7 – contains a reference to "termination":

> Before any termination of this Agreement shall become effective, the terminating party shall give written notice to the other party describing in detail what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

SAGA's obligations to Consist are set forth in Paragraphs 3 and 4 of the Agreement, and Consist's obligations to SAGA are set forth in Paragraph 5. Breaches of some of those obligations are specifically identified as material breaches. Nothing in the contract explicitly confers on the parties the right to terminate the contract in the event of a material breach. However, New York law governs the contract (See Paragraph 10), and under New York law the aggrieved party to an executory contract may terminate for material breach if the breaching party fails to cure.

SAGA's position is that Paragraph 1's "termination" provision relates only to a non-renewal of the contract, pointing out that the word "termination," as used in UCC 2-§106, refers to the ending of a contract otherwise than for its breach. Paragraph 7, read in concert with the governing law, creates a right of termination for material breaches of the agreement at any time during its terms, but compels giving the allegedly defaulting party an opportunity to cure its breach.

Consist argues that the two provisions must be read together; that the "termination" referred to in Paragraph 7 can only be the one provided for in Paragraph 1, and that, in order to "terminate" the contract successfully, the party must give 18 months notice, describing in detail what material conditions the other party has failed to perform and giving the allegedly defaulting party 60 days in which to perform those conditions. In support of its argument, it attaches parol evidence, in the form of two earlier agreements that SAG signed with Pan American Computer Systems of Melville, New York, apparently a predecessor in interest to Consist. In each one, the language quoted above from Paragraph 7 is preceded by a sentence that reads:

> SAG reserves the right to terminate this Agreement should [Distributor] fail to perform any of the stated conditions of this Agreement.

That sentence, of course, does not appear in the contract that lies at the heart of this case – although it brings sense to the language that DOES appear in the contract. Plaintiff argues that the dropping of this language indicates that the parties intended to impose a "for cause" requirement on all terminations. Consist's position is that the 18 months' notice of termination that SAGA sent to it last summer was ineffective to terminate the contract, because it was not accompanied by a

notice of material breach and did not give Consist 60 days to cure that breach. It urges that the contract has automatically been renewed for a five year term commencing on January 1, 2008.

I had hoped to be able to construe the contract language now, which would effectively resolve the dispute between the parties concerning termination. Unfortunately, I cannot. I am troubled by the fact that the first sentence of Paragraph 7 that appeared in prior contracts between the parties was dropped from the most recent version of the Distributorship Agreement. I cannot construe the contract until I can hear evidence about how this sentence came to be dropped from the 1997 Agreement. Therefore, we will have to hold a hearing on that issue.

While I understand that both parties have alleged claims for prior breaches of contract as against each other (in the complaint and in a counterclaim appended to the answer, which was filed last week), those issues appear to be entirely severable from the issue of injunctive relief relating to the termination of the parties' contractual relationship. Under either side's interpretation of the contract, it does not matter whether Consist committed a material breach of the contract or not; the contract either was or was not renewed in accordance with its terms.

I am inclined to sever and try the request for a permanent injunction and all requests for declaratory relief appurtenant thereto this year, and either enter a permanent injunction at the conclusion of that trial or dismiss the claim for injunctive relief. The request for injunctive relief hangs entirely on how the contract is construed; it is not an issue that should require extensive discovery. I certainly do not need an expert to explain how to construe this contract (indeed, I would decline to take testimony from an expert on this issue).

Unless the parties can convince me that I have misunderstood the situation, I am going to sever the plaintiff's claim for injunctive relief and defendants' counterclaims for declaratory judgment relating thereto and try those claims to verdict.

The parties had suggested a schedule that called for a hearing on a preliminary injunction during the week of December 17. As I told the parties during our Rule 16 conference, that date does not work for the court. I will conduct the trial beginning December 10, 2007.

By December 3, 2007 at 5 PM, the parties must serve on each other and file with the court (1) proposed findings of fact and conclusions of law; (2) direct testimony of witnesses under their control whom they intend to call; (3) copies of all exhibits they intend to introduce; and (4) a written list of objections to the exhibits that the other side intends to introduce. Please review my rules for the conduct of bench trials. Courtesy copies of these documents must be delivered to chambers.

By November 27 at 5 PM, the parties must exchange witness and exhibit lists.

Discovery, limited to the issues related to the request for an injunction, must be completed by November 16, 2007. Discovery shall be expedited, which means that documents must be produced and interrogatories or notices to admit answered on 5 days notice. Depositions shall be taken on 5 days notice. (This is real days, not business days, although I do not expect depositions

to be taken on weekends.) The parties are limited to 5 depositions per side and 7 hours per witness, though I cannot imagine that so much discovery will be needed. If there are objections to any discovery requests, the objecting party must send this court a letter outlining the nature of the objection within 3 days after the request is made. No responsive letter is necessary. The court will contact the parties by telephone and rule. Please remember: The court frowns on discovery disputes.

The parties' proposed scheduling order calls for expert discovery. As indicated above, I am puzzled about the need for expert testimony on the issue of injunctive relief. Any party who wants to designate an expert will have to explain to the court, in a letter, the subject about which the expert would testify. Please so advise me by October 5, 2007. If I see the need for expert testimony, the expert must be designated, and his report provided, by November 1. The expert's deposition counts in the five depositions I am permitting.

No discovery request may be served after November 5, 2007.

It is my best guess that this trial will consume no more than two court days, given the narrowness of the issue. The parties should advise if I am in error.

Finally, if (as I suspect), the parties need substantially less discovery, and can get this issue to trial earlier, I can find space in my schedule for a short bench trial during November.

This constitutes the decision and order of the court.

Dated: September 26, 2007

_____
U.S.D.J.

BY ECF TO ALL COUNSEL