UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONSIST SOFTWARE SOLUTIONS,
INC. f/k/a CONSIST INTERNATIONAL,
INC.,

                    Plaintiff,

      -against-

SOFTWARE AG, INC. and SOFTWARE
AG,

                    Defendants;

AND RELATED COUNTERCLAIMS

Case No. 07-7047 (CM)(FM)

**DEFENDANTS SOFTWARE AG, INC. AND SOFTWARE AG'S
MEMORANDUM OF LAW IN OPPOSITION TO
CONSIST'S CONTENTION THAT IRREPARABLE HARM
MAY BE PRESUMED UPON THE TERMINATION OF AN
EXCLUSIVE DISTRIBUTORSHIP AGREEMENT**

James David Jacobs
Frank M. Gasparo
Marcella Ballard
John A. Basinger*
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036-7703
Tel: (212) 626-4100
FAX: (212) 310-1600
*Admitted pro hac vice

NYCDMS/1063813.5

**TABLE OF CONTENTS**

-i-

| | |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND FACTS | 2 |
| THE PRESENT PROCEEDINGS | 3 |
| ARGUMENT | 4 |
|     A. Applicable Law Does Not Recognize Per Se Irreparable Harm | 4 |
|     B. The Cases Cited by Consist Do Not Support The Issuance of a Preliminary Injunction Absent Tangible Evidence of Irreparable Harm | 8 |
| CONCLUSION | 11 |

## TABLE OF AUTHORITIES

### CASES

*AIM Int'l Trading Co. LLC v. Valcucine S.p.A.*, 188 F.Supp.2d 384, 386-88 (S.D.N.Y. 2002) .................................................................................................... 10

*Bell & Howell: Mamiya Co. v. Masel Co. Corp.,* 719 F.2d 42, 45 (2d Cir. 1983) ................... 4, 5

*eBay, Inc. v. MercExchange, L.L.C.*, __ U.S. __, 126 S. Ct. 1837 (2006) ................................... 5

*Gerard v. Almouli*, 746 F.2d 936, 939 (2d Cir. 1984) ............................................................... 10

*Haywin Textile Prods., Inc. v. Int'l Fin. Inv. and Commerce Bank Ltd.*, 137 F.Supp.2d 431, 438 (S.D.N.Y. 2001) .......................................................................... 5

*Helios & Matheson North America, Inc. v. Vegasoft OY*, 2007 U.S.Dist. LEXIS 38206 (S.D.N.Y. May 24, 2007) ........................................................................... 7

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70 (2d Cir. 1979) ............................... 8

*Joyce Beverages of New York, Inc. v. Royal Crown Cola Co.,* 555 F.Supp. 271, 280 (S.D.N.Y. 1983) ................................................................................................ 6

*Lanvin, Inc. v. Colonia, Inc.*, 739 F.Supp. 182, 193 (S.D.N.Y. 1990) ................................ 5, 6, 7

*Loveridge v. Woolen Mills, Inc.,* 788 F.2d 914, 917 (2d Cir. 1986) ........................................... 7

*Mr. Natural, Inc. v. Unadulterated Food Prods., Inc.,* 152 A.D.2d 729, 544 N.Y.S.2d 182 (2d Dept. 1989) ................................................................................. 11

*National Kitchen Prods., Inc. v. Kelmort Trading and Co.,* 1992 U.S.Dist. LEXIS 657 (S.D.N.Y. Jan. 24, 1992) ................................................................................ 10, 11

*Newport Tire & Rubber Co., Inc. v. The Tire & Battery Corporation*, 504 F.Supp. 143, 149-50 (E.D.N.Y. 1980) ......................................................................................... 8

*Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904, 908 (2d Cir. 1990) ............ 9, 10

*Roso-Lino Beverage Distribs., Inc. v. The Coca-Cola Bottling Co. of N.Y., Inc.*, 749 F.2d 124, 125-26 (2d Cir. 1984) ............................................................................ 11

*Subaru Distributors Corp. v. Subaru of America,* 47 F.Supp.2d 451 (S.D.N.Y. 1999) ........................................................................................................................ 8, 9

*Town of Huntington v. Marsh*, 884 F.2d 648, 651 (2d Cir. 1989), *cert. denied* 494 U.S. 1004, 110 S. Ct. 1296 (1990) ................................................................................. 6

