UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSIST SOFTWARE SOLUTIONS, INC. f/k/a CONSIST INTERNATIONAL, INC., <br><br>                     Plaintiff, <br><br>       -against- <br><br> SOFTWARE AG, INC. and SOFTWARE AG, <br><br>                   Defendants; <br><br> AND RELATED COUNTERCLAIMS | Case No. 07-7047 (CM)(FM) <br><br><br> DECLARATION OF JOHN A. BASINGER IN SUPPORT OF SOFTWARE AG, INC. AND SOFTWARE AG's MEMORANDUM OF LAW IN OPPOSITION TO CONSIST'S CONTENTION THAT IRREPARABLE HARM MAY BE PRESUMED UPON THE TERMINATION OF AN EXCLUSIVE DISTRIBUTORSHIP AGREEMENT |

JOHN A. BASINGER declares:

     1.    I am an attorney at Baker & McKenzie LLP, attorneys for defendants Software AG, Inc. ("SAGA") and Software AG (collectively, "SAG"). I am over eighteen years old and am otherwise competent to make this declaration. I am admitted *pro hac vice* in this action. I make the following statements based on my own personal knowledge or the documents kept by Baker & McKenzie LLP.

     2.    Plaintiff Consist Software Solutions, Inc. f/k/a Consist International, Inc. ("Consist") filed suit against SAG in the Supreme Court of the State of New York, County of New York on or about August 3, 2007. SAG promptly removed the case to the United States District Court for the Southern District of New York, where it was assigned the case number designated in the caption above.

     3.    The instant litigation concerns a Distributorship Agreement (the "Agreement") between SAGA and Consist effective January 1, 1998. SAG contends that it is entitled to not renew the Agreement at the expiration of its Term on December 31, 2008 without cause, and that

it gave the requisite Notice of Non-Renewal under Paragraph 1 of the Agreement. SAG further contends that Consist has materially breached the Agreement, and SAG is entitled to terminate the Agreement for cause on 60-days' notice and an opportunity to cure, at any time during the Agreement Term.

4.    Consist disputes that SAG may choose not to renew the Agreement at the end of its Term and further contends that SAG's Notice of Non-Renewal was ineffective. Consist additionally contends that SAG did not give the appropriate notice of termination "for cause" and denies that it committed any uncured breaches of the Agreement. SAG agreed to extend the date of non-renewal or termination of the Agreement for any reason to December 31, 2007.

5.    Consist's counsel informed SAG's counsel that Consist would move for a preliminary injunction to (i) require SAG to specifically perform the Agreement with Consist for an additional five years, or until December 31, 2012; and (ii) to prevent SAG from either effecting the Notice of Non Renewal at the end of the Agreement Term or terminating the Agreement "for cause". Consist's counsel then served upon SAG's counsel a courtesy copy of a motion for preliminary injunction.

6.    The Court issued a Scheduling Order dated September 26, 2007, which authorized expedited discovery and set an evidentiary hearing on Consist's motion for December 10, 2007, later adjourned to December 12 (the "December Hearing").

7.    In response to filings by SAG, the Court issued a Memorandum Order dated October 4, 2007 directing the parties to proceed with discovery on matters including, *inter alia,* "the extent to which Consist's business will be destroyed" by non-renewal or termination of the Agreement.

8.    Pursuant to the Scheduling Order, SAG served requests for production upon Consist. SAG sought documents such as Consist's financial records to provide SAG necessary

NYCDMS/1063888.3

information so that it may test Consist's allegations of irreparable harm (Complaint, ¶¶ 53-59).
SAG also sought the financial records to determine how much of Consist's revenues stem from
distributing SAG's technology *e.g.,* the "Adabas" database and "Natural" programming language
(the "Systems").   Requests 1-7 of SAG's Second Request for Production seek the financial
records and a true copy is attached as <u>Exhibit A</u> to <u>Exhibit 1</u> accompanying this declaration.

9.      Consist also contends that its business includes developing its own branded
applications.   True copies of screenshots and pages printed from Consist's website identifying
some of these applications are attached as <u>Exhibit 2</u>.

10.      SAG seeks Consist's software source code documents as well in order to test
Consist's allegation that its applications are dependent on SAG technology or whether they can
feasibly be utilized with or transitioned to other technology.  *See* <u>Exhibit A</u> to <u>Ex. 1</u>, Reqs. #9-18.

