USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___11/28/07___

**Duane Morris**

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

HYMAN L. SCHAFFER
DIRECT DIAL: 212.692.1078
PERSONAL FAX: 212.208.4330
E-MAIL: hlschaffer@duanemorris.com

www.duanemorris.com

MEMO ENDORSED

November 27, 2007

BY FACSIMILE

Hon. Colleen McMahon
United States District Court for the Southern District of New York
500 Pearl Street, Room 640
New York, NY 10007

Re:   Consist Software Solutions, Inc. f/k/a Consist International, Inc.
v. Software AG, Inc. and Software AG  (07 Civ. 7047) (CM) (FM)

Dear Judge McMahon:

As Your Honor knows, we represent Consist Software Solutions, Inc. ("Consist"),
plaintiff in this action. We received a copy of the letter dated November 27, 2007 from counsel
for defendants Software AG ("SAG") and Software AG, Inc. ("SAGA") (together referred to as
"Defendants") responding to Your Honor's direction that Defendants (a) provide the Court with
all documents constituting a notice of breach and (b) identify each and every instance of material
breach that Defendants believe justifies termination to the Distributorship Agreement dated as of
January 1, 1998 (the "Agreement"). The purpose of this letter is to show that Defendants'
purported notices are legally insufficient and that, even if the notices were adequate, there would
be no connection between them and the discovery Defendants seek.

Paragraph 7 of the Agreement provides:

Before any termination of this Agreement shall become effective, the
terminating party shall give written notice to the other party describing in detail
what material conditions the other party has failed to perform, and the other party
shall have sixty (60) days in which to perform such conditions.

(Emphasis added.)

In addition, Paragraph 8 of the Agreement requires that all legal notices be sent to Consist
at 10 East 53rd Street, New York, NY by "Certified Mail, Postage Prepaid, telex or cable, or
delivered by hand."

The first of the notices annexed to Defendants' latest letter consisted of an e-mail from

DuaneMorris

Hon. Colleen McMahon
November 27, 2007
Page 2

SAG (which was not a party to the Agreement) dated July 4, 2006. The subject line of the e-mail
is entitled "Cooperation Agreement." The e-mail itself states that Consist's alleged failure to
utilize "market potential" in Argentina, Paraguay, Uruguay, Chile, Peru, and Bolivia constituted
a breach of the Agreement. Nowhere in the e-mail did SAG purport to terminate the Agreement
unless Consist cured within 60 days. Nor did SAG explain in the e-mail what obligation in the
Agreement Consist supposedly violated. The e-mail was, in short, so vague as to be ineffective
as a notice of termination as a matter of law, both procedurally and substantively. As the court
explained in Ulla-Maija, Inc. v. Kivimaki, 2005 U.S. Dist. LEXIS 22249, at 11 (S.D.N.Y., Sept.
30, 2005), where it held that the parties' licensing agreement had not been terminated because
defendants failed to provide an adequately detailed notice of termination, "the notice must be
specific enough so as to give the other party a reasonable opportunity to cure the breach if this
can be done." The court added:

> This purported notice was the letter of April 12, 2002. However, it was
> stated in terms so general as to be meaningless insofar as providing an
> opportunity to cure any alleged breaches. The letter claimed the failure "to
> perform material obligations" under the License Agreement. These were said to
> include (but were not limited to) the obligation to manufacture and sell dresses
> "of certain design and quality standard." This gave no hint of what specific
> defects needed to be cured. Were they in the design? And, if so, in what way?
> Were there defects in the manufacture? If so, what? Nothing was specified. As
> to the promotional material, again there was the most general objection without
> any guidance as to what needed to be cured.
>
> In connection with the obligation to obtain approval, all that is mentioned
> is advertising and promotional materials. Nothing was said about any failure to
> submit dress designs.
>
> Also, the April 12, 2002 letter was wholly lacking in the essential feature
> required by the License Agreement - i.e., providing a 30-day period to cure
> defects.

(Emphasis added.)

On July 28, 2006, Consist addressed SAG's July 4, 2006 e-mail. (A copy of Consist's
letter is annexed hereto as Exhibit A.). More than two weeks later, SAG's counsel sent a follow-
up letter to Consist's counsel. Defendants now identify that letter as one of their notices of
termination. Like the July 4, 2006 e-mail, SAG's counsel's August 16, 2006 letter did not
constitute a proper notice under Paragraph 8 of the Agreement; procedurally and substantively,
since it was not sent to Consist by one of the methods of transmission specified in the Agreement
and it, too, was extremely vague. For example, it asserted that Consist had sold competing
products without SAGA's approval, identifying only Attunity.Connect as "[a]mong such

# DuaneMorris

Hon. Colleen McMahon
November 27, 2007
Page 3

products." In actuality, SAGA had authorized Consist's sale of Attunity.Connect four years earlier. (See Exhibit B hereto.) We responded to the letter from Defendants' counsel on September 11, 2006. (See Exhibit C hereto.[1]) In our response, we expressly challenged the propriety of Defendants' "notices."

