DUANE MORRIS LLP
Hyman L. Schaffer
Fran M. Jacobs
Brian Damiano
1540 Broadway
New York, New York 10036
(212) 692-1000
*Attorneys for Plaintiff Consist Software Solutions, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CONSIST SOFTWARE SOLUTIONS, INC.,            :
f/k/a CONSIST INTERNATIONAL, INC.,           :
                                             :   07 CV 7047 (CM) (FM)
                          Plaintiff,         :
        -against-                            :
                                             :
SOFTWARE AG, INC. and SOFTWARE AG,           :
                                             :
                          Defendants.        :
-----------------------------------------------------------------x

PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION IN LIMINE TO PRECLUDE
<u>TESTIMONY BY DEFENDANTS' EXPERT WITNESS</u>

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000
*Attorneys for Plaintiff
Consist Software Solutions, Inc.*

## **TABLE OF CONTENTS**

Page

Preliminary Statement ............................................................................................................. 1

POINT I
THE APPLICABLE STANDARD ........................................................................................... 2

POINT II
MACSWAIN'S TESTIMONY SHOULD BE
EXCLUDED UNDER THE APPLICABLE STANDARD ...................................................... 3

    A.    Opinion About Standard Industry Practices in Software Distribution
           Agreements .............................................................................................................. 4

    B.    Opinion About the Market for Special Products from 1998 until Present ............... 7

    C.    Opinion About Whether Attunity Connect Competes With SAGA's
           Products .................................................................................................................... 8

    D.    Opinion About Brand Confusion in Territory ......................................................... 8

    E.    Opinion About Life after the Distribution Agreement ......................................... 10

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

Amorgianos v. Nat'l R.R. Passenger Corp.,
   303 F.3d 256 (2d Cir. 2002)..................................................................................2,3

Boucher v. U.S. Suzuki Motor Corp.,
   73 F.3d 18 (2d Cir. 1996) ......................................................................................10

Daubert v. Merrill Dow Pharmaceuticals, Inc.,
   509 U.S. 579 (1993)............................................................................................2,3,5

Gen. Elec. Co. v. Joiner,
   522 U.S. 136 (1997) ..............................................................................................10

Giles v. Rhodes,
   2000 U.S. Dist. LEXIS 13980 (S.D.N.Y. Sept. 27, 2000)......................................5

GST Telecomms., Inc. v. Irwin,
   192 F.R.D. 109 (S.D.N.Y. 2000) ............................................................................6

Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, N.V.,
   14 F. Supp. 2d 391 (S.D.N.Y. 1998).......................................................................6

Kumho Tire Co. v. Carmichael,
   526 U.S. 137 (1999).............................................................................................2,3

Lippe v. Bairnco Corp.,
   288 B.R. 678 ................................................................................................. 5-7, 10

Merriam-Webster, Inc. v. Random House, Inc.,
   35 F.3d 65 (2d Cir. 1994) .......................................................................................5

Mowry v. Viacom Int'l, Inc.,
   2005 U.S. Dist. LEXIS 15189 (S.D.N.Y. July 29, 2005) .......................................5

Nora Bevs. v. Perrier Group of Am.,
   269 F.3d 114 (2d Cir. 2001)....................................................................................8

Point Prods. A.G. v. Sony Music Entm't, Inc.,
   2004 U.S. Dist. LEXIS 2676 (S.D.N.Y. Feb. 23, 2004).........................................5

Prohaska v. Sofamor, S.N.C.,
   138 F. Supp. 2d 422 (S.D.N.Y. 2001).....................................................................3

Taylor v. Evans,
   1997 U.S. Dist. LEXIS 3907 (S.D.N.Y. Apr. 1, 1997) ..........................................6

Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.,
   964 F. Supp. 733 (S.D.N.Y. 1997) .........................................................................8

Turrentine v. Bell Can.,
    1999 U.S. App. LEXIS 7765 (2d Cir. 1999) ...................................................................5

United States v. Duncan,
    42 F.3d 97 (2d Cir. 1994) .................................................................................................6

United States v. Richter,
    826 F.2d 206 (2d Cir. 1987) .............................................................................................6

United States v. Scop,
    846 F.2d 135 (2d Cir. 1988) .............................................................................................6


