# Exhibit A

**softwareag**

11190 Sunrise Valley Drive
Reston, VA 22091

## VIA FACSIMILE

| | |
|---|---|
| Date: | August 25, 1997 |
| To: | Mr. Jay Schafrann    Fax: (212) 702-9686 |
| cc: | |
| FROM: | Neil Rothberg    Phone: (703) 391-6515 |
| | Software AG    Fax: (703) 391-6504 |
| Re: | Distributor Agreement |

Number of pages including cover sheet: [ 14 ]

*This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this Facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Services. Thank you.*

Please call as soon as possible if transmission is not complete: (703) 391-6515.

Dear Mr. Schafrann:

Mr. Fridman asked me to fax you a copy of the proposed Distributor Agreement.

Kind Regards

*[signature: Neil]*

PX 41

CONFIDENTIAL                                                                 CSS-000052

ID:7039916504                HUG 25'97   15:34 No.005 P.02



**Software AG Americas**

11190 Sunrise Valley Drive
Reston, VA 22091

## VIA FACSIMILE

| | | | |
|---|---|---|---|
| TO: | Mr. Natalio Fridman<br>CONSIST - Brazil | Fax: | 55-11-253-4988 |
| FROM: | Jim Daly | Tel: | (703) 391-6757 |
| | | Fax: | (703) 391-6980 |
| DATE: | August 21, 1997 | | |
| SUBJ: | Distributor Agreement | | |

Number of pages including cover sheet: [ 13 ]

This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this Facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Services. Thank you.

Please call as soon as possible if transmission is not complete: (703) 391-6764.



FAXED 8/21/97



Daly
30
11/13/07   85

CSS-000053

CONFIDENTIAL

ID:1003910304    HUG 25'97   15:34 No.005 P.03



SOFTWARE AG
AMERICAS, INC.

11190 Sunrise Valley Drive
Reston, VA 20191-5424
(703) 860-5050
Fax: (703) 391-6975
http://www.sagus.com

August 21, 1997

VIA FACSIMILE TO CONSIST - SAO PAULO, BRAZIL

Mr. Natalio Fridman
CONSIST International, Inc.
10 East 53rd Street
27th Floor
New York, NY 10022

Re: Distributor Agreement

Dear Natalio:

I want to explain some points contained in the attached Agreement since we have been discussing these items on the telephone:

1. The Initial Amount is US $8Million. I know you want US $7Million, but as I mentioned, we can not grant a non-cancelable ten (10) year agreement without compensation. If you must have no less than 10 years, SAGA must start at US $8Million. We are currently negotiating a 7 year Agreement with Japan, and will receive substantial pre-payment of royalties for granting that time period.

2. The Initial Term during which SAGA can not terminate this Agreement is set to ten (10) years with automatic renewal for five (5) years, unless one of us chooses to terminate after 10 years and 18 months notice.

3. As we discussed in New York, we must continue to receive the reports so we can pay our third-party product vendors.

4. The language on competitive products, VARs, and multinationals has remained the same as before. SAGA is granting an exclusive for 10 years and can not have you selling directly competitive products while holding an exclusive from us. If you want to insist on being allowed to sell competitive products, we can make the agreement non-exclusive in the territory.

5. Year 2000 is not included and I have sent you a separate proposal for Y2K in your territory. I understand that three (3) people from CONSIST were at the training in Reston and that they have requested a copy of the tool for demo in Brazil. Obviously, SAG feels that the Year 2000 tool represents a significant revenue opportunity for the next 2 1/2 years.

CSS-000054

CONFIDENTIAL

```
JCFU & OFFICE          ID:7035916504           AUG 25'97   15:35 No.005 P.04
```

Mr. Natalio Fridman
Page 2
August 21, 1997

6. SAGA is ready to execute this deal, so give me your approval and I will send you a signed copy.

Best regards.

*[signature]*

JHD:cs

cc:   Neil Rothberg, SAGA

CONFIDENTIAL

CSS-000055

## DISTRIBUTORSHIP AGREEMENT

THIS AGREEMENT with the effective date of 1st day of January 1998,

between   SOFTWARE AG AMERICAS, INC.
          1190 Sunrise Valley Drive
          Reston, VA 22091 USA

          (hereinafter called "SAGA")

and       PAN AMERICAN COMPUTER SYSTEMS, INC.
          150 Broad Hollow Road
          Mellvile, New York 11747 USA

          (hereinafter called "PACS," which term shall include all PACS subsidiaries and affiliates)

          WITNESSETH,

WHEREAS, SAGA is the proprietor of certain software packages, as set forth in Annex A (herein "SAGA Products") (being updated from time to time), and offers certain products, as set forth in Annex B, for which SAGA pays royalties (herein "SPECIAL PRODUCTS") (being updated from time to time) both of which are collectively referred to herein as ('SYSTEMS").

and

WHEREAS, PACS wants to market the SYSTEMS and to provide assistance to users of the SYSTEMS in Argentina, Brazil, Chile, Bolivia, Paraguay, Uruguay, and Peru, hereinafter called the "TERRITORY."