*Trans Canaderm, Inc. v. Bradley Pharm. Inc.*, 1996 U.S. Dist. LEXIS 20048, *7-9 (S.D.N.Y. July 29, 1996) ............................................................................................. 8

*U.S. Ice Cream Corp. v. Carvel Corp.*, 136 A.D.2d 626, 628, 523 N.Y.S.2d 869, 871 (2d Dept. 1988) ...................................................................................................... 11

**Introduction**

In this action, plaintiff Consist Software Solutions, Inc. ("Consist") seeks preliminary equitable relief to force defendants Software AG ("Software AG") and its subsidiary Software AG, Inc. ("SAGA") (Software AG and SAGA are collectively "SAG") to renew Consist's exclusive distributorship agreement between SAGA and Consist, dated January 1, 1998 (the "Agreement"), the term of which ends December 31, 2007, and to enjoin SAGA from terminating the Agreement for cause. On September 26, 2007 the Court established a pre-hearing discovery schedule and set an evidentiary hearing on Consist's motion for December 10, 2007, later adjourned to December 12, 2007 (the "December Hearing").

Faced with SAG's discovery requests that sought to establish that Consist will not suffer irreparable harm, for the first time in an October 19, 2007 conference call with the Court Consist represented that it does not intend to prove irreparable harm at the December Hearing. Consist's counsel stated that Consist would not introduce any facts demonstrating irreparable harm. Rather, counsel contended that Consist is entitled to rely upon a *per se* rule of irreparable harm – without presenting any proof of irreparable harm either in the form of (i) Consist's financial viability after the expiration or termination of the Agreement or (ii) the fact or extent of Consist's supposed reliance on SAG's technology (the "Systems"). According to Consist's counsel irreparable harm is presumed every time an exclusive distributor is threatened with non-renewal or termination of its exclusive distribution agreement. In support of that argument Consist filed a memorandum (the "Consist Memo") that it had earlier provided to SAG's attorneys as part of a courtesy copy of its preliminary injunction motion papers.

As we show below established law, including a recent Supreme Court decision, clearly rejects Consist's contention. Even more revealing is that the Consist Memo clearly recognizes the need to, and attempts to, factually establish that in the absence of a preliminary injunction

Consist would incur irreparable harm.

There is no *per se* rule of irreparable harm for non-renewal or termination of an exclusive distributorship. Because Consist must introduce factual evidence to carry its burden to prove irreparable harm and because Consist represents it will not do so, Consist as a matter of law cannot establish the prerequisites for a preliminary injunction. Accordingly, SAG requests that Consist's motion for a preliminary injunction be denied without further proceedings.

### Background Facts

Pursuant to the Agreement SAGA granted Consist an exclusive right to distribute SAGA's Systems in 7 South American countries (the "Territory"). Consist's Complaint stresses that unlike many distribution agreements the Agreement allows Consist to operate independently and not provide SAG any meaningful information as to its operations, revenues and scope of business. Complaint, ¶¶ 18, 25. Accordingly, SAG is almost totally without factual information regarding the extent to which Consist's business is purportedly dependent on its distribution of SAG's Systems.

However, publicly available information and Consist's own admissions suggest that Consist business is not dependent on distribution of the Systems. Consist discloses that independence when it pleads that it develops software applications and helps its customers develop customized solutions:

> CONSIST develops, sells, maintains, supports and services computer software systems. ***CONSIST's business goes far beyond the mere licensing of software systems to end-users;*** it also provides critical support for the software products it distributes and helps its customers develop software applications and solutions tailored to each customer's needs. . . . CONSIST also develops business software solutions based on SAG technology including ConsistGEM, ConsistERPlus, ConsistGRP, ConsistGPA and ConsistHR, among others . . . .

Complaint ¶ 5 (emphasis added). Further proof of Consist's independence from SAG's Systems is found on Consist's Brazil website, www.consist.com/br. It lists sixteen "Consist" branded

software applications in comparison with approximately a half dozen products licensed from SAG. *See also* Exhibit 2 to Declaration of John A. Basinger.

Consist also sells software products developed by suppliers other than SAG such as Attunity. Complaint ¶ 44. And Consist has robust business through its subsidiaries operating in countries outside the Territory, *e.g.,* Israel and Germany. *See* www.consist.com.