11.      Counsel for Consist and SAG engaged in meet-and-confer efforts by telephone
relating to production of the financial records and source code documents and Consist refused to
produce most if not all of the documents and data SAG sought.   SAG wrote a letter to the Court
dated October 17, 2007 seeking resolution of these discovery disputes.  *See* <u>Exhibit 1</u>.

12.      On October 19, 2007 the Court held a telephone conference with counsel for both
SAG and Consist in response to the October 17 letter.   Consist's counsel stated during that
conference call that Consist does not intend to demonstrate factually at the December Hearing
that it has suffered irreparable harm. Consist's newly-stated position is that it is entitled to rely
upon a legal presumption or "*per se*" rule of irreparable harm for termination of an exclusive
distributorship.   Consist's counsel stated that its willingness to forego submitting such factual
evidence rendered the discovery sought by SAG relating to its financial records and software
source code documents irrelevant.

13.      The Court directed the parties to brief the issue concerning Consist's new

allegation that it may rely on a *per se* rule of irreparable harm in lieu of presenting discoverable, admissible evidence on this point at the December Hearing. Consist submitted to the Court its Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction (the "Consist Memo") that it had not previously filed, but had provided as a courtesy copy to SAG's counsel. Consist stated that its *per se* rule of irreparable harm argument is contained at pages 7-15 of the Consist Memo.

14.    Because the argument and briefing of this point of law has whittled away at a substantial portion of the little time SAG had to prepare for the hearing on Consist's motion for preliminary injunction, including expert reports that depend on the withheld discovery that are presently due November 1 under the current Scheduling Order, SAG would be severely prejudiced if Consist were now permitted to change horses and were allowed to attempt to factually prove irreparable harm.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       October 23, 2007

John A. Basinger

NYCDMS/1063888.3

# Exhibit 1

**BAKER & MCKENZIE**

Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036, USA

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakernet.com

**Asia
Pacific**
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

**Europe &
Middle East**
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Mein
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

**North & South
America**
Bogota
Brasilia
Buenos Aires
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

October 17, 2007

James David Jacobs
Tel: +1 212 891 3951
Fax: +1 212 310 1651
James.D.Jacobs@bakernet.com

**By Facsimile**

The Honorable Colleen McMahon
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 640
New York, NY 10007

RE:     Case No. 07 CV 7047
        *Consist Software Solutions, Inc. v. Software AG, Inc. and Software AG*

Dear Judge McMahon:

We write on behalf of defendants Software AG, Inc. and Software AG (together
"Software AG") to notify the Court of a discovery dispute we are having with
plaintiff Consist Software Solutions, Inc. ("Consist"). The dispute centers on a
category of documents requested by Software AG that Consist is refusing to
produce: the software source code underlying Consist's software applications.

**Background**

As the Court may recall pursuant to a 1998 Agreement Software AG appointed
Consist its exclusive distributor of various software products, including a database
and a language to access that database. Pursuant to that Agreement Software AG
gave Consist notice 18 months prior to the expiration of the Agreement that Software
AG did not intend to renew the Agreement. Software AG also gave Consist notice
that the Agreement was terminated due to Consist's material breaches. Consist
contends that those notices were ineffective. Consist has sought an order to compel
Software AG to renew Consist's distributorship of Software AG's products and not
terminate its distributorship for cause.

**The Dispute**

In accordance with this Court's September 26, 2007 Scheduling Order providing for
expedited discovery Software AG served its 2d Requests (Nos. 9-18 are the requests
in issue) demanding Consist's software source code for the applications that Consist
claims it built using Software AG's technology and various related documents. A
copy of Software AG's Second Request for Documents is attached to this letter as
Exhibit A.

**BAKER & McKENZIE**

The parties have been unable to agree on production of the source code. Consist initially took the position that our document requests relating to the source code of its software applications were irrelevant. Despite the fact that Consist as the "objecting party" has the obligation to write to the Court explaining their bases for objecting, they have failed to do so. Thus we are forced to raise the issue ourselves.