Between August 16, 2006 and October 8, 2007 (after Your Honor had already scheduled a hearing in this case), Defendants did not make any further complaints about Consist's performance under the Agreement. It was not until October 9, 2007[2] that Defendants' counsel sent a new letter purporting to be a termination notice. Not only was that letter, which was followed by another letter the following day, sent to Consist's counsel, rather than to Consist (as required by Paragraph 8 of the Agreement), but the letters were addressed to us at the wrong address. The allegations in Defendants' counsel's October 9 and 10 letters were entirely conclusory. Moreover, even if the letters had otherwise been proper, the time to cure has not yet ripened. The Agreement gives Consist 60 days to cure, and that period will not expire until December 10, 2007. Thus, Defendants' claim is premature.

Notwithstanding the defects in the October 9 and 10 "notices," Consist responded to them on November 2, 2007. (A copy of our response is annexed hereto as Exhibit D.) In our response, we disputed that there had been any breaches at all, requested additional information as to Special Products so that we could "cure" the alleged breach, proposed making a disclosure for which we requested Defendants' approval, and stated that we had stopped marketing of a claimed competing product which SAG had previously approved.

On November 6, 2006, Defendants' counsel responded to my November 2, 2007 letter. (See Exhibit E hereto.) Defendants refused to provide any information or to comment on our proposed disclosures, thereby preventing Consist from exercising its right to cure. At the same time, Defendants are using the allegations made in their latest termination threats as a pretext for obtaining all kinds of financial information which has no actual bearing on any alleged breach. For example, having injected into the case an issue concerning whether Consist marketed Special Products -- and then refused to provide Consist the materials that would be required to market Special Products – Defendants purport to need to review all of Consist's financial records to confirm that Consist sold no Special Products. Discovery is not needed on this subject.[3] Consist has admitted that it made no sales of Special Products in the past.

---

[1]    In our complaint, we explain why the allegations made in Defendants' counsel's letter were baseless.

[2]    The letters were both erroneously dated 2008.

[3]    Copies of Defendants' discovery requests, which we previously provided to the Court, are annexed hereto as Exhibit F. They include demands for the production of all sorts of financial information such as Consist's tax returns which cannot be tied to any alleged breach or contract

DuaneMorris

Hon. Colleen McMahon
November 27, 2007
Page 4

Perhaps more importantly, there is no theory on which Defendants can claim that they have a right to terminate the Agreement based on Consist's handling of Special Products without giving Consist notice and an opportunity to cure pursuant to Paragraph 7 of the Agreement.[4] For purposes of termination, the issue is not what Consist did in the past, but whether Consist failed to cure in the face of a proper notice. As the annexed correspondence establishes, Defendants did not provide a proper notice and have made "cure" impossible. In any event, Defendants do not need to comb through Consist's financial data to prove a negative: that there is no documentation showing sales of Special Products.

Defendants also fail to explain how the financial discovery they seek is relevant to the interpretation of the Agreement and there is simply no correlation between the two. In addition, under Rule 37(a)(2)(B), Defendants' discovery requests are so overbroad and so far removed from any issue in the case that the Court should find that they are improper. See Convermat Corp. v. St. Paul Fire & Marine Ins. Co., 2007 U.S.Dist. LEXIS 69102, at *5 (E.D.N.Y. Sept. 18, 2007) (motion to compel denied where potential response to specific requests would require party to produce massive amounts of documents ).

Respectfully,

Hyman L. Schaffer w/permission

Hyman L. Schaffer

Enclosures
cc:     James David Jacobs, Esq. (by e-mail and w/encls.)
John Basinger, Esq. (by e-mail and w/encls.)
Marcella Ballard, Esq. (by e-mail and w/encls.)
Frank Gasparo, Esq. (by e-mail and w/encls.)

---

construction theory.

[4]     "New York courts would apply the clear New York rule requiring termination of a contract in accordance with its terms. . . ." Filmline Productions, Inc. v. United Artists Corp., 865 F.2d 513, 519 (2d Cir. 1989) ("purported notice of termination...was in any event ineffective under New York law because it did not comply with the Agreement."); see also Bausch & Lomb v. Bressler, 977 F.2d 720, 727 (2d Cir. 1992) ("Under New York law, . . . where the Agreement specifies conditions precedent to the right of cancellation, the conditions must be complied with.") (internal citations and quotations omitted).

# EXHIBIT A

DuaneMorris·                    FIRM and AFFILIATE OFFICES

                                NEW YORK
                                LONDON
                                LOS ANGELES
                                CHICAGO
                                HOUSTON
HYMAN L. SCHAFFER                PHILADELPHIA
DIRECT DIAL: 212.692.1078       SAN DIEGO
E-MAIL: hlschaffer@duanemorris.com    SAN FRANCISCO
                                BOSTON
www.duanemorris.com             WASHINGTON, DC
                                LAS VEGAS
                                ATLANTA
July 28, 2006                   MIAMI
                                PITTSBURGH
                                NEWARK
                                ALLENTOWN
                                WILMINGTON
Software AG, Inc.               HARRISBURG
11700 Plaza America Drive       PRINCETON
Suite 700                       LAKE TAHOE
Reston, VA 20190

Software AG Americas, Inc.
1190 Sunrise Valley Drive
Reston, VA 20191
Attn: International Operations


Gentlemen:

        My firm represents Consist International, Inc. ("Consist") and I refer to the
Distributorship Agreement effective January 1, 1998 (the "Agreement") between Consist and
Software AG Americas, Inc., now known as Software AG, Inc. ("SAGA").