**Statutes**

Federal Rule of Civil Procedure 26(a)(2) ...........................................................................1

Federal Rule of Civil Procedure 37 .....................................................................................1

Federal Rule of Evidence 402 .............................................................................................1

Federal Rule of Evidence 403 .............................................................................................1

Federal Rule of Evidence 702 ................................................................................1,2,3,5,6

Preliminary Statement

Plaintiff Consist Software Solutions, Inc. f/k/a Consist International, Inc. ("Consist") submits this memorandum of law in support of its motion in limine, pursuant to Rules 403, 702 and 703 of the Federal Rules of Evidence, Rules 26(a)(2) and 37 of the Federal Rules of Civil Procedure, and the Individual Practices of this Court for an order precluding testimony by David A. MacSwain ("MacSwain"), the expert witness identified by defendants Software AG, Inc. f/k/a Software AG Americas, Inc. ("SAGA") and its parent entity, Software AG ("SAG"). ("SAGA and SAG are together referred to as "Defendants.").[1]

In the Scheduling Order issued on September 26, 2007, this Court held:

> The request for injunctive relief hangs entirely on how the contract is construed. I certainly do not need an expert to explain how to construe this contract (indeed, I would decline to take testimony from an expert on this issue).

The Court also ruled in the Scheduling Order that, because it was "puzzled about the need for expert testimony on the issue of injunctive relief," "[a]ny party who wants to designate an expert will have to explain to the court, in a letter, the subject about which the expert would testify." Defendants thereafter claimed that expert testimony was needed on the issue of irreparable injury. Based on this claim, the Court found on October 4, 2007 that "[i]t may well be, as defendants suggest, that expert testimony will be necessary on this issue [irreparable harm]." (See Memorandum Order Denying Request for Reconsideration and Responding to Suggestion that Discovery Cannot Be Completed in Time for a December 12, 2007 Trial on the Merits.) Consist subsequently withdrew certain of its claims. (See Stipulation and Order Regarding Bench Conduct of December 12, 2007 Bench Trial, dated October 31, 2007.) As a

---

[1] The report submitted by MacSwain is annexed to the accompanying declaration of Hyman L. Schaffer (the "Schaffer Decl.") as Exhibit A.

1

result, the issue of irreparable injury is no longer in the case, and the sole subject about which Defendants claimed expert testimony was needed has been eliminated.

Even though the issue of irreparable injury has been removed, Defendants are still seeking to present expert testimony. Now, however, Defendants are not offering MacSwain's testimony about irreparable injury. Instead, MacSwain has been designated to testify about issues that are within the exclusive province of the Court, no longer in the case, or concern matters about which MacSwain is not competent to opine. For this reason, as we explain more fully below, MacSwain's testimony should be excluded under the principles articulated in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

POINT I

THE APPLICABLE STANDARD

Rule 702 of the Federal Rules of Evidence provides that

> If testimony, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial court has a "gatekeeping" function under Rule 702: "it 'is charged with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) quoting Daubert, supra, 509 U.S. at 588; accord, Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 152 (1999). In Amorgianos, the Second Circuit described the court's gatekeeping role as follows (303 F.3d at 265-266):

> In fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, i.e., whether it "'has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Campbell, 239 F.3d at 184* (quoting *Fed. R. Evid. 401*) (alteration in original). Next, the district court must determine "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered." Id. (quoting *Daubert, 509 U.S. at 597*). In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony "is the product of reliable principles and methods"; and (3) that "the witness has applied the principles and methods reliably to the facts of the case." *Fed. R. Evid. 702*. In short, the district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire, 526 U.S. at 152*.

The trial court also has the function of determining whether the expert is qualified "by knowledge, skill, experience, training, or education," to give the opinions being offered. Fed.R.Ev. 702. "Although Federal Rule of Evidence 702 does provide a liberal and flexible approach to admissibility of expert testimony, the expert must still 'be reasonably confined to his area of expertise." Prohaska v. Sofamor, S.N.C., 138 F. Supp. 2d 422, 435 (S.D.N.Y. 2001).

As demonstrated below, under these standards, the testimony of Defendants' expert should be excluded.