Now therefore, the parties hereto agree as follows:

Paragraph 1

SAGA appoints PACS the exclusive distributor of the SYSTEMS in the TERRITORY for the period of January 1, 1998 through December 31, 2007. During the last year of this term (2007), the parties agree to negotiate, in good faith, a new agreement. The parties understand and agree that at the end of the first ten (10) year period of this Agreement, this Agreement shall automatically renew for successive five (5) year periods, unless either party shall decide to terminate this Agreement upon the giving of eighteen (18) months prior written notice to the other party.

CONFIDENTIAL                                                            CSS-000056

Paragraph 2

SAGA hereby authorizes PACS to enter into customer agreements in the TERRITORY for licensing, installing, technical assistance, training and maintenance of the SYSTEMS.

However, PACS is only authorized to give non-transferable use-licenses for SYSTEMS to customers. Giving any form of sublicense or distribution rights, such as a direct or indirect OEM arrangements, to any third party will require the prior written consent of SAGA.

Contracts for installations of the SYSTEMS outside the TERRITORY shall require the prior written consent of SAGA.

Paragraph 3

For the right to grant perpetual or time-limited licenses, and/or maintenance agreements, PACS agrees to make payments to SAGA as provided in Exhibit A hereto.

Payments will be made within ten (10) days of the end of each quarter.

Any quarterly payment not received within the due date period above mentioned, shall bear interest at a rate of 3% p.a. above the prime commercial rate of Citibank in effect at that time.

SAGA will provide invoices to PACS for all payments made by PACS.

Paragraph 4

SAGA agrees at no additional costs to provide the following services to PACS:

1. Training in public classes held by SAGA for PACS staff (up to 5 persons) per class;

2. Ten (10) copies of the latest version of the SYSTEMS stored on magnetic tape;

3. Ten (10) copies of complete sets of SYSTEMS documentation in English, including Reference Manuals and Utilities Manuals.

4. Prompt correction or any errors in the SYSTEMS detected at the user's site and forwarded to SAGA.

CSS-000057

CONFIDENTIAL

CPU & OFFICE   ID:7055916504   AUG 25 '97   15:36 No.005 P.07

**Paragraph 5**

(1) PACS agrees to take all necessary and reasonable measures to ensure that the proprietary nature and integrity of the SYSTEMS are safeguarded against unauthorized use, duplication or modification.

PACS has the right to reproduce and, as necessary, translate SYSTEMS, documentation, Manuals, etc. for use in the TERRITORY. Written material used by PACS for marketing or support to users of the SYSTEMS will refer to authorship of SAGA and will show copyright and trademark of SAGA.

PACS acknowledges the SYSTEMS and all documentation or information as trade secrets of SAGA and undertakes to oblige its personnel to protect the SYSTEMS as well as their copyrights and trademarks and to prevent them from unauthorized use.

PACS agrees to refrain from implementing, or permitting the implementation of any modification to the SYSTEMS without the written notice to SAGA.

(2) PACS agrees to refrain from installing the SYSTEMS at a user's site without having obtained a written agreement from the user calling for safeguarding of the proprietary nature of the SYSTEMS. Such written agreement must be either a right of use license agreement, or a non-disclosure agreement for demonstration.

(3) PACS agrees to make all reasonable efforts to successfully market the SYSTEMS in the TERRITORY.

PACS shall, at its expense, provide SAGA with a written quarterly report of all installations and de-installations of the SYSTEMS in the TERRITORY, made in the quarter, including product name, operating system, hardware class or machine type, customer name, customer address, and installation/de-installation date. All installations will be considered perpetual licenses unless later reported as de-installed.

Within sixty (60) days of the execution of the Amendment, the parties will meet and specify the format of the required quarterly reports. Both parties understand and agree that the meeting and the specification of the format of the required quarterly reports are a material condition of this Agreement.