Thus, Consist presumptively derives a substantial portion of its revenues from its other business lines and from distributing its own software applications. In addition Consist likely also derives substantial revenues from providing maintenance and support services for the Consist-branded applications in the Territory and elsewhere.

SAG develops database and integration software. However, unlike Consist, SAG neither develops nor sells software applications.[1] To the contrary SAG's customers, whether distributors such as Consist or end users, often develop their own applications to allow them to utilize SAG's Systems. Thus, SAG will present no competition to what appears to be Consist's principal business, *i.e.,* developing and distributing applications.

## The Present Proceedings

As noted above, at the October 19, 2007 telephone conference Consist argued that there was no need for discovery on the factual underpinnings of irreparable harm. Rather, Consist contended as a matter of law the termination of an exclusive distributorship created irreparable harm. Counsel for Consist represented that the Consist Memo cited legal authority in support of that proposition. Accordingly, the Court requested that Consist submit that memorandum and directed SAG to submit opposition papers no later than noon Tuesday, October 23. This brief complies with that request.

The Consist Memo is actually quite revealing. Nowhere does Consist argue that there is

---

[1] Software AG's applications business is limited to a few niche areas not applicable here.

a *per se* rule for establishing irreparable harm. To the contrary the Consist Memo contains paragraphs of factual allegations attempting to establish that non-renewal or termination of the Agreement will create irreparable injury. For example, the Consist Memo refers to the following factual bases which it previously apparently planned to establish in demonstrating irreparable harm:

> (i) "the enormous importance of the exclusive distributorship of SAG products to Consist's business …";
> (ii) the "immediate and highly detrimental impact on Consist's customer relationships …";
> (iii) the immediate and highly detrimental impact on Consist's "employee base"; and
> (iv) the immediate and highly detrimental impact on Consist's "business reputation".

Consist Memo at 9. *See also* Complaint ¶¶ 53-59.

Under applicable law, SAG is absolutely entitled to test Consist's factual allegations underpinning its claims of irreparable harm. SAG has propounded discovery requests seeking this very information, *i.e.,* the extent to which non-renewal of the Agreement will have an "enormous" impact on Consist's business; and the fact of and extent to which Consist (and its customers) are supposedly reliant on SAG's Systems. For the reasons set forth below Consist may not avoid this discovery and it is not entitled to rely on a presumption of irreparable harm.

**Argument**

### A. Applicable Law Does Not Recognize *Per Se* Irreparable Harm

No doctrine may be more well settled than that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Co. Corp.,* 719 F.2d 42, 45 (2d Cir. 1983). A preliminary injunction may be granted only on a showing of "(a) irreparable harm and (b) either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits to

make them fair grounds for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Id.* (citations and quotations omitted). Preliminary relief may not be granted without a showing of irreparable harm. *Id.* Significantly, federal law under Fed. R. Civ. P. 65 governs standards for issuance of a preliminary injunction, even in diversity cases. *See Haywin Textile Prods., Inc. v. Int'l Fin. Inv. and Commerce Bank Ltd.*, 137 F.Supp.2d 431, 438 (S.D.N.Y. 2001).

Contrary to Consist's claim "[t]here is **no legal presumption that a distributor suffers irreparable injury** simply because it is terminated." *Lanvin, Inc. v. Colonia, Inc.*, 739 F.Supp. 182, 193 (S.D.N.Y. 1990) (emphasis added) (denying preliminary injunction for termination of an exclusive distributorship). As set forth more fully below even products or services considered "unique" or "special" are not subject to any such bright line rule. Applicable law requires that Consist actually demonstrate the likelihood of irreparable harm through admissible, discoverable evidence before a preliminary injunction can issue.

The Supreme Court's unanimous decision last year in *eBay, Inc. v. MercExchange, L.L.C.*, __ U.S. __, 126 S. Ct. 1837 (2006), conclusively negates Consist's contention that it is entitled to rely upon a *per se* rule of irreparable harm to enjoin Software AG from terminating its exclusive distributorship. In *eBay* the Supreme Court confronted the Federal Circuit's then long enshrined rule that infringing a valid patent created irreparable harm and entitled the patentee to an injunction with no further showing.