Consist finally offered to produce the source code after five days went by and after we conveyed to them our intention to raise the issue with Your Honor. But Consist is now insisting on producing the source code under the terms of an undefined "escrow" arrangement – one that has neither been provided to us or explained in any detail by Consist's lawyers. The parties have already stipulated to the terms of a Confidentiality Order which provides for production of sensitive material under an "Attorneys Eyes Only" designation. Software AG will only allow its third party expert(s) to view the source code, along with its outside lawyers. The expert is a renowned professor and not involved in the business of distributing software applications. There is no reason to enter into an onerous escrow agreement because any distribution of the source code beyond those individuals would violate the terms of the Confidentiality Order (which was in fact drafted by Consist's lawyers). Simply put, Consist's concern that the source code could be copied is baseless since such copying presupposes that we would violate our ethical duties and the Confidentiality Order.

In order to succeed on its motion for a preliminary injunction and specific performance Consist must establish irreparable harm. To this end Consist alleges that its "business goes far beyond the mere licensing of [Software AG's products] to end users", but that it "develops business software solutions based on SAG technology ...." Complaint, ¶ 5. Consist then argues that "[Consist's customers'] computer functions are *totally beholden* to ... [these] applications and solutions ... that they have developed in conjunction with Consist" and "the results of removing CONSIST ... would be nothing short of calamitous." Complaint, ¶ 58. In addition Consist 's Brazil website, www.consist.com/br, lists *sixteen* "Consist" branded software applications in comparison with approximately a half dozen products licensed from Software AG.

Software AG has requested Consist's source code for its products to determine to what extent they currently are "beholden" to Software AG technology, as Consist contends and to determine whether and to what extent it is feasible for Consist to switch to a different technology such as, *e.g.,* Oracle.

**BAKER & McKENZIE**

Consist's contention is that under its view of irreparable harm, whether or not Consist could have, or would have employed a different technology other than Software AG's is irrelevant because that presupposes a contract interpretation consistent with Software AG's view. Consist argues that the feasibility of switching customers to another technology never arises if the Court accepts its view of the Agreement, *i.e.,* that the Agreement is automatically renewed and no valid notice of non-renewal was sent by Software AG.

Consist's source code is clearly relevant. Even if the Court accepts Consist's view on the notice not to renew, *i.e.,* the merits, then the Court still must find that Consist is irreparably harmed to grant Consist the interim relief it seeks. The Federal Rules of Civil Procedure enable us to test Consist's factual contentions. Software AG is entitled to verify Consist's assertions that it is in fact beholden to Software AG's technology for the software applications it designs and distributes.

Equally fundamental, Consist may not reject a valid discovery request based on its unilateral interpretation of the Agreement. Consist is refusing to produce documents now that will enable Software AG to contest its claims of irreparable harm at the December trial. This it may not do through a discovery objection. Consist should produce the documents and data now and let the parties argue their view of the contract interpretation in December. As we pointed out in our October 2, 2007 letter to the Court, the Agreement is subject to numerous interpretations, all different from the one that Consist proposes, any one of which raises questions relating to Consist's purported reliance on Software AG's products.

We disagree with Consist's position for two additional reasons. The source code should be discoverable by Software AG in order to substantiate our view that if the Agreement is not renewed it is quite possible for Consist to switch to another technology, particularly given the generous 18 month notice period granted under the Agreement. Obviously, if Consist could feasibly change to another technology, it is not irreparably harmed.

Consist's argument that if the Court rules that the Software AG's notice of non-renewal was ineffective that would moot the need for Consist's software applications source code is also misplaced. Consist is seeking injunctive relief to obtain specific performance of the Agreement. *See* Complaint, ¶¶ 71-75; and Prayer for Relief. One of the elements Consist will need to prove to obtain such relief is that the services under the Agreement were unique or special. *New Pacific Overseas Group (USA) Inc. v. Excal Int'l Dev't Corp.,* 1999 U.S. Dist. LEXIS 6386 at * 20 (S.D.N.Y May 6, 1999) (Denying a preliminary injunction requiring specific performance of a contract based on, *inter alia,* the fact that irreparable harm could not be established

BAKER & McKENZIE

where the product marketed was not a "truly unique opportunity" without a "reasonable substitute" in the marketplace.); *Hannex Corp. v. GMI, Inc.*, 1989 U.S. District LEXIS 2504 at \*24 (E.D.N.Y. March 8, 1989) (Denying plaintiff's preliminary injunction for specific performance in part because the termination of the exclusive distributorship was not irreparable since the "loss of business …may be mitigated through use of other financial resources available to plaintiff" and because the termination was foreseeable thus "undermin[ed] the argument [by plaintiff] that the balance of hardships favors the plaintiff.")