        On March 30, 2006, SAGA's parent, Software AG, sent a letter to Consist stating that it
had instructed SAGA to give notice of termination of the Agreement effective December 31,
2007. On April 6, 2006, SAGA sent notice to Consist purporting to terminate the Agreement.
This attempted termination was ineffective under the terms of the Agreement.

        Paragraph 1 of the Agreement provides that:

        SAGA appoints CONSIST the exclusive distributor of the SYSTEMS in
        the TERRITORY for the period of January 1, 1998 through December 31, 2007.
        The parties understand and agree that at the end of the first ten (10) year period of
        this Agreement, this Agreement shall automatically renew for successive five (5)
        year periods, unless either party shall decide to terminate this Agreement upon the
        giving eighteen (18) months prior written notice to the other party.

        Paragraph 7 of the Agreement provides that:

        Before any termination of this Agreement shall become effective, the
        terminating party shall give written notice to the other party describing in detail

DUANE MORRIS LLP

# DuaneMorris

Page 2

what material conditions the other party has failed to perform, and the other party shall have sixty (60) days in which to perform such conditions.

The only termination provision set forth in the Agreement is that contained in Paragraph 1. SAGA's purported notice of termination failed to provide Consist with notice describing in detail what material conditions Consist allegedly has failed to perform, as required by Paragraph 7 of the Agreement, nor did it provide Consist with 60 days to perform such conditions. Because SAGA's notice failed to do so, the purported notice of termination was defective and ineffective under the Agreement. Accordingly, the Agreement has been automatically renewed for five years beginning January 1, 2008.

On July 4, 2006, Karl-Heinz Streibich, CEO of Software AG, sent an e-mail to Consist's president, Mr. Natalio S. Fridman, stating: "We consider the none [sic] utilized market potential for our products in your territory, especially Paraguay, Peru, Argentina, Bolivia, Chile, Uruguay, as a breach [sic] of our contract.". Even had such e-mail been proper and sufficient notice pursuant to Paragraph 7 of the Agreement, which it was not, it was untimely since it was given less than 18 months prior to December 31, 2007. [*]

In all events, Consist rejects any assertion in the July 4 e-mail that Consist breached the Agreement and states that its performance at all times has been in accordance with the Agreement's requirements.

As a result of all of these defects, and without waiver of any other claims, arguments, and defenses Consist may have, Consist rejects SAGA's purported termination of the Agreement.

This letter also serves as notice to SAGA and Software AG that Consist will hold SAGA, Software AG and their affiliates liable for all breaches of the Agreement occasioned by their actions in the Territory. Consist intends to seek damages or other relief from SAGA, Software AG and their affiliates, as appropriate, consisting of, among other things, all revenue or other value received by them from the sale of Software AG products for which Consist has exclusive rights, for interfering with Consist's contractual rights and business, for disrupting Consist's market in the Territory, and for causing, or aiding and abetting, the misappropriation of Consist's proprietary and confidential business information. [†]

On behalf of Consist, I demand that SAGA, Software AG and their affiliates cease their activities in violation of the Agreement forthwith, and that they and their affiliates account to Consist for all revenue and value derived therefrom and damage to Consist caused thereby.

---

[*] Consist has never received any other notice under the Agreement or otherwise purporting to identify any nonperformance by it of material conditions.

[†] Consist has taken and is continuing to take steps to strengthen its marketing presence in the Territory. To the extent that SAGA and its affiliates are conducting activities in the Territory in violation of Consist's rights or that otherwise affect its ability to perform under the Agreement, Consist deems any purported failure of performance to have been waived or excused.

Duane Morris

Page 3

Consist reserves all of its rights under the Agreement and at law. Absent your agreement to withdraw the notice of purported termination and your agreement immediately and permanently to cease all violations of the Agreement, to account to Consist for revenue and value received by SAGA, Software AG and their affiliates in violation of Consist's contractual rights, and to repair all damage to Consist and its business resulting from such activities, Consist will act promptly and vigorously to protect its rights through all legitimate means.

Very truly yours,

Hyman L. Schaffer

# EXHIBIT B

005

| | |
|---|---|
| From: | "Williams, Trevor" <Trevor.Williams@softwareagusa.com> |
| To: | "Natalio S. Fridman" <natalio.fridman@consist.com> |
| Sent: | Thursday, January 10, 2002 3:29 PM |
| Subject: | RE: Attunity |

Natalio,

Based on Estl Adnan's comments below, I agree that the Attunity Connect product may be sold by Consist.

Best Regards,

Trevor


Trevor Williams
Vice President, Sales
Software AG Inc.
Tel. 905-681-8768
Fax. 905-681-2052
Pager. 416-934-2075

——Original Message——
From: Natalio S. Fridman [mailto:natalio.fridman@consist.com]
Sent: Thursday, January 10, 2002 2:26 PM
To: Williams, Trevor
Subject: Fw: Attunity

As per our phone conversation, and in benefit of our clients using our ( Software AG) products I would appreciate you can resolve this case asap.