POINT II

MACSWAIN'S TESTIMONY SHOULD BE
EXCLUDED UNDER THE APPLICABLE STANDARD

MacSwain's report expresses opinions concerning five issues: "(1) standard industry practices in software distribution agreements; (2) the market for Special Products throughout the Territory from 1998 until present; (3) whether Attunity Connect is competitive to SAGA's products; (4) brand confusion in the Territory; and (5) life after the Distribution Agreement for

3

SAGA and Consist." (See Ex. A to the Declaration of Hyman L. Schaffer dated December 7, 2007 (the "Schaffer Decl.") p. 1.) Defendants have abandoned issues 3 and 4; issue 5 has no apparent relevance to this case; issue 1 is not appropriate for expert testimony; and, with respect to issue 2, MacSwain's report fails to provide a sufficiently "reliable foundation" as required by Daubert to be considered.

A.  Opinion About Standard Industry Practices in Software Distribution Agreements

As a pretext for offering his construction of the terms of the Distributorship Agreement dated January 1, 1998 between Consist and SAGA (the "Agreement"), MacSwain's report provides a general overview of the database industry, discussing arcane aspects of "packaged application" and "integration software." (Ex. A to Schaffer Decl. at pp. 3, 4.) The report also includes a discussion of what MacSwain claims to be standard industry terms such as "best efforts," and concludes that "[i]t is customary in the industry that an exclusive distributor must use its best efforts to distribute that database technology through the entire territory" (Id. at p. 7) – even though the Agreement was not a standardized contract and does not even use the term "best efforts," and even though the basis for MacSwain's sweeping opinion is not evident from either his own experience or any of the sources identified in his report.

Nothing in MacSwain's background qualifies him to render an opinion about the meaning of non-technical terms used in a non-standard contract.

The Agreement was a custom-made agreement, drafted by SAGA following negotiations with Consist. It required that Consist use "reasonable efforts" – not "best efforts." Thus, MacSwain's views about the meaning of "best efforts" is irrelevant, and the Agreement does not use other specialized terms that might arguably require expert testimony, nor is there any indication that the provisions in the Agreement that MacSwain purports to explain have any standardized meaning. MacSwain himself does not appear to have any "specialized knowledge"

4

that would prove helpful or useful in understanding the Agreement. The Court is perfectly competent to determine the meaning of the Agreement without assistance of Defendants' "expert."

"Expert testimony is admissible under Fed. R. Evid. 702 <u>only when</u> it is both <u>relevant</u> and reliable." <u>Turrentine</u> v. <u>Bell Can.</u>, 1999 U.S. App. LEXIS 7765, at * 3 (2d Cir. 1999) (emphasis added). "[T]o be reliable, expert testimony <u>must be based on sufficient facts or data</u> . . . . The trial court's gatekeeping function <u>requires more than simply taking the expert's word for it</u>." <u>Lippe</u> v. <u>Bairnco Corp.</u>, 288 B.R. 678, 686 (internal citations and quotations omitted) (emphases added). "An irrelevant expert report, like any irrelevant testimony, is not admissible." <u>Giles</u> v. <u>Rhodes</u>, 2000 U.S. Dist. LEXIS 13980, at **12-13 (S.D.N.Y. Sept. 27, 2000). "The expert witness's testimony must also be helpful and thus assist the trier of fact to understand the evidence or to determine a fact in issue. As the Court has explained, this requirement relates primarily to relevance or fit between the expert testimony and the evidence or fact that is in issue." <u>Point Prods. A.G.</u> v. <u>Sony Music Entm't, Inc.</u>, 2004 U.S. Dist. LEXIS 2676, **10-11 (S.D.N.Y. Feb. 23, 2004) citing <u>Daubert</u>, 509 U.S. at 591 (quotations omitted)). "Rule 702 requires that the 'specialized knowledge' of the expert must be such as to 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" <u>Mowry</u> v. <u>Viacom Int'l, Inc.</u>, 2005 U.S. Dist. LEXIS 15189, at *47 (S.D.N.Y. July 29, 2005) (citing rule).