SAGA will take no action against PACS for any reports which were due prior to January 1, 1998. Both parties understand and agree that the quarterly royalty reports are a material requirement of this Agreement, and that the failure of PACS to provide quarterly reports may be deemed by SAGA to be a material breach condition of this Agreement.

CONFIDENTIAL

CSS-000058

(4) PACS agrees to be responsible for all technical assistance and support activities in the TERRITORY including maintenance services for both present and future users. This obligation of PACS will continue until termination of the agreement including any extension thereof.

(5) PACS shall be responsible for supplying SAGA with all pertinent information concerning any software errors and will forward promptly all documentation to SAGA with an explanation of the circumstances causing the problem and SAGA will correct any errors in the SYSTEMS.

(6) In no case shall SAGA be held liable by PACS or any of PACS customers in the TERRITORY for any damages, indirect or consequential, derived from the use of the SYSTEMS.

(7) SAGA shall not be held liable for any taxes arising out of the activities of PACS, such as sales tax, income tax, import tax, value added tax or alike.

(8) PACS shall abide by all U.S. Export Administration Regulations which may apply to the SYSTEMS and their exportation and/or re-exportation.

(9) PACS agrees that SAGA has the right to make multinational agreements with end-user customers which may result in installations in the TERRITORY at discounts negotiated by SAGA. PACS will accept all such agreements and discounts as valid in the TERRITORY with compensation to PACS according to SAGA's published worldwide multinational policy.

(10) PACS agrees to cooperate with SAGA in establishing international Value Added Remarketers (VARs). The terms of specific VAR agreements will be agreed to between PACS and SAGA on a case-by-case basis.

(11) PACS (including CONSIST and Natalio Fridman or any subsidiary or affiliated business entity) agrees not to act as agent, partner, distributor, reseller or marketing representative for any systems software products which compete with the SAGA SYSTEMS without an approval of SAGA. The approval of specific competitive products will be agreed to between PACS and SAGA on a case-by-case basis.

(12) When requested by PACS, SAGA will execute the documents required by government authorities in the TERRITORY for remittance of royalties for SAGA products by the PACS affiliates. All payment by PACS affiliates will be credited as payment under this Agreement.

Total PACS obligations to SAGA are solely those specified in the Agreement.

8/21/97 6:02 PM

4

CONFIDENTIAL

CFO'S OFFICE          ID:7055910504          AUG 25'97    15:58 No.005 P.09

In the case of any conflict between this Agreement and any document executed by SAGA with any PACS affiliate, this Agreement shall prevail.

**Paragraph 6**

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

**Paragraph 7**

None of the parties hereto shall be entitled to assign this contract without prior written consent of the other party.

**Paragraph 8**

SAGA reserves the right to terminate this Agreement should PACS fail to perform any material conditions of this Agreement.

Before such termination shall become effective, SAGA shall give written notice to PACS describing in detail what material conditions PACS has failed to perform, and PACS shall have sixty (60) days in which to perform such conditions.

**Paragraph 9**

All legal notices hereunder shall be in writing and shall be deemed properly delivered and effective when duly sent by Certified Mail, Postage Prepaid, telex or cable, or delivered by hand:

| | |
|---|---|
| to PACS at: | PAN AMERICAN COMPUTER SYSTEMS, INC.<br>150 Broad Hollow Road<br>Mellville, New York 11747<br>Attn: Mr. Natalio S. Fridman |
| to CONSIST at: | CONSIST CONSULTORIA, SISTEMAS E. REPRES. LTDA.<br>Avenida de las Naciones Unidas - 20727<br>Sao Paulo, Brazil<br>Attn: Mr. Natalio S. Fridman |
| and to SAGA at: | SOFTWARE AG AMERICAS, INC.<br>11190 Sunrise Valley Drive<br>Reston, Virginia 20191<br>Attn: James H. Daly |

or to such other address as the receiving party may by written notice designate to the other. All operational correspondence and quarterly reports (technical assistance, sales and marketing support) will be directed to:

CONFIDENTIAL                                                                CSS-000060

SOFTWARE AG AMERICAS, INC.
11190 Sunrise Valley Drive
Reston, Virginia 20191
Attn: James H. Daly

Paragraph 10

PACS and Mr. Natalio S. Fridman, including his heirs and assigns, and CONSIST-CONSULTORIA, SISTEMAS E REPRESENTACOES LTDA., warrant fulfillment of PACS obligations.

Paragraph 11

This Agreement, including Annexes and Exhibits, constitutes the entire Agreement between the parties; and supersedes and merges all previous communications, representations or agreements, either written or orally, with respect to the subject matter hereof, so that this Agreement may only be changed or modified by another Agreement signed by the parties hereto.