The Supreme Court unceremoniously rejected that rule. It held that a federal court's discretion to grant or deny equitable relief must be based upon traditional principles of equity – including demonstrated irreparable harm and the absence of "remedies available at law, such as money damages" – rather than on categorical presumptions. *See id.* at 1839-41. It referred to its long body of jurisprudence that "[t]he Supreme Court has repeatedly held that the basis for

injunctive relief is irreparable injury and the inadequacy of legal remedies." *Town of Huntington v. Marsh*, 884 F.2d 648, 651 (2d Cir. 1989), *cert. denied* 494 U.S. 1004, 110 S. Ct. 1296 (1990) (holding there is no presumption of irreparable harm under environmental statute and denying preliminary injunction).

*Lanvin, supra*, well illustrates in the context of the termination of an exclusive distributorship that irreparable harm must be proven and cannot be presumed. Lanvin had granted plaintiff Colonia's predecessor the exclusive rights to distribute Lanvin's branded products in the U.S. 739 F.Supp. at 185. Colonia contended that Lanvin terminated Colonia's exclusive distributorship without providing the 60-day notice and an opportunity to cure provided in the parties' contract. *Id.* Colonia sought a preliminary injunction to reinstate the distributorship *pendente lite*. *Id.* at 185-86. Judge Edelstein unequivocally stated that in the Second Circuit an injunction could not be issued without a showing of irreparable harm. *Id.* at 192. He held that a movant must make a "substantial showing" that the loss of the product line causes the loss of "other product lines, leading ultimately to the ***destruction of the movant's business***." *Id.* (emphasis added) *citing Joyce Beverages of New York, Inc. v. Royal Crown Cola Co.,* 555 F.Supp. 271, 280 (S.D.N.Y. 1983).

The court found that Colonia's failure to prove at the hearing that "its business was in danger of irreparable harm pending trial" was fatal to its preliminary injunction claim and that such showing would require "substantial proof that the denial of interim relief would place the [exclusive distributor] at a ***serious competitive*** disadvantage such as when the supplier's products ***are a major part of the movant's business*** and where all dealers in an area ***must carry*** those products in order to survive." *Lanvin,* 739 F.Supp. at 193 (emphasis added). "This in turn requires substantial evidence that various customers ***have abandoned or are threatening to abandon*** the terminated distributor because of the termination." *Id.* (emphasis added). *Lanvin*

expressly found that "[w]here a terminated dealer sells other brands, it does not establish irreparable harm." *Id.* Further, "[p]roof that a profitable line of business has been lost is insufficient to show irreparable harm." *Id.* at 194. There is no irreparable harm where "the termination of a contract threatens only a disruption in its business ***but does not threaten its destruction***." Judge Edelstein thus denied Colonia's application for injunction. *Id.* at 196 (emphasis added) *citing Loveridge v. Woolen Mills, Inc.,* 788 F.2d 914, 917 (2d Cir. 1986).

Consist's predicament is not all different than that of the distributor in *Lanvin.* Consist distributes products other than those of SAG: it distributes its own "Consist" branded applications software packages, software of other vendors such as Attunity, and its consulting services. To demonstrate that it is entitled to a preliminary injunction, Consist must establish irreparable harm that threatens destruction of its business, rather than only a disruption. *See Lanvin, supra,* 739 F.Supp. at 193. Clearly, merely declaring that Consist is losing its exclusive distribution rights is insufficient.

*Helios & Matheson North America, Inc. v. Vegasoft OY*, 2007 U.S.Dist. LEXIS 38206 (S.D.N.Y. May 24, 2007), further demonstrates that there is no presumption of irreparable harm resulting from the termination of an exclusive distributorship, without more, even where the distributorship concerns a "unique product." Helios was the long-time exclusive distributor of defendant's software products in several countries. *Id.* at *1. Helios obtained its revenue from software sales, licensing, and consulting. *See id.* at *5. Similar to the Consist Memo, Helios argued that it would lose licensing revenue on the software, face potential liability to its clients, loss of good will and business reputation. *See id.* at *7. However, the court found that the losses did not threaten Helios's existence as a business, *id.* at *8, and denied injunction. *See id.* at *12. If Consist were correct and a *per se* rule of irreparable harm existed, the *Helios* court could not have found a lack of irreparable harm for termination of an exclusive distributorship for an

admittedly "unique" product.