We are entitled, therefore, to refute this claim with evidence demonstrating that the technology is *not* "unique" in this regard. Rather, Consist could have (and should have) explored the availability of other technologies, revenue models and distributorships for its own software applications.

Software AG plans to demonstrate this feasibility in December but it cannot do so without the source code because that will enable Software AG's witnesses to testify about Consist's purported reliance on Software AG's technology, the feasibility of Consist switching to other technologies and the availability of other distributorships and revenue models that are compatible with the Consist-designed software applications.

We respectfully request that Your Honor so order Consist to deliver the software source code under the terms of the parties' Confidentiality Order.

Respectfully Submitted,

*James David Jacobs/ldz*

James David Jacobs

JDJ/ldz

cc: Hyman L. Schaffer (by email)

Exhibit A

James David Jacobs
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036-7703
Tel: (212) 626-4100
FAX: (212) 310-1600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSIST SOFTWARE SOLUTIONS, INC. f/k/a CONSIST INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> -against- <br><br> SOFTWARE AG, INC. and SOFTWARE AG, <br><br> Defendants. | Case No. 07-cv-7047 (CM)(FM) <br><br><br> DEFENDANTS SOFTWARE AG, INC. AND SOFTWARE AG'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION |

Pursuant to the Court's Scheduling Order dated September 26, 2007, Defendants Software AG, Inc. and Software AG serve this their Second Request for Production of Documents, Electronically-Stored Information and Things pursuant to Fed. R. Civ. P. 34, and request that Plaintiffs produce the following documents no later than five days after service at the offices of Baker & McKenzie LLP, 1114 Avenue of the Americas, New York, NY 10036, attn: John Basinger.

## **DEFINITIONS**

The following definitions apply to each of the requests for documents set forth below and are deemed to be incorporated in each of those requests.

      (a)    **Local Rule 26.3**. All terms defined in Local Rule 26.3 (c) are defined as set forth therein.

(b)    "AGREEMENT" means the Distributorship Agreement between Software AG Americas, Inc. and Consist International, Inc. dated September 9, 1997 and effective January 1, 1998.

(c)    "COMPLAINT" means the Complaint filed by Consist Software Solutions, Inc. f/k/a Consist International, Inc. in the Supreme Court of the State of New York, County of New York, Index No. 602644/2007.

(d)    "CONSIST" or "YOU" means Consist Software Solutions, Inc., f/k/a Consist International, Inc. and its affiliate companies, including owners, directors, officers, employees, and agents.

(e)    "SOFTWARE AG" means and includes Software AG, Software AG, Inc. and their affiliates.

(f)    Terms defined in the AGREEMENT and capitalized in these requests (e.g. SPECIAL PRODUCTS) are given the meanings as defined in the AGREEMENT.

## INSTRUCTIONS

1.    **Organization.**  In producing documents pursuant to this request, please produce them as they are kept in the ordinary course of business or organize and label them to correspond with the categories in the request, pursuant to Fed. R. Civ. P. 34(b).

2.    **Complete Documents.**  All documents shall be produced in the form in which they are maintained.  A request for a document shall be deemed to include transmittal sheets, cover letters, exhibits, enclosures or attachments to the document in addition to the document itself.

3.    **Electronically Stored Information; Form.**  Electronically stored information ("ESI") shall be produced in native format.

4.    **Partial Response and Production**.   When a full and complete response to a particular request is not possible, production should be made to the extent possible and a statement should be made indicating why only a partial production is given and what must occur before a complete production may be given.

## REQUESTS FOR DOCUMENTS

1.    CONSIST's complete annual financial statements including footnotes (audited if available) for 2002 to present.

2.    CONSIST's General Ledger Trial Balances Supporting the Financial Statements for 2002 to present.

3.    CONSIST's Monthly Financial Statements and Trial Balances for the current fiscal year.

4.    CONSIST's Sales Journal Summaries or Reports which detail revenue by Customer and Product, and support the revenue reflected in the financial statements for 2002 to present.