Best regards

Natalio


—— Original Message ——
From: Adan, Estl
To: Natalio Fridman (E-mail)
Cc: Gonen, Arie
Sent: Thursday, January 10, 2002 2:07 PM
Subject: Attunity

HI Natalio

Thank you for the call today.

From previous discussions with your technical people in Brazil I believe that Attunity Connect is not competing with SAG products.

The positioning of Attunity connect is: ODBC/JDBC/JCA/ADO drivers with a distributed SQL engine to

11/27/2007 18.38 FAX 212 692 1020  DUANE MORRIS LLP  ☑ 012/033
Case 1:07-cv-07047-CM    Document 38    Filed 11/28/2007    Page 11 of 33

Page 2 of 2

relational and non relational databases, including all the relational databases and IBM/MF data sources.

FYI, in other countries, such as Israel for instance, SAG responded very positively to customers who wished to use our product, since SAG has not viewed our product as a competition

I have no reason to believe that SAG will object that you will distribute our products.

Using our product will increase SAG customers' satisfaction and therefore will preserve their investment in SAG products.

We will be happy to reach an agreement that will allow Consist to distribute Attunity Connect.

I look forward to hearing from you

Best Regards,
Esti

**Esti Adan**
Director, Strategic Accounts
**Attunity Inc.**
Tel : (408) 733 4285
Cell: (408) 888 8615
eFax: (425) 930 9259
www.attunity.com

# EXHIBIT C

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE

HYMAN L. SCHAFFER
DIRECT DIAL: 212.692.1078
E-MAIL: hlschaffer@duanemorris.com

www.duanemorris.com

September 11, 2006

VIA FIRST CLASS MAIL

Pamela T. Church, Esq.
Baker & McKenzie LLP
1114 Avenue of the Americas
New York, NY 10036

        Re:        SAGA and Consist International, Inc.

Dear Ms. Church:

        For the sake of good order, I am responding to your letter of August 16, 2006, which I received on August 21. We respectfully disagree with the assertion in your letter concerning your client's claimed right to terminate the Exclusive Distribution Agreement (the "Agreement") between your client and my client at all prior to December 31, 2007. We likewise reject any assertion that Dr. Streibich's communication with Natalio Fridman of July 4 was adequate or timely to terminate the Agreement even as of December 31, 2007. Finally, we again reject any assertion that the claimed material breaches identified in the July 4 communication are either factually or legally correct, material to the Agreement or breaches of any sort thereunder.

        For similar reasons, we likewise must reject your client's purported right to terminate the Agreement either before or, at this point, even as of December 31, 2007 on the basis of the additional asserted breaches set forth in your August 16 letter. We reject any claim that the August 16 letter is adequate or timely for any purpose under the Agreement, that the breaches are either factually or legally correct, are material to the Agreement or are breaches of any sort thereunder.

        Finally, with respect to the assertion that our letter of August 11 "lacked even a pretense of the specificity that Paragraph 7 of the Agreement requires" I would respectfully point out that that Paragraph applies only as a condition of termination of the Agreement. As we have not sought to terminate the Agreement (nor do we believe that any such termination would be timely at this point even if we did want to terminate, which we do not), the requirements of Paragraph 7 are inapplicable.

        As stated in our prior letter, we believe the Agreement has automatically renewed for an additional 5 year term. We reiterate our desire to resolve the issues between the parties

DUANE MORRIS LLP

DuaneMorris

Pamela T. Church, Esq.
September 11, 2006
Page 2


amicably and look forward to meeting with you and your clients on September 26 in New York.

Very truly yours,

Hyman L. Schaffer

# EXHIBIT D

DuaneMorris·

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

HYMAN L. SCHAFFER
DIRECT DIAL: 212.692.1078
E-MAIL: hlschaffer@duanemorris.com

www.duanemorris.com

November 2, 2007

VIA EMAIL AND FIRST CLASS MAIL

James D. Jacobs, Esq.
Baker & McKenzie
1114 Avenue of the Americas
New York, New York 10036-7703

      Re:    Letters

Dear Mr. Jacobs:

      This will respond to your letters of October 9 and 10, 2008 (sic) (the "Letters"), both of which were incorrectly addressed to me at 380 Lexington Avenue, New York, New York. As the pleadings filed in the pending litigation between our clients show, the current address of my firm is 1540 Broadway, New York, New York 10036-4086. The certified mail copies of the Letters were received in my office on October 12 and October 18, respectively. And, while the Letters state that they were also sent to me by email, we received only the October 9 Letter on the date stated. We received the October 10 letter by email on October 15 after I asked for a copy of it.

      To the extent that the Letters were intended as, or purport to be, default notices under the Exclusive Distribution Agreement dated as of January 1, 1998 (the "Agreement"), we reject them on the grounds that they were not properly served under the Agreement. Turning to the contents of the Letters, we disagree as a factual and legal matter that the assertions contained in the Letters, or any prior purported notices sent by or on behalf of your clients, provide any basis for terminating the Agreement at any time before December 31, 2012. As you know, it is Consist's view that the Agreement has been automatically renewed for an additional 5 year term because of your clients' failure to send proper and timely notice of nonrenewal under the Agreement. We likewise reject any assertion that any putative prior notices were contractually adequate, factually accurate, legally sufficient, timely, or properly served under the Agreement so to provide any basis to terminate the Agreement at all, whether that be sixty days after the date of the Letters, December 31, 2007, December 31, 2012, or any intermediate point.