None of the bases for admission of expert testimony exists. Whatever MacSwain may know about program language and packaged applications, it is not relevant or helpful to the interpretation of the Agreement or Consist's alleged breaches of the Agreement. Moreover, MacSwain's testimony usurps the Court's function. MacSwain's report concludes that "it is unlikely SAGA, a sophisticated database vendor would choose to enter into a perpetual

5

agreement . . .; 12 month notice period is more typical for an enterprise software distributorship; and 18 month period is a very generous time period. This long exit period leads me to conclude that the parties contemplated ceasing the relationship at some point." (Ex. A to Schaffer Decl. at p. 6.) When expert testimony was offered to show the purpose of certain transactions in Lippe, supra, the court would not allow it, explaining (288 B.R. at 687):

> Expert testimony is not relevant if the expert is offering a personal evaluation of the testimony and credibility of others or the motivations of the parties. See *United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1988)*, rev'd in part on other grounds, *856 F.2d 5 (2d Cir. 1988)* (citing *United States v. Richter, 826 F.2d 206, 208 (2d Cir. 1987))*; *Lumpkin, 192 F.3d at 289* ("Fundamental to the role of juror as trier of fact is the task of assessing witness credibility."); *United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)*; *GST Telecomms., Inc. v. Irwin, 192 F.R.D. 109, 110 - 11 (S.D.N.Y. 2000)* ("<u>It would be inappropriate to consider the experts' personal assessments of the credibility of the situations involved, the sufficiency of the measures utilized in considering the business plans being pursued, . . . and the impact of self-interested conduct and the significance thereof.</u>"); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group, N.V., 14 F. Supp. 2d 391 (S.D.N.Y. 1998)* (granting motion to preclude expert testimony of law professor who sought to opine that party had acted reasonably and in good faith, holding that these were questions for the jury); *Taylor v. Evans, No. 94 Civ. 8425 (CSH), 1997 U.S. Dist. LEXIS 3907, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997)* ("<u>Musings as to defendants' motivations would not be admissible if given by any witness -- lay or expert.</u>").

(Emphases added.)

For the same reasons, MacSwain's views about what the parties may or may not have intended and contemplated are outside the scope of permissible testimony. Indeed, as previously noted, this Court held in its September 26, 2007 Scheduling Order that "I certainly do not need an expert to explain how to construe this contract (indeed I would decline to take testimony from an expert on this issue)."

B.  Opinion About the Market for Special Products from 1998 until Present

MacSwain's report contains some bald assertions about the market for Special Products in the seven South American countries (Argentina, Bolivia, Brazil, Chile, Paraguay, Peru and Uruguay) which together comprise the "Territory" defined in the Agreement. These assertions are unsubstantiated by market studies, reports, or research. MacSwain's opinions thus appear to be based on his own anecdotal experiences as a former SAG employee. For example, MacSwain states at p. 7 of his report:

> My sales and marketing expertise extends inside and outside the territory. As former VP of worldwide products marketing at Software AG I was aware and responsible to global marketing requirements and routinely rolled out products, including Special Products, throughout the world, including the very same countries in Consist's Territory.

(Ex. A to Schaffer Decl.)

In Lippe, supra, the court held that "to be reliable, expert testimony must be based on sufficient facts or data . . . . The trial court's gatekeeping function requires more than simply taking the expert's word for it." Id., 288 B.R. 678, 686 (internal citations and quotations omitted) (emphases added). The court went on to conclude that "an expert basing his opinion solely on experience must do more than aver conclusorily that his experience led to his opinion, and he must do more than 'propound a particular interpretation of [a party's] conduct. Rather, an expert who is relying solely . . . on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Ibid. (internal citations and quotation omitted).

Here, MacSwain's conclusory assertions are based on insufficient evidence. He provides no statistical data, reports, or market research. MacSwain effectively asks the Court to take his word that "there would be with appropriate marketing and promotion, a reasonable demand for at

7

least some of these Special Products throughout the Territory since 1998." (Ex. A to Schaffer Decl. p. 8.) His unsubstantiated personal opinion has no value.