Paragraph 12

This contract shall be subject to, and interpreted in accordance with, the laws of the State of New York, USA. SAGA agrees to defend or at its option settle any claim, suit or proceeding brought against PACS from the third parties for patent or copyright infringement and indemnify PACS against any claims for infringement of any patent or copyright by the SYSTEMS. PACS will promptly notify SAGA in writing of any such claims, suits or proceedings and give SAGA full information and assistance to settle and/or exclusive of any judicial and administrative awards, incurred without SAGA's written authorization.

Paragraph 13

PACS agrees to indemnify SAGA from any liability that may be incurred by SAGA because PACS either overstated the performance of any SYSTEMS or part thereof, or failed to exercise the due care to resolve any problems of which PACS was notified by SAGA and/or any end-user.

CSS-000061

CONFIDENTIAL

CFO'S OFFICE                ID:7055916504              AUG 25 '97   15:59 No.005 P.11

Agreement Accepted:
SOFTWARE AG AMERICAS, INC.

By:_____

Name:_____

Title:_____

Date:_____

Agreement Accepted:
CONSIST-CONSULTORIA,
SISTEMAS RESPRESENTACOES, LTD.

By:_____

Name Natalio S. Fridman
Title:_____

Date:_____

MR. NATALIO S. FRIDMAN
INDIVIDUALLY

_____

Name  Natalio S. Fridman

Title:_____

Date:_____

Agreement Accepted:
PAN AMERICAN COMPUTER
SYSTEMS, INC.

By:_____

Name: Natalio S. Fridman

Title:_____

Date:_____

2/21/97 6:02 PM                                     7

CSS-000062

CONFIDENTIAL

CFO'S OFFICE          ID:7053916504          AUG 25'97   15:39 No.005 P.12

## ANNEX A

1. All the system software packages offered for distribution by SAGA now and in the future including, but not limited to, those shown on the attached list, and to include BOLERO and ODYSSEY.

2. All application packages, except for PRODIS, are excluded from this agreement.

3. The SAGA Year2000 Toolkit is not included in this Agreement. The parties understand and agree that it is the subject of a separate Agreement.

8/21/97 6:02 PM                    8

CSS-000063

CONFIDENTIAL

### ANNEX B

Special Products are those products listed below, and any additions to this list, as made by SAGA, from time to time. Additions may include new products or new versions or releases of existing Special Products. For new Special Products which require that royalties be paid to third-parties, PACS will reimburse SAGA for all costs associated payable to the thirds party with respect to all such Special Products.

1. ESPERANT

2. CONSTRUCT and CONSTRUCT/SPECTRUM

3. PASSPORT

CONFIDENTIAL   CSS-000064

## EXHIBIT A

1. PACS agrees to pay SAGA a quarterly fixed cash lump sum payment according to the following formula using the annual increase/decrease in the Audited SAGA Product/License Revenue as the basis for the adjustment to the quarterly fixed cash lump sum payment made by PACS to SAGA.

2. The baseline SAGA Product List will be the SAGA Product List in effect as of December 31, 1997. Any new SAGA Products developed or acquired over the term of this Agreement may be added to the SAGA Product List upon mutual written consent of the Parties and the quarterly fixed cash lump sum payments will be adjusted as appropriate.

### ANNUAL ADJUSTMENT TABLE BASED ON INCREASE/DECREASE IN SAGA PRODUCT/LICENSE REVENUE.

| Change to PACS Annual Royalty | Annual % Change in SAGA Product/License Revenue |
| --- | --- |
| Not to go below 10% Annually | |
| Decrease to -10% | Actual % Decrease |
| 0 | 0 |
| Up to 20% Increase | Actual % Increase |
| Not to exceed 20% Annually | |

3. The Baseline Year is established at an annual royalty of $8,000,000. (US DOLLARS), cash only, with no credit for tax receipts. All transfers of cash payment to take place within the United States of America.

4. Payments must be made quarterly, by the 10th day at the end of each quarter. The payments shall commence on January 1, 1998.

5. The new royalty calculation for each year of the Agreement will be presented to PACS at the completion of the SAGA Annual Audit, which is scheduled for completion in April of each year (unless otherwise amended by SAGA). Until the calculation is completed, PACS will make the first quarterly payment using the prior year's quarterly payment schedule. The parties agree to reconcile the payments, by adjusting the amounts proportionally over the remaining three quarters of that year.

8/21/97 6:08 PM

10

CONFIDENTIAL

CSS-000065