Other cases in the Second Circuit have also denied injunctive relief relating to termination of exclusive distributorships. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70 (2d Cir. 1979)(reversing order granting injunction for termination of exclusive distributorship for failure to show irreparable harm); *Trans Canaderm, Inc. v. Bradley Pharm. Inc.,* 1996 U.S. Dist. LEXIS 20048, *7-9 (S.D.N.Y. July 29, 1996)(denying preliminary injunction enjoining termination of 39-year exclusive distributorship where plaintiff failed to demonstrate irreparable harm, notwithstanding claims of loss of goodwill and unquantifiable losses stemming from sales of products not provided by defendant); *Newport Tire & Rubber Co., Inc. v. The Tire & Battery Corporation*, 504 F.Supp. 143, 149-50 (E.D.N.Y. 1980)(stating "irreparable harm is a sine *qua non* to the issuance of a preliminary injunction in this circuit," and denying preliminary injunction where plaintiff's evidence regarding termination of its exclusive distributorship failed to prove irreparable harm).

      **B.**    **The Cases Cited by Consist Do Not Support The Issuance of a Preliminary Injunction Absent Tangible Evidence of Irreparable Harm**

None of the cases that Consist cites states in *dictum*, much less holds, that the termination of an exclusive distributorship constitutes irreparable harm *per se*. To the contrary, as would be expected where the law is so well-settled, they all refute Consist's contention.

Consist's lead authority, *Subaru Distributors Corp. v. Subaru of America,* 47 F.Supp.2d 451 (S.D.N.Y. 1999), is a case that this Court decided. Consist Memo at 9. The Court may thus be able to find, where we were not, support for Consist's claim that that case holds "the threatened loss of an <u>exclusive</u> distributorship ... constitutes irreparable harm without more, entitling the distributor to a preliminary injunction." *Id.* (emphasis in original).

In fact, our reading of *Subaru* indicates that the Court held to the contrary: "an applicant

for a preliminary injunction must *demonstrate* that it will suffer irreparable harm in the absence of the relief sought." 47 F.Supp. at 460 (emphasis added). Even more to the point is that this Court recognized that "[t]his Circuit has recognized that a manufacturer's notice of termination threatens irreparable harm when termination of the franchise would *obliterate the dealer's entire business*." 47 F.Supp. at 474 (emphasis added). Indeed, although plaintiff's exclusive distributorship was under threat of termination and that distribution constituted substantially all of plaintiff's business, because termination was not imminent based on the plaintiff's right to a 90-day notice of termination under the New York Dealer Act, this Court held that there was no actual or imminent irreparable injury and refused to preliminarily enjoin the defendant. *Id.*

The reason for Consist's new contention that the loss of an exclusive distributorship is *per se* irreparable harm is not hard to surmise – Consist's business is not seriously dependent on SAG's Systems and loss of the distributorship of the Systems would only cause a minor disruption to its business. Consist's own public statements and admissions suggest that its principal business is the sale of its own products, consulting services, and products of companies other than SAG. *Infra* pp.2-3. Moreover, Consist's business also relies on operating subsidiaries that are likely very profitable. The proofs that this Court examined in *Subaru* are exactly those that Consist argues are unnecessary, *e.g.*, the extent to which its business depends on the distributorship of SAG's Systems and the financial extent to which its business will be harmed.

*Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904, 908 (2d Cir. 1990), is another case upon which Consist places considerable reliance. Not surprisingly, Judge Cardamone expressly recognized that "*a showing* of probably irreparable harm is 'the single most important' prerequisite for the issuance of a preliminary injunction ....[citations omitted]" and then carefully reviewed the evidence of irreparable injury, including actual threats by customers to stop dealing with UPI, a threat of the continued viability of UPI, and customers

troubled by the loss of the distributorship which UPI established through an evidentiary survey of its customers.  *Id.* at 908-09 (emphasis added).

That Consist at least originally read that case as we now do is evident from the Consist Memo.  Consist Memo at 11.  The Consist Memo argues that SAG's purported contacts with Consist's customers created irreparable injury similar to that which was factually demonstrated in *Reuters*.  Consist nowhere relies on a rule of *per se* irreparable injury.