5.    CONSIST's Cost of Sales by Customer, Product and Maintenance Activity which support the cost reflected in the Financial Statements for 2002 to present.

6.    CONSIST's Annual Budgets and Forecasts of Revenues and Costs and Cash Flow for 2002 to present.

7.    CONSIST's Monthly Budgets and Forecasts of Revenues and Costs and Cash Flow for the current fiscal year.

8.    All of CONSIST'S customer agreements for development, licensing, installing, technical assistance, training, maintenance and support in the Territory.

9.    All source code developed by or for CONSIST that has been developed to access Adabas, including but not limited to, internal source code comments and any documentation that describes the implementation or functionality of the source code.

10.    All source code developed by or for CONSIST that calls Adabas or an interface to Adabas, including but not limited to direct calls to Adabas or indirect calls to Adabas via a wrapper or otherwise.

11.    All DOCUMENTS CONCERNING the interfacing between a CONSIST product and Adabas, including but not limited to proposed Consist products and Consist products under development.

12.    All DOCUMENTS CONCERNING translating an application written in Natural to an application in another programming language.

13.    All DOCUMENTS CONCERNING the use of an application written in a programming language other than Natural to access Adabas.

14.    All DOCUMENTS CONCERNING the use of an application written in Natural to access a database other than Adabas.

15.    All DOCUMENTS CONCERNING the installation, maintenance or support of Adabas or a Consist product that can access Adabas, including but not limited to documents created by or for CONSIST, by or for a past, current or prospective customer of CONSIST or by or for a third party.

16.    All DOCUMENTS CONCERNING the hardware or hardware systems used by Consist customers for operating Adabas or a Consist product that can access Adabas, including but not limited to servers, processors, central processing systems, random access memory, storage mediums and operating systems.

17.    All DOCUMENTS CONCERNING switching a past, current or prospective customer relying upon or using Adabas to another database, including:

    a.    preparations for switching;

    b.    feasibility of switching;

    c.    the process of switching;

    d.    the economics of switching;

    e.    operational or other implications of switching;

    f.    customers' experiences with and comments on switching.

18.    All DOCUMENTS CONCERNING data management systems other than Adabas employed or considered being employed at a customer location of a past, current or prospective customer of CONSIST.

19.    All DOCUMENTS CONCERNING a request for service of a CONSIST product that accesses, requires, uses or incorporates a SOFTWARE AG product from a past or current customer of CONSIST.

20.    All DOCUMENTS CONCERNING CONSIST's actions taken in response to the letters dated 30 March 2006 and 6 April 2006, attached as exhibits 3 and 4 to the COMPLAINT, including without limitation:

    a.    Efforts by CONSIST to secure agreements to allow it to distribute software that is competitive with the SYSTEMS, or any aspect, part or component of the SYSTEMS;

    b.    Efforts by CONSIST to convert existing CONSIST customers to systems based on software developed, licensed or sold by entities other than SOFTWARE AG;

      c.  Efforts to cause existing, new or prospective customers to engage CONSIST to provide software that is competitive with the SYSTEMS, or any aspect, part or component of the SYSTEMS.

21.     All Agreements or other DOCUMENTS that permit CONSIST to sell, license or develop software that is competitive with the SYSTEMS, or any aspect, part or component of the SYSTEMS.

22.     All DOCUMENTS CONCERNING requests for technical assistance from HP.

23.     All DOCUMENTS CONCERNING termination of maintenance or limited licensed agreements with customers of SOFTWARE AG products.

Dated: New York, New York
      October 10, 2007               BAKER & McKENZIE LLP


                             By:   */s James David Jacobs*
                               James David Jacobs
                               1114 Avenue of the Americas
                               New York, New York 10036
                               (212) 626-4100

                               Attorneys for Defendants
                               Software AG, Inc. and Software AG

# Exhibit 2





**Germany**
www.makdata.de

Please refer to our local websites
or contact us at:

10 East 53rd. Street
New York, NY 10022, USA
Phone +1 (212) 759-2100
consist@consist.com

HARVARD BUSINESS SCHOOL PUBLISHING    CONSIST

eLearning™

CONSIST