      Without prejudice to the above, and without conceding the legal validity or factual correctness of any claim in the Letters, you should be aware that a disclosure concerning copyrights and trademarks appears on the "legal" page of Consist's websites in the Territory.

# DuaneMorris

November 2, 2007
Page 2

Please inform us immediately if you do not believe that the website disclosure is sufficient, and, if so, in which specific ways. As to user and technical manuals, Consist reproduces them precisely as Software AG provides them. However, for the sake of completeness, Consist has instructed its affiliates to ensure that a disclosure similar to the attached be included in all marketing and training materials. We note that your clients have had prompt and continuous access to all of Consist's marketing materials, user manuals, public disclosures and websites for years, and that the first and only complaint that your clients have ever raised concerning the adequacy of Consist's disclosures as required by the Agreement is that set forth in the Letters.

With respect to the assertions of your Letters concerning protection of your clients' copyright and trademarks, we further observe that your clients have taken absolutely no steps over the life of the relationship with Consist until recently (if at all) to protect their own marks or intellectual property in the Territory and that the Agreement imposes no obligation for Consist to do so on behalf of your clients. With respect to the assertions of your October 10 Letter, we took steps in Brazil that your clients did not themselves take. In all events, your client was contemporaneously informed of Consist's actions.

The October 9 Letter claims that Consist has failed to make all reasonable efforts to market the SYSTEMS in the Territory as required by Par. 5(B) of the Agreement, specifically claiming in supposed support that there are few, if any, Consist customers for Software AG products in Chile, Bolivia, Paraguay, Uruguay and Peru. We note that this claim no longer asserts any failure to market in Argentina, as had Mr. Streibich's July 4, 2006 e-mail to Natalio Fridman, and that neither the Letter nor the e-mail ever complained about Consist's performance in Brazil. Consist has already responded to the assertion of failure to market, and incorporates its previous response herein. Please provide Consist with any and all evidence to support Software AG's claim that Consist has failed to market the SYSTEMS in the Territory.

The October 9 Letter claims that Consist has failed to make all reasonable efforts to market Special Products in the Territory. As your clients know, the two Special Products identified in Annex B to the Agreement were discontinued long ago. Consist first found out that Software AG had any further Special Products on May 10, 2006. Until that time, Software AG had made no effort to inform Consist about the availability of any Special Products or anything else about them. After a request to Mr. Christian Barrios on May 11, 2006 by Consist went unanswered, Consist made a follow-up request for Special Product information to Mr. Streibich on July 19,2006. Software AG finally forwarded incomplete information concerning Special Products, as well as the required form for reporting any sales of such Special Products, on August 17, 2006. Consist requested complete information on August 28, 2006. The requested complete information was finally mailed to Consist on September 28, 2006. We further note that Consist has requested an updated Special Products list and associated product documents as recently as October 19, 2007, but that the requested information has not yet been provided. We understand that the request is now in your hands. Consist urgently requests an updated product list, including Special Products, particularly in view of Software AG's recent acquisition of Webmethods and integration of Webmethods' products into Software AG's product offerings.

# DuaneMorris

November 2, 2007
Page 3

In response to Paragraph 4 of the October 9 Letter, Consist states that, to its knowledge, it has made no sales of Special Products and therefore no Quarterly Report is due. If you are aware of any information to the contrary, please let us know immediately.

In response to Paragraph 5 of the October 9 Letter, Consist states that it is unaware of any claim by any customer that it has failed to provide adequate technical support. In response to the specific claim raised, Consist states that HP is not a Consist customer in the Territory and that it is unaware of any instance of any complaint by HP concerning technical support or otherwise. Please provide us with any further details concerning this claim and any other purported failure to provide the technical support that your clients are relying on in support of this assertion.

We likewise note that your October 9 Letter purports to revoke any prior authorizations that your clients gave to Consist to sell Attunity. Having already granted the right to sell this product to Consist, we are unaware of any authority under the Agreement for your clients to revoke such authorization. Nevertheless, for the avoidance of doubt and conflict, Consist has instructed its affiliates to immediately stop all marketing of Attunity in the Territory until further agreement by Software AG. Consist does not market or sell any other products in the Territory that are even arguably competitive with those of Software AG.

In short, the Letters are ineffectual for any purpose under the Agreement, are untimely, incorrectly served, factually and legally unsound and were sent as a further pretext to seek to justify your clients' efforts to improperly terminate the Agreement and take over Consist's highly successful marketing efforts over the past 35 years.

Very truly yours,

Hyman Schaffer / BD

Hyman L. Schaffer

Attachment
cc: Natalio S. Fridman

DM1\1211070.1

## ATTACHMENT

### DISCLOSURE ON CONSIST'S WEBSITE FOR SPANISH SPEAKING COUNTRIES.

### (A PORTUGUESE VERSION EXISTS AS WELL).

021/033

CONSIST - Business Information Technology







Home / Avisos Legales

# Avisos Legales

| Datos Legales

## Datos Legales

**COPYRIGHT NOTICE:** Copyright (c) 1998-2007 Consist Software Solutions, Inc., formerly known as Consist International, Inc., and/or its licensors, including Software AG, and Software AG Inc., formerly known as Software AG Americas, Inc. All rights reserved.