C.  Opinion About Whether Attunity Connect Competes With SAGA's Products

MacSwain asserts in his report that "there are various kinds of third party products that compete with SAGA Products and Special Products. One such product is Attunity Connect." (Ex. A to Schaffer Decl. p. 8.) On December 4, 2007, defendants notified Consist that they would not pursue this argument at trial. (See e-mail from James Jacobs to Hyman Schaffer, a copy of which is annexed as Ex. B to the Schaffer Decl.) MacSwain's testimony about the competitive relationship between the products therefore is not relevant to any issues now before the Court and should be excluded.

D.  Opinion About Brand Confusion in Territory

MacSwain's report concludes that "[t]he Natural/Adabas brands are internationally known, in my experience however, the source of these brands is a matter of confusion in the Territory." (Schaffer Decl. p. 8.) The issue of brand confusion is no longer before the Court. (See Ex. B to Schaffer Decl.) As such, testimony regarding brand confusion in the Territory is not relevant to the case and should be excluded.

In any event, "[t]he lack of survey evidence counts against finding actual confusion." Nora Bevs. v. Perrier Group of Am., 269 F.3d 114, 124 (2d Cir. 2001) (citing Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 71-72 (2d Cir. 1994)); Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp., 964 F. Supp. 733, 747 (S.D.N.Y. 1997) ("The plaintiff's total failure to introduce any of its own survey evidence also weighs against finding actual confusion.") (Emphasis added).

MacSwain cites no support for his nebulous assertion that "confusion" exists in the Territory. As the basis for his opinion, MacSwain states:

8

> I have been privy to numerous reports from Consists customers in Brazil that they were unaware that Natural/Adabas is a Software AG brand. I have also conducted an Internet search and reviewed a number of public Consist documents which do not contain any reference to Software AG being the brand owner of Natural/Adabas.

(See Ex. A to Schaffer Decl. p. 8.)

No such reports from customers have been produced; the customers who made these supposed reports are not identified; and MacSwain failed to conduct surveys or market reports to support his conclusion that product confusion exists in the Territory. MacSwain's anecdotal evidence based on unspecified reports – without more – is insufficient to establish confusion. Indeed, as the following excerpt from MacSwain's deposition testimony makes clear, when asked to identify any customers who were confused, MacSwain could not name a single customer:

> Q.   Can you name every customer you can remember who did not know that Natural/Adabas was a Software AG product?
>
> A.   No, I can't.
>
> Q.   Can you name any single one?
>
> A.   No, not off the top of my head.

(See Ex. C to Schaffer Decl.)

Accordingly, if the issue of confusion were still before the Court (and it is not) MacSwain's testimony about confusion would have to be excluded.

9

E.  Opinion About Life after the Distribution Agreement

The last opinion MacSwain expresses is that, "[i]f the Consist relationship with Software AG ends, Consist can continue developing, selling/licensing and serving all its own software applications . . . ." (Ex. A to Schaffer Decl. at p. 9.) To the extent that this opinion bears on anything, it apparently related to Consist's' irreparable harm claim, which is no longer before the Court. Therefore, any testimony about the impact of the Agreement's termination on the parties is irrelevant and should be excluded.

Even if MacSwain's opinion were relevant to any issue before the Court, it would be inadmissible because "expert testimony should be excluded if it is 'speculative or conjectural.'" Lippe, supra, 288 B.R. at 686, quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). "An expert opinion is inadmissible if it 'is connected to existing data only by the *ipse dixit* of the expert,' for a 'court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" Ibid. citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997).

On this issue, MacSwain's opinion is nothing more than undisguised guesswork. Thus, MacSwain opines:

> the termination of the distributorship of Software AG's products would have minimal business effect on Consist and may even be beneficial to Consist's future business. Without having to support Software AG's products, Consist would then be able to focus solely on packaged and customized application without the burden of providing direct database and programming language support.

(Ex. A to Schaffer Decl. p. 9.)

This prediction lacks probative value and is not relevant to any issue to be decided by the Court. It should therefore be excluded.

10

## CONCLUSION

For the reasons set forth above, plaintiff's motion in limine should be granted in all respects and MacSwain's testimony should be precluded.

Dated: New York, New York
December 7, 2007

DUANE MORRIS LLP

By:    /s Hyman L. Schaffer
      Hyman L. Schaffer
      Fran M. Jacobs
      Brian Damiano
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
*Attorneys for Plaintiff*
*Consist Software Solutions, Inc.*