Likewise the other cases cited by Consist do not hold that there is a presumption of irreparable harm or establish a *per se* rule where an exclusive distributorship is involved despite some of those courts granting preliminary injunctive relief.  *AIM Int'l Trading Co. LLC v. Valcucine S.p.A.*, 188 F.Supp.2d 384, 386-88 (S.D.N.Y. 2002), found that a TRO was appropriate pending arbitration of the claims on the merits only after plaintiff proved that (i) its business was based solely on the distribution of defendant's products; (ii) its business network could be destroyed; (iii) it would have no products to sell; and (iv) it could not be compensated by money damages because the case involved the **total loss of their business**.  *Gerard v. Almouli*, 746 F.2d 936, 939 (2d Cir. 1984), upheld injunctive relief premised largely upon the fact that it would be impossible to produce an accurate money damages figure because "no developed market for [the] product existed."  *But see id.* at 940 (Van Graafeiland, J. dissenting that plaintiff did not establish irreparable harm).  Here, in contrast, Consist has been in business for over 30 years distributing SAG's Systems.  If Consist is correct and SAG's termination of the Agreement is ineffective, with its 30 years of experience Consist should have no difficulty proving its damages.

*National Kitchen Prods., Inc. v. Kelmort Trading and Co.,* 1992 U.S.Dist. LEXIS 657 (S.D.N.Y. Jan. 24, 1992), similarly required under well-established law that a party seeking a preliminary injunction must demonstrate irreparable harm.  *See id.* at *2-3.  "National offer[ed]

credible *evidence*" that its relationships and reputation would suffer from the termination. *Id.* at *5 (emphasis added). *Roso-Lino Beverage Distribs., Inc. v. The Coca-Cola Bottling Co. of N.Y., Inc.*, 749 F.2d 124, 125-26 (2d Cir. 1984) also required a showing of irreparable harm, *id.* at 125, and granted injunction only where the "owners of Roso-Lino . . . **stand to lose their business forever**." (Emphasis added.)

New York state similarly has no *per se* rule, or even presumption, in favor of issuing a preliminary injunction absent a demonstrable showing of irreparable harm. State law contains the same requirement as federal law, namely that plaintiff needs to demonstrate a total destruction of its business in order to prevail on a preliminary injunction hearing. *See Mr. Natural, Inc. v. Unadulterated Food Prods., Inc.*, 152 A.D.2d 729, 544 N.Y.S.2d 182 (2d Dept. 1989) ("plaintiff adduced adequate *evidence* of irreparable injury . . . . Absent a preliminary injunction, there is no assurance plaintiff will be able to stay in business pending trial."); *U.S. Ice Cream Corp. v. Carvel Corp.*, 136 A.D.2d 626, 628, 523 N.Y.S.2d 869, 871 (2d Dept. 1988) (plaintiffs have demonstrated the necessity of injunctive relief . . . . [T]here is no assurance that the plaintiffs will be able to stay in business pending trial.").

## Conclusion

There is no *per se* rule of irreparable harm for termination of an exclusive distributorship, even when a unique product is the subject of the distributorship. Consist has represented that it will rely on its *per se* contention of irreparable harm and that it will not introduce at the December Hearing any evidence of irreparable harm. Because Consist must introduce such evidence to carry its burden to prove irreparable harm, Consist as a matter of law cannot establish the prerequisites for the issuance of a preliminary injunction.

Accordingly, SAG requests that Consist's motion for a preliminary injunction be denied without further proceedings. Because the argument and briefing of this point of law has whittled

away at a substantial portion of the little time SAG had to prepare for the hearing on Consist's motion for preliminary injunction, including expert reports that depend on the withheld discovery, SAG would be severely prejudiced if Consist is now permitted to change horses and is allowed to attempt to factually prove irreparable harm. However, in the event the Court determines the December Hearing is still necessary, Consist should be ordered to comply with the discovery propounded by Software AG on irreparable harm, including requiring Consist to produce its source code and financial information, and extend the date by which SAG must submit its expert reports.

Dated: New York, New York
October 23, 2007

BAKER & McKENZIE LLP

By: __/s James David Jacobs__
    James David Jacobs
    Frank M. Gasparo
    Marcella Ballard
    John A. Basinger*
    1114 Avenue of the Americas
    New York, New York 10036
    (212) 626-4100

    Attorneys for Defendant/Counter-Plaintiff Software AG, Inc. and Defendant Software AG

*admitted pro hac vice