**DERECHOS RESERVADOS:** Derechos Reservados (R) 1998-2007 Consist Software Solutions, Inc., anteriormente conocida como Consist International, Inc., y/o sus licenciadores, incluyendo a Software AG y Software AG Inc., anteriormente conocida como Software AG Americas, Inc. Todos los derechos reservados.

**TRADEMARKS:** The trademarks, logos, service marks and trade names identifying or used in connection with CONSIST's business appearing on this website whether or not registered are the sole property of Consist Software Solutions, Inc. and/or its licensors, including Software AG and Software AG Inc., formerly known as Software AG Americas, Inc. Nothing contained in this website should be construed as granting any license or right to use any of the same without the express written permission of CONSIST. Any rights not expressly granted herein are reserved. CONSIST includes Consist Software Solutions, Inc. and/or its affiliates.

**MARCAS REGISTRADAS:** Las marcas registradas, logos, marcas de servicios y nombres identificatorios o usados en conexión con negocios de CONSIST que aparecen en este website estén o no registrados, son propiedad exclusiva de Consist Software Solutions, Inc. y/o sus licenciadores, incluyendo Software AG y Software AG Inc., anteriormente conocida como Software AG Americas, Inc. Ningún contenido de este website podrá ser interpretado como concesión de cualquier licencia o derecho de uso de cualquiera de los mismos sin el permiso expreso y escrito de CONSIST. Cualquier derecho no concedido expresamente aquí es reservado. CONSIST incluye Consist Software Solutions, Inc. y/o sus afiliados.

Los web sites de CONSIST tienen hipertinks para web sites de terceros. Al incluir estos hiperlinks, CONSIST tiene tan sólo el objetivo de facilitar el acceso a informaciones; en la cabe alguna responsabilidad sobre los contenidos de estos web sites o de otros web sites / bulletins boards anexados a ellos. Por no ejercer ningún control sobre las informaciones y opiniones expresadas en estos foros, cuya exclusiva responsabilidad cabe a sus respectivos autores, CONSIST se exime de cualquier responsabilidad civil o criminal relativa al contenido de las mismas.

Buscar

Seleccione un País
Sitios Internacionales

Consist
Servicios
Soluciones y Servicios
Press Room
Sobre la Consist

Consist será Sponsor de la Próxima Edición de Usuaria 2007 - "Construyendo la Agenda Digital para una Argentina Competitiva"

CONSIST HB en



# EXHIBIT E

BAKER & MCKENZIE

Baker & McKenzie LLP
1114 Avenue of the Americas
New York, New York 10036, USA

Tel: +1 212 626 4100
Fax: +1 212 310 1600
www.bakernet.com

Asia
Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe &
Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South
America
Bogota
Brasilia
Buenos Aires
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

November 6, 2007

Hyman L. Schaffer, Esq.
Duane Morris LLP
1540 Broadway
New York NY 10036

James David Jacobs
Tel: +1 212 891 3951
James.D.Jacobs@bakernet.com

Via Email
HL.Schaffer@duanemorris.com

RE:    Consist v. Software AG

Dear Hyman:

We respond in part to your letter of November 2 regarding Software AG's detailed notices to Consist of its breaches of the Agreement as outlined in our default letters of October 9 and 10.

Since we are currently actively litigating the issues that your letter raises, your letter is inappropriate. Your factual assertions are partisan posturing and, in at least one case, directly contradicted by Mr Fridman's deposition testimony yesterday. The Court has set these factual issues for trial and thus they are not suitable for debate by letter. Your requests for documents and other evidence are also improper; they should be embedded in document requests and other discovery mechanisms in order that they are subject to established rules and future objections and rulings.

Nevertheless, we are currently reviewing your letter with our clients and will respond further if appropriate.

Regards,

James David Jacobs

# EXHIBIT F

James David Jacobs
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036-7703
Tel: (212) 626-4100
FAX: (212) 310-1600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSIST SOFTWARE SOLUTIONS, INC. f/k/a CONSIST INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>SOFTWARE AG, INC. and SOFTWARE AG,<br><br>Defendants. | Case No. 07-cv-7047 (CM)(FM)<br><br>DEFENDANTS SOFTWARE AG, INC. AND SOFTWARE AG'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION |

Pursuant to the Court's Scheduling Order dated September 26, 2007, Defendants

Software AG, Inc. and Software AG serve this their Second Request for Production of

Documents, Electronically-Stored Information and Things pursuant to Fed. R. Civ. P. 34, and

request that Plaintiffs produce the following documents no later than five days after service at the

offices of Baker & McKenzie LLP, 1114 Avenue of the Americas, New York, NY 10036, attn:

John Basinger.

## DEFINITIONS

The following definitions apply to each of the requests for documents set forth below and

are deemed to be incorporated in each of those requests.

(a)    **Local Rule 26.3**.  All terms defined in Local Rule 26.3 (c) are defined as

set forth therein.

(b)    "AGREEMENT" means the Distributorship Agreement between Software AG Americas, Inc. and Consist International, Inc. dated September 9, 1997 and effective January 1, 1998.

(c)    "COMPLAINT" means the Complaint filed by Consist Software Solutions, Inc. f/k/a Consist International, Inc. in the Supreme Court of the State of New York, County of New York, Index No. 602644/2007.

(d)    "CONSIST" or "YOU" means Consist Software Solutions, Inc., f/k/a Consist International, Inc. and its affiliate companies, including owners, directors, officers, employees, and agents.

(e)    "SOFTWARE AG" means and includes Software AG, Software AG, Inc. and their affiliates.

(f)    Terms defined in the AGREEMENT and capitalized in these requests (e.g. SPECIAL PRODUCTS) are given the meanings as defined in the AGREEMENT.

## INSTRUCTIONS

1.    **Organization**. In producing documents pursuant to this request, please produce them as they are kept in the ordinary course of business or organize and label them to correspond with the categories in the request, pursuant to Fed. R. Civ. P. 34(b).

2.    **Complete Documents**. All documents shall be produced in the form in which they are maintained. A request for a document shall be deemed to include transmittal sheets, cover letters, exhibits, enclosures or attachments to the document in addition to the document itself.

3.    **Electronically Stored Information; Form**. Electronically stored information ("ESI") shall be produced in native format.

4.    **Partial Response and Production**.    When a full and complete response to a

particular request is not possible, production should be made to the extent possible and a

statement should be made indicating why only a partial production is given and what must occur

before a complete production may be given.

## REQUESTS FOR DOCUMENTS

1.    CONSIST's complete annual financial statements including footnotes (audited if

available) for 2002 to present.

2.    CONSIST's General Ledger Trial Balances Supporting the Financial Statements

for 2002 to present.

3.    CONSIST's Monthly Financial Statements and Trial Balances for the current

fiscal year.

4.    CONSIST's Sales Journal Summaries or Reports which detail revenue by

Customer and Product, and support the revenue reflected in the financial statements for 2002 to

present.

5.    CONSIST's Cost of Sales by Customer, Product and Maintenance Activity which

support the cost reflected in the Financial Statements for 2002 to present.

6.    CONSIST's Annual Budgets and Forecasts of Revenues and Costs and Cash Flow

for 2002 to present.

7.    CONSIST's Monthly Budgets and Forecasts of Revenues and Costs and Cash

Flow for the current fiscal year.

8.    All of CONSIST'S customer agreements for development, licensing, installing,

technical assistance, training, maintenance and support in the Territory.

9.     All source code developed by or for CONSIST that has been developed to access Adabas, including but not limited to, internal source code comments and any documentation that describes the implementation or functionality of the source code.

10.     All source code developed by or for CONSIST that calls Adabas or an interface to Adabas, including but not limited to direct calls to Adabas or indirect calls to Adabas via a wrapper or otherwise.

11.     All DOCUMENTS CONCERNING the interfacing between a CONSIST product and Adabas, including but not limited to proposed Consist products and Consist products under development.

12.     All DOCUMENTS CONCERNING translating an application written in Natural to an application in another programming language.

13.     All DOCUMENTS CONCERNING the use of an application written in a programming language other than Natural to access Adabas.

14.     All DOCUMENTS CONCERNING the use of an application written in Natural to access a database other than Adabas.

15.     All DOCUMENTS CONCERNING the installation, maintenance or support of Adabas or a Consist product that can access Adabas, including but not limited to documents created by or for CONSIST, by or for a past, current or prospective customer of CONSIST or by or for a third party.

16.     All DOCUMENTS CONCERNING the hardware or hardware systems used by Consist customers for operating Adabas or a Consist product that can access Adabas, including but not limited to servers, processors, central processing systems, random access memory, storage mediums and operating systems.

\

17.    All DOCUMENTS CONCERNING switching a past, current or prospective customer relying upon or using Adabas to another database, including:

       a.  preparations for switching;

       b.  feasibility of switching;

       c.  the process of switching;

       d.  the economics of switching;

       e.  operational or other implications of switching;

       f.  customers' experiences with and comments on switching.

18.    All DOCUMENTS CONCERNING data management systems other than Adabas employed or considered being employed at a customer location of a past, current or prospective customer of CONSIST.

19.    All DOCUMENTS CONCERNING a request for service of a CONSIST product that accesses, requires, uses or incorporates a SOFTWARE AG product from a past or current customer of CONSIST.

20.    All DOCUMENTS CONCERNING CONSIST's actions taken in response to the letters dated 30 March 2006 and 6 April 2006, attached as exhibits 3 and 4 to the COMPLAINT, including without limitation:

       a.  Efforts by CONSIST to secure agreements to allow it to distribute software that is competitive with the SYSTEMS, or any aspect, part or component of the SYSTEMS;

       b.  Efforts by CONSIST to convert existing CONSIST customers to systems based on software developed, licensed or sold by entities other than SOFTWARE AG;

c. Efforts to cause existing, new or prospective customers to engage CONSIST to provide software that is competitive with the SYSTEMS, or any aspect, part or component of the SYSTEMS.

21. All Agreements or other DOCUMENTS that permit CONSIST to sell, license or develop software that is competitive with the SYSTEMS, or any aspect, part or component of the SYSTEMS.

22. All DOCUMENTS CONCERNING requests for technical assistance from HP.

23. All DOCUMENTS CONCERNING termination of maintenance or limited licensed agreements with customers of SOFTWARE AG products.

Dated: New York, New York
October 10, 2007                          BAKER & McKENZIE LLP


                                   By:    /s James David Jacobs
                                          James David Jacobs
                                          1114 Avenue of the Americas
                                          New York, New York 10036
                                          (212) 626-4100

                                          Attorneys for Defendants
                                          Software AG, Inc. and Software AG

James David Jacobs
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York 10036-7703
Tel: (212) 626-4100
FAX: (212) 310-1600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSIST SOFTWARE SOLUTIONS, INC. f/k/a CONSIST INTERNATIONAL, INC., | Case No. 07-cv-7047 (CM)(FM) |
| Plaintiff, | |
| -against- | |
| SOFTWARE AG, INC. and SOFTWARE AG, | DEFENDANTS SOFTWARE AG, INC. AND SOFTWARE AG'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION |
| Defendants. | |

Pursuant to the Court's Scheduling Order dated September 26, 2007, Defendants

Software AG, Inc. and Software AG serve this their Second Request for Production of

Documents, Electronically-Stored Information and Things pursuant to Fed. R. Civ. P. 34, and

request that Plaintiffs produce the following documents no later than five days after service at the

offices of Baker & McKenzie LLP, 1114 Avenue of the Americas, New York, NY 10036, attn:

John Basinger.

## DEFINITIONS

The following definitions apply to each of the requests for documents set forth below and

are deemed to be incorporated in each of those requests.

      (a)   **Local Rule 26.3**. All terms defined in Local Rule 26.3 (c) are defined as

set forth therein.

     (b)     "AGREEMENT" means the Distributorship Agreement between Software AG Americas, Inc. and Consist International, Inc. dated September 9, 1997 and effective January 1, 1998.

     (c)     "COMPLAINT" means the Complaint filed by Consist Software Solutions, Inc. f/k/a Consist International, Inc. in the Supreme Court of the State of New York, County of New York, Index No. 602644/2007.

     (d)     "CONSIST" or "YOU" means Consist Software Solutions, Inc., f/k/a Consist International, Inc. and its affiliate companies, including owners, directors, officers, employees, and agents.

     (e)     "SOFTWARE AG" means and includes Software AG, Software AG, Inc. and their affiliates.

     (f)     Terms defined in the AGREEMENT and capitalized in these requests (e.g. SPECIAL PRODUCTS) are given the meanings as defined in the AGREEMENT.

## INSTRUCTIONS

1.     **Organization**. In producing documents pursuant to this request, please produce them as they are kept in the ordinary course of business or organize and label them to correspond with the categories in the request, pursuant to Fed. R. Civ. P. 34(b).

2.     **Complete Documents**. All documents shall be produced in the form in which they are maintained. A request for a document shall be deemed to include transmittal sheets, cover letters, exhibits, enclosures or attachments to the document in addition to the document itself.

3.     **Electronically Stored Information; Form**. Electronically stored information ("ESI") shall be produced in native format.

4.    **Partial Response and Production**.  When a full and complete response to a particular request is not possible, production should be made to the extent possible and a statement should be made indicating why only a partial production is given and what must occur before a complete production may be given.

## REQUESTS FOR DOCUMENTS

1.    All tax returns or other tax filings filed by CONSIST (specifically including all affiliates either located or operating in the TERRITORY) from 2002 to present.  This request includes tax returns and filings filed in the United States and in any other country in which CONSIST operates or is required to file tax returns or other tax filings.

Dated: New York, New York
          October 18, 2007                          BAKER & McKENZIE LLP


                                                    By:___ /s James David Jacobs___
                                                          James David Jacobs
                                                          1114 Avenue of the Americas
                                                          New York, New York 10036
                                                          (212) 626-4100

                                                          Attorneys for Defendants
                                                          Software AG, Inc. and Software AG

# DuaneMorris·

**DUANE MORRIS LLP**
**1540 BROADWAY**
NEW YORK, NY 10036-4086
PHONE: 212.692.1000
FAX: 212.692.1020

# FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** | Hon. Colleen McMahon |
| **FIRM/COMPANY:** | U.S. District Court - S.D.N.Y. |
| **FACSIMILE NUMBER:** | 212.805.6326 |
| **CONFIRMATION TELEPHONE:** | 212.805.6325 |
| **FROM:** | Hyman L. Schaffer |
| **DIRECT DIAL:** | 212.692.1078 |
| **DATE:** | November 27, 2007 |
| **USER NUMBER:** | |
| **FILE NUMBER:** | Y2501/00001 |
| **TOTAL # OF PAGES:** (INCLUDING COVERSHEET) | 34 |
| **MESSAGE:** | Please see attached. Thank you. |

**NOTE:** Original will not follow

CONFIDENTIALITY NOTICE

THIS FACSIMILE TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS INTENDED ONLY FOR THE REVIEW OF THE PARTY TO WHOM IT IS ADDRESSED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY TELEPHONE THE SENDER ABOVE TO ARRANGE FOR ITS RETURN, AND IT SHALL NOT CONSTITUTE WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE.

If there is a problem with this transmission, please call us as soon as possible at 212.692.